IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL J. GOODSON, III, *et al*, | ) | Civil Action No. 08 - 44 |
| | ) | |
| Plaintiffs, | ) | Judge Gary L. Lancaster |
| | ) | Magistrate Judge Lisa Pupo Lenihan |
| v. | ) | |
| | ) | |
| LAWRENCE O. MAGGI, *et al*., | ) | Doc. No. 65 |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss (Doc. No. 65) filed by Defendants

Washington County 27th Judicial District Court, Westmoreland County 10th Judicial District Court,

Judge John Driscoll, and Judge Mark E. Mascara (hereinafter collectively, the "Judicial

Defendants"), be granted with prejudice.

**II.    REPORT**

**A.    Relevant Facts**

Plaintiff Daniel J. Goodson III (hereinafter "Father") is a pro se incarcerated individual who

has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of himself

and his four minor children, D.G. VI, J.G., S.G. and D.G.  (Pls.' Compl. Overview.)[1]  Plaintiffs

assert violations of their first, fourth, fifth, sixth, thirteenth and fourteenth amendment rights.  (*Id.*)

---

[1]Plaintiffs' original complaint filed on January 1, 2008 contained a number of attachments.  On
October 17, 2008, Plaintiffs filed an amended complaint (Doc. No. 36), which is essentially the same as
the original complaint but without the attachments.  For ease of reference, all citations to the complaint in
this report and recommendation are to Doc. No. 36.

The complaint contains a plethora of different claims regarding a variety of different situations. However, the majority of the claims stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiffs have named thirty-seven different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

D.G. VI, J.G., and S.G were born to Father and his former wife, Tara Thompson. (*Id.* at Synopsis.) According to Plaintiffs, Father and Thompson divorced in 2000, and he filed for custody of D.G. IV, J.G., and S.G. in Westmoreland County Court of Common Pleas ("Westmoreland County Court). (*Id.*) In the meantime, Thompson and children moved to Colorado and she filed for divorce in the La Plata County District Court in Durango, Colorado (hereinafter "Colorado Court"). (*Id.*) Defendant Judge John Driscoll relinquished jurisdiction of the case to the Colorado Court. (*Id.* at ¶ 31.) During all or most of these four years, Father was incarcerated in Allegheny County Jail. (*Id.* at Synopsis.) Father's parental rights were involuntarily terminated by the Colorado Court in 2004. (*Id.*)

In July 2004, D.G. was born as a result of a relationship between Father and Gina Savko. (*Id.*) In December of 2005, Father learned that D.G. was in an unsafe environment and he filed for custody of D.G. in Westmoreland County Court. (*Id.*; *see also* Westmoreland County Ct. of Com. Pleas, Family Court-Custody Division, Docket No. 123 of 2006D.) He also filed a complaint with Westmoreland County Children's Bureau. (Compl. at Synopsis.) In March of 2006, Father was advised that D.G. was currently residing in Washington County, and to contact Washington County.

2

(Letter dated 3/1/06 from Judge Driscoll's Law Clerk (copy attached to Compl.–*see* Doc. No. 1-3).)
On July 27, 2006 and August 18, 2006, Washington County Children & Youth Services
("Washington County CYS") filed   Emergency Shelter Petitions and D.G. was ordered to be
temporarily placed in foster care pending a hearing on the Petitions.  (Emergency Shelter Petitions
filed 7/27/06 and 8/18/06, and Judge Mascara's 8/18/06 Order, at No. 24 July 2006, Washington Co.
Ct. Com. Pleas, Juvenile Ct. Div. (copies of which are attached to Compl.–*see* Doc. No. 1-3).)  A
hearing was held in Washington County Court of Common Pleas (hereinafter "Washington County
Court") on August 21, 2006 on the Emergency Petitions, after which Defendant Judge Mark Mascara
entered an order directing that D.G. be placed in protective physical and legal custody of Washington
County CYS.[2]   Judge Mascara also presided over subsequent juvenile court hearings regarding the
Permanency Petition of Washington County CYS to determine the dependency of D.G. from August
2006 to the filing of this federal lawsuit.  (*See* Washington Co. Ct. Com. Pleas, Juvenile Ct.  Div.,
Docket No. 24 July, 2006/JV 274-06.)  Judge Mascara ruled that D.G. would remain in foster care,
despite Father's request that she be placed with members of his family. (Compl. at ¶ 23.)  It further
appears from the public docket of Washington County Court that on November 8, 2007, Judge
Mascara entered an order scheduling another permanency hearing regarding D.G. on January 31,
2008.  (*See* Judge Mascara's Order dated 11/8/07, at Docket No. 24 July, 2006/JV 274-06,
Washington Co. Ct. Com. Pleas, Juvenile Ct.  Div. (copy attached to Compl.–*see* Doc. No. 1-3).)

---

[2]In addition, in his August 21, 2006 order, Judge Mascara denied Father's motion to change
D.G.'s placement to paternal aunt's home and motion for change of venue to Westmoreland County, and
directing that Father shall have no contact with D.G. at that time and that mother shall have weekly
supervised visits provided negative drug testing results. (Judge Mascara's 8/21/06 Order, at Docket No.
24 July 2006, Washington Co. Ct. Com. Pleas, Juvenile Ct. Div. (copy of which are attached to
Compl.–*see* Doc. No. 1-3).)

Plaintiffs commenced this federal civil action on January 10, 2008.

Plaintiffs' primary claim is that all Defendants have engaged in a vast conspiracy to deny Father and his family custody and visitation rights to his minor children because of his race. (*Id.* at ¶¶ 13,14, 19, 23, 24, 29, 31, 35, 36, 44, 47, 48, 49, 51, 52, 58, 63, 70, 71, 76, 77, 81, 84.) Plaintiffs also claim that the Judicial Defendants conspired to discriminate against him in the underlying custody matter. (*Id.* at ¶¶ 13, 14, 31, 36, 44, 47-49, 51-52, 58, 76-79, 81, 84.) Father asserts the Judges abused their "official capacity positions" in order to retaliate against him. (*Id.* at ¶ 84.)

Plaintiffs claim that Judge Mascara conspired with other co-defendants to prevent Father or any of his relatives from receiving custody or visitation rights of D.G. (*Id.* at ¶¶ 13, 14, 23, 44, 71, 81, 87.) Judge Mascara allegedly perpetuated this conspiracy through his personal opinions in court documents and ex parte conferences with other co-defendants. (*Id.* at ¶ 13.) Plaintiffs maintain that Judge Mascara failed to investigate or explore the possibility of placing D.G. in the custody of any of her paternal relatives (*id.* at ¶ 24), and conspired with other co-defendants to make false statements against Father (*id* at ¶ 23.) Plaintiffs also allege that Judge Mascara accomplished his goal of denying Father and his family custody and visitation rights by misleading the Superior Court of Pennsylvania by concealing "exculpatory evidence," giving false testimony, failing to write "an opinion to the Superior Court," selectively using portions of documents in his findings of facts report in order to present a false account of Father's actions, and delaying transmittal of the record to the Superior Court. (*Id.* at ¶ 81.)[3]

_____

[3]It appears that the appeal to the superior court to which Father refers is the appeal docketed at No. 216 WDA 2007 in the Pennsylvania Superior Court. Plaintiff appealed Judge Mascara's Order dated September 14, 2006 in Docket No. 24 July 2006, JV 274-06, wherein Judge Mascara found that aggravated circumstances existed with regard to the Father pursuant to 42 PA. CONS. STAT. ANN. § 6341, after a merit hearing on the emergency shelter petition of Washington County CYS. According to the

Additionally, Plaintiffs claim that Judge Mascara conspired with the Washington County CYS to place D.G. in an undisclosed location so Father could not investigate the safety of her location. (*Id.* at ¶ 23.)   Plaintiffs have also averred that Defendant Washington County Court participated in the conspiracy to racially discriminate against them and deprive them of their rights, and they name numerous jurists (although Plaintiffs did not name them as defendants) who they believe have a role in the conspiracy, including Judge Mascara. (*Id.* at ¶¶ 51, 58, 84.) Finally, Father also alleges that after his bail hearing on December 6, 2006 in a criminal complaint against him, Judge Mascara and the Pennsylvania State Police conspired to discriminate and retaliate against him by discussing the position and defense they thought Father was going to pursue against them. (*Id.* at ¶ 6; *see also* Washington County Court of Com. Pleas, Criminal Division, Docket No. 2431-2006.)[4] Father further contends that this criminal complaint was brought based on illegally obtained statements from him prior to being Mirandized. (Compl., ¶ 6.)

As to Judge Driscoll, Plaintiffs allege that the Judge improperly relinquished jurisdiction over the divorce and custody action filed by Father to the Colorado court. (*Id.* at ¶ 31.) Plaintiffs assert that Judge Driscoll was aware that Westmoreland County had proper jurisdiction over the case yet nonetheless relinquished jurisdiction and that such rulings violated his due process rights. (*Id.* at

---

public docket, the superior court affirmed Judge Mascara's order on November 29, 2007.

[4]The criminal complaint filed at Docket No. 2431-2006 charged Father with four counts each of Terroristic Threats under 18 PA. CONS. STAT. ANN. § 2706(a)(1); Harassment under 18 PA. CONS. STAT. ANN. § 2709(a)(4); Threats and Other Improper Influence in Official and Political Matters under 18 PA. CONS. STAT. ANN. § 4702(a)(2).  The alleged victims of these charges are three employees of the Washington County CYS and Judge Mascara, all of whom are named as defendants in this federal action. *See Commw. of Pa. v. Goodson,* CR No. 2431-2006, Mem. Op. & Order dated August 15, 2007 (John F. Bell, S.J.)  The conduct which gave rise to the criminal charges brought against Father in No. 2431-2006 arose during the juvenile court proceedings regarding the custody of D.G. over which Judge Mascara presided.

¶48.)  Father further asserts that although he has no proof, he will show communication with the other Defendants and a conspiracy against him.  (*Id.* at ¶ 49.) Plaintiffs allegations against the Westmoreland County Court are similar to the allegations against Judge Driscoll, *i.e.,* that the Westmoreland County Court allegedly violated Plaintiffs rights by improperly relinquishing jurisdiction of the divorce and custody action.  (*Id.* at ¶ 52.)

Finally, Plaintiffs assert against all Defendants state law claims of outrageous conduct, intentional infliction of emotional distress, and gross negligence.

Plaintiffs seek generally declaratory, injunctive and monetary relief against all Defendants. (*Id.* at Posture.)  With regard to the Judicial Defendants who have filed the instant motion to dismiss, Plaintiffs request the following injunctive and/or declaratory relief:

> (1)   enjoin the State of Pennsylvania from seeking to enforcing its final judgment in the interest of DG a minor child at JV 274-06, Washington County, Pennsylvania;
>
> (2)   order that the names of the minor children be changed back to their birth names;
>
> (3)   order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents;
>
> (4)   order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County CYS.

(*Id.*)  In addition, Plaintiffs also ask this Court to  order (1) the filing of federal criminal charges against those defendants as warranted and (2) a federal investigation of all Defendants' conduct and actions in regard to the complaint.  With regard to monetary relief, Plaintiffs seek from each Defendant compensatory damages in the amount of $50,000 and punitive damages in the amount of $100,000.  (*Id.*)

The Judicial Defendants have filed a Joint Motion to Dismiss pursuant to FED.R.CIV.P.

12(b)(1) and 12(b)(6). The Judicial Defendants advance several arguments in support of their joint motion to dismiss: (1) Plaintiffs' claims against the Washington County Court and the Westmoreland County Court are barred by the Eleventh Amendment and must be dismissed for lack of subject matter jurisdiction; (2) Plaintiffs' claims for money damages against Judges Driscoll and Mascara in their official capacities are also barred by the Eleventh Amendment; (3) Plaintiffs' claims against the Judicial Defendants are barred by the *Rooker-Feldman* doctrine and must be dismissed for lack of subject matter jurisdiction; (4) Plaintiffs' claims are barred by the domestic relations exception to federal jurisdiction; (5) Plaintiffs' claims against Judges Driscoll and Mascara in their individual capacities are barred by doctrine of absolute judicial immunity and by the Federal Courts Improvement Act of 1996, and therefore, must be dismissed for failure to state a claim.  The motion to dismiss has been fully briefed and responded to, and is now ripe for disposition.

     **B.**    <u>**Subject Matter Jurisdiction**</u>

       **1.**    **Legal Standard**

A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction.  *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F.Supp.2d 689, 692 (W.D.Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In the case at bar, Defendants appear to be making a facial challenge, as evidenced by their brief in support of the Joint Motion to Dismiss, as well as the fact that they have not produced any affidavits or evidence to disprove any of Plaintiff's factual allegations regarding jurisdiction.  In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6).  *Mortensen,* 549 F.2d at 891; *In re*

*Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

A Rule 12(b)(1) motion is the proper vehicle for asserting Eleventh Amendment immunity because the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir. 1996). Likewise, a motion to dismiss for lack of subject matter jurisdiction is appropriate when based upon the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923) (holding that under Congressional legislation, only the Supreme Court has the authority to entertain a proceeding to reverse or modify the judgment of a state court, as to do so would constitute an exercise of appellate jurisdiction; district courts, on the other hand, are vested strictly with original jurisdiction and therefore lack authority to review a state court judgment); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding district court has no subject mater jurisdiction to review final judgments of a state court because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257).

### 2.    Discussion

#### a.    Eleventh Amendment Immunity

##### (i)    Defendants Washington County 27th Judicial District and Westmoreland County 10th Judicial District

The Judicial Defendants submit that Plaintiffs' claims against the Washington County 27th Judicial District and Westmoreland County 10th Judicial District are barred by the Eleventh Amendment, and therefore, should be dismissed for lack of subject matter jurisdiction. This Court agrees with the Judicial Defendants.

The Eleventh Amendment bars civil rights suits against a state in federal court by private

8

parties where the state has not consented to such action. *Laskaris v. Thornburgh,* 661 F.2d 23, 25

(3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). This immunity applies even to claims

seeking injunctive relief. *Id.*; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984)

(holding Eleventh Amendment immunity applies "regardless of the nature of the relief sought.").

Pennsylvania, by statute, has specifically withheld consent to suit in federal court. 42 PA. CONS.

STAT. ANN. § 8521(b); *Laskaris,* 661 F.2d at 25. Pennsylvania's Eleventh Amendment immunity

extends to suits against "arms of the state," *i.e.,* departments or agencies of the state having no

existence separate from the state. *Laskaris,* 661 F.2d at 25 (citing *Mt. Healthy City Bd. of Educ. v.*

*Doyle,* 429 U.S. 274, 280 (1977)). As courts within the Unified Judicial System, the Washington

County Court and Westmoreland County Court are considered state entities. *Benn v. First Judicial*

*Dist. of Pa.,* 426 F.3d 233, 241 (3d Cir. 2005) (holding that the First Judicial District is a state entity

and thus entitled to Eleventh Amendment immunity); *Callahan v. City of Philadelphia,* 207 F.3d

668, 673 (3d Cir. 2000) (holding trial courts within the First Judicial District are state entities and

thus are not "persons" within Section 1983) (citation omitted). None of the factual allegations

contained in the complaint indicate or even suggest that Washington County Court and

Westmoreland County Court have consented to be sued by Plaintiffs, private parties, in this federal

court.

Moreover, although the scope of the Eleventh Amendment is not the same as that of Section

1983, the Supreme Court has determined that Congress did not intend for Section 1983 to overcome

the sovereign immunity of states embodied in the Eleventh Amendment. *Will v. Mich. Dep't of State*

*Police*, 491 U.S. 58, 66-67 (1989). Therefore, states, as well as entities of the state, such as the

Tenth and Twenty-Seventh Judicial Districts, are not "persons" who can be subject to liability under

Section 1983. *Id.* at 71.   As such, Washington County Court and Westmoreland County Court are immune from suit by the Eleventh Amendment, and therefore, this Court lacks subject matter jurisdiction over these Defendants.

### (ii)      Defendants Judge Mascara and Judge Driscoll

The Eleventh Amendment bar also applies to actions in federal court against state officials acting in their official capacity for money damages or back pay, as such retrospective relief would be paid out of the state treasury. *Laskaris,* 661 F.2d at 26 (citing *Edelman v. Jordan,* 415 U.S. 651 (1974)).   However, the Supreme Court has noted an exception to this rule where "suits against individual state officers [are] for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atlantic-Pa.,* 271 F.3d 491, 503 (3d Cir. 2001)).   This exception is commonly referred to as the doctrine of *Ex Parte Young,* 209 U.S. 123, 155-56 (1908). *See Pa. Fed'n of Sportsmen's Clubs,* 297 F.3d at 323.   The Supreme Court has narrowly applied this exception, *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 (1984), and indeed, has declined to apply the exception to relief styled as prospective relief but which, in actuality, seeks compensation for a past injury by a state official, *Green v. Mansour,* 474 U.S. 64, 73 (1985).

In addition, Pennsylvania statutory law provides that "the Commonwealth, and its officials and employees acting within the scope of their duties, shall continue to enjoy sovereign and official immunity and remain immune from suit except as the General Assembly shall specifically waive the immunity."   1 PA. CONS. STAT. ANN. § 2310; *see also* 42 PA. CONS. STAT. ANN. § 8521.   The Pennsylvania statute further provides that the term "Commonwealth government" includes the "courts and other officers or agencies of the unified judicial system, . . . ." 42 PA. CONS. STAT. ANN.

§102.

Here Plaintiffs have asserted their claims against Judges Driscoll and Mascara in both their official and individual capacities and seek injunctive, declaratory and monetary relief from them. (Compl. at Posture.)  Based on *Laskaris*, it is clear that the claims for money damages asserted against Judges Driscoll and Mascara in their official capacities are barred by the Eleventh Amendment.  661 F.2d at 26.  Judges Driscoll and Mascara are also not "persons" under Section 1983 with regard to the claims brought against them in their official capacities, because the state is the real party in interest when state officials are sued in their official capacities and the state is not a "person" under Section 1983.  *Hafer v. Melo*, 502 U.S. 21, 26 (1991) (citing *Will*, 491 U.S. at 71).

In addition, Plaintiffs' claims for declaratory and injunctive relief against Judges Driscoll and Mascara in their official capacities are likewise barred by the Eleventh Amendment, because in actuality, the so-called prospective relief sought against them is not prospective at all.  An examination of the injunctive and/or declaratory relief requested in the complaint reveals that only two of the requests for injunctive/declaratory relief arguably pertain to these Judges[5]–ordering the minor children be returned to Pennsylvania and guardianship be awarded to their paternal grandparents and that Westmoreland County Court take jurisdiction over the custody matter–and none of this relief would end an ongoing violation of federal law.  It is purely an attempt by Father to have this Court review the prior decisions of the state court judges, which it is clearly not

---

[5]Plaintiffs' request to enjoin Pennsylvania from enforcing the final judgment regarding DG in Washington County Court is directed to the state and/or an agency of the state–Washington County Court and not the Judges.  In addition, the request that the names of the minor children be changed to their birth names is directed to the Colorado Court.

empowered to do.[6]   Likewise, Plaintiffs' requests that this Court order a federal criminal investigation and the filing of federal criminal charges are a violation of the separation of powers provisions in the United States Constitution,  and clearly outside its Article III powers.  Therefore, the exception of *Ex Parte Young* is not applicable here and the Eleventh Amendment bars all of Plaintiffs' claims against the Judges in their official capacities.[7]

## 2.     *Rooker-Feldman* Doctrine

Next, the Judicial Defendants argue that Plaintiffs' federal claim is inextricably intertwined with the adjudications of the state court in the underlying custody matter because relief can only be granted in the instant matter if this Court concludes that the rulings by the Judicial Defendants were wrong.   The Judicial Defendants submit that essentially Plaintiffs are asking this Court to overturn their decisions in the underlying custody matter (and not, in actuality, requesting injunctive or declaratory relief), and therefore, Plaintiffs' claim is barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions.   The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*, and District of Columbia Court of*

_____

[6]Despite Plaintiffs' argument to the contrary, the allegations of fact in the complaint do not support their contention that an ongoing violation of federal law exists.  Father appears to be arguing that because the state court decisions have not been vacated or  reversed, his due process rights continue to be violated and perpetuated by Defendants' conspiracy to deprive him of his rights based on his race. However, the complaint is complete devoid of any factual support of an ongoing violation of federal law. Father is attempting to bootstrap the effect of the state judges' previous rulings into an ongoing federal violation.   This he cannot do.

[7]The Eleventh Amendment does not, however, bar the damages claims against the Judges in their individual capacities.  *Laskaris*, 661 F.2d at 26; *Kentucky v. Graham,* 473 U.S. 159, 168-69 (1985) (damages can only be imposed upon a state official in his individual capacity, not his official capacity). As explained below, these claims are nonetheless precluded based on the *Rooker-Feldman* doctrine and/or absolute judicial immunity.

*Appeals v. Feldman*, 460 U.S. 462 (1983).  Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject mater jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257.  *Feldman*, 460 U.S. at 482.[8] "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp.*, 146 F.3d 168, 171 (3d Cir.1998).   This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights.  *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir.2006) (citing *Exxon Mobil, id.*).[9] The Court in *Exxon Mobile* further clarified that just because a federal claim was

---

[8]Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*.  *See Walker v. Horn,* 385 F.3d 321, 329 n. 22 (3d Cir. 2004) (citations omitted).

[9]The *Rooker-Feldman* doctrine applies to final decisions of lower state courts.  *Walker v. Horn,* 385 F.3d 321, 329 (3d Cir. 2004)  (citation omitted).

previously adjudicated in state court does not trigger the application of *Rooker-Feldman.* Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted). If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id.* As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing FED. R. CIV. P. 8(c)).

Shortly after the Supreme Court's determination in *Exxon Mobil*, the United States Court of Appeals for the Third Circuit, while acknowledging the recent *Exxon Mobile* decision, still applied the two-step *Rooker-Feldman* inquiry that it had applied in the past–a claim in federal court will be barred by *Rooker-Feldman* under two circumstances: "first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In Re Knapper*, 407 F.3d 573, 580 (3d Cir.2005). More recently, however, the court of appeals has cautioned that reliance on its pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, and in particular the "inextricably intertwined" prong, may no longer be appropriate. *See, e.g., Gary v. Braddock Cemetary,* 517 F.3d 195, 200 n. 5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,* 240 Fed. Appx. 938, 940 n.1 (3d Cir. 2007) (noting that after *Mobil,* "[t]here is little reason to believe that 'inextricably intertwined' . . . does anything more than state a conclusion or describe a claim that meets the requirements of *Exxon*.") (collecting decisions from other courts of appeals).

Although the United States Court of Appeals for the Third Circuit has not expressly ruled

on the continued viability of its prior formulation of the *Rooker-Feldman* inquiry since the Supreme

Court's decision in *Exxon Mobil,* at least three other courts of appeals have done so.  *See, e.g.,*

*Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85-89 (2d Cir. 2005); *McCormick v.*

*Braverman,* 451 F.3d 382, 393-94 (6th Cir. 2006); *Davani v. Virginia Dep't of Transp.,* 434 F.3d 712,

717-19 (4th Cir. 2006).  This Court finds the discussions by the courts of appeals in *Holblock,*

*McCormick*, and *Davini*, although not binding, are instructive and well reasoned, and thus, provide

guidance to this Court in determining the appropriate test for applying *Rooker-Feldman* post-*Exxon*

*Mobil*.

      The court of appeals in *Hoblock* distilled the Supreme Court's holding in *Exxon Mobil* as

setting forth four requirements in order for *Rooker-Feldman* to apply:

> First, the federal-court plaintiff must have lost in state court. Second,
> the plaintiff must "complain[ ] of injuries caused by [a] state-court
> judgment[.]" Third, the plaintiff must "invit[e] district court review
> and rejection of [that] judgment[ ]." Fourth, the state-court judgment
> must have been "rendered before the district court proceedings
> commenced"-i.e., *Rooker-Feldman* has no application to federal-court
> suits proceeding in parallel with ongoing state-court litigation. The
> first and fourth of these requirements may be loosely termed
> procedural; the second and third may be termed substantive.

422 F.3d at 85 (quoting *Exxon Mobil*, 544 U.S. at 284) (footnote omitted).  Moreover, the

"inextricably intertwined" basis for applying *Rooker-Feldman* to bar federal claims (and  asserted

by the Judicial Defendants as the basis for applying *Rooker-Feldman* here) no longer appears to

provide an independent basis for applying the doctrine post-*Exxon Mobil*.  In this regard, the court

of appeals in *McCormick* opined that the Supreme Court in *Exxon Mobil* "implicitly repudiated the

circuits' post- *Feldman* use of the phrase 'inextricably intertwined to extend *Rooker-Feldman* to

situations were the source of the injury was not the state court judgment. In short, the phrase

'inextricably intertwined' only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*." *McCormick,* 451 F.3d at 394-95 (citing *Davani*, 434 F.3d at 719; *Hoblock*, 422 F.3d at 86-87 (noting agreement by courts of appeals  in *Davani* and *Hoblock* that the phrase "inextricably intertwined" has no independent content and is simply a descriptive label attached to claims that meet the requirements set forth in *Exxon Mobil*).  Indeed, two panels of the United States Court of Appeals for the Third Circuit appear to agree with this conclusion. *See, Gary v. Braddock Cemetary,* 517 F.3d 195, 200 n. 5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,* 240 Fed. Appx. 938, 940 n.1 (3d Cir. 2007).

In *Hoblock, McCormick,* and *Davani*,  the courts of appeals found that the key to determining whether the  *Rooker-Feldman* doctrine applies, post-*Exxon Mobil*, is identifying the source of the injury alleged in the federal complaint–if the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine will apply to divest the district court of jurisdiction. *Hoblock,* 422 F.3d at 87; *McCormick*, 451 F.3d at 393; *Davani,* 434 F.3d at 718-19.  The *Hoblock* court provided a further explanation of this core requirement:

> First, this requirement explains why a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court. Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.
>
> Further, by focusing on the requirement that the state-court judgment

be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.[10]

422 F.3d at 87-88.

The *Hoblock* court further noted that a federal plaintiff cannot avoid *Rooker-Feldman* simply by clever pleading, that is, by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself. *Id.* at 88. Thus, with regard to the child custody example discussed above, "if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child." *Id.* The challenge will be for the courts to identify which federal lawsuits actually complain of injury by state court judgments and which do not. *Id.* Thus, in making this determination, the *Hoblock* court was guided by the following formula: "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-

---

[10]"The subsequent federal suit could, of course be barred by ordinary preclusion principles." *Hoblock*, 422 F.3d at 88 n. 6 (citing *Exxon Mobil*, 544 U.S. at 293).

party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear." *Id.*

In the instant matter, with regard to Plaintiffs' claims against Judge Driscoll and/or Westmoreland County Court, the Court finds that all four requirements as set forth in *Exxon Mobil* have been satisfied. First, Father was the losing party in the custody action  with regard to D.G. IV, J.G. and S.G., which was initially filed in Westmoreland County Court and subsequently transferred to the Colorado court in 2000, when Judge Driscoll relinquished jurisdiction.  The Colorado Court subsequently terminated his parental rights to D.G. IV, J.G., and S.G. in 2004.[11]  Second, it is clear that the source of Plaintiffs' alleged injuries in this federal action is the state court judgments issued by the Judicial Defendants.  Father is suing in federal court for the reinstitution of his parental rights, an award of custody to the parental grandparents, and return of jurisdiction over the custody matters to Westmoreland County Court.  Even though Plaintiffs raise violations of federal constitutional rights (substantive and procedural due process) and federal civil rights (discrimination and conspiracy to discriminate based on race), as well as state law claims for an egregious abuse of governmental power, intentional infliction of emotional distress, and gross negligence, in this federal action, these theories of recovery all seek redress for injuries caused by the state court judgments issued by Judges Driscoll and Mascara in the underlying custody matters.  Moreover, it is clear from Plaintiffs' request for relief that they are seeking reversal of these judgments.  Plaintiffs are, in essence, seeking appellate review of the state court judgments, and therefore, the Court finds that the source of Plaintiffs' alleged injuries in this federal action is the state court judgments issued by

---

[11]This Court is not aware of any judgment from the Westmoreland County Court vis a vis custody of D.G. as this matter appears to have been litigated in the Washington County Court in front of Judge Mascara at Docket No. 24 July 2006/JV 274-06.

the Judicial Defendants.   The third requirement under *Exxon Mobil* is also satisfied here because, as discussed, Plaintiffs specifically seek an injunction barring enforcement of the state court judgments,  and restoration of Father's parental rights and an award of custody to the paternal grandparents which, if granted, would effectuate a reversal of the state courts' judgments. Finally, it is clear that the Judge Driscoll's and Westmoreland County Court's relinquishment of jurisdiction to the Colorado court was done in 2000, well before the present litigation was commenced. Accordingly, this Court lacks subject matter jurisdiction over the claims asserted against Judges Driscoll and/or Westmoreland County Court under *Rooker-Feldman*.

As to Judge Mascara, the first three requirements of *Exxon Mobil* have been met for the same reasons expounded with regard to Judge Driscoll.[12]   However, the fourth requirement does not appear to be met as to Judge Mascara.  Although in their federal complaint, Plaintiffs request that the "State of Pennsylvania be enjoined from seeking to enforce its final judgment in the interest of DG a minor child at JV 274-06, Washington County, Pennsylvania" (Compl. at Posture), it is not clear that a final judgment has been entered by Judge Mascara with regard to the custody of D.G. The public docket from the Washington County Court indicates that a hearing on the Permanency Petition regarding D.G. was scheduled for January 31, 2008 in front of Judge Mascara.  (*See* Judge Mascara's Order dated 11/8/07, at Docket No. 24 July, 2006/JV 274-06, Washington Co. Ct. Com. Pleas, Juvenile Ct.  Div. (copy attached to Compl.–*see* Doc. No. 1-3).)  Thus, giving Plaintiffs the benefit of the doubt, the Court finds that at the time of the commencement of this federal action, a judgment had not yet been rendered by Judge Mascara in the custody matter docketed at 24 July

---

[12]In addition, with regard to the second requirement, Plaintiffs' federal complaint seeks to prevent enforcement of Judge Mascara's final judgment regarding D.G. at Docket No. 24 July 2006/JV 274-06 in  Washington County Court.

2006/JV 274-06.  Accordingly, the *Rooker-Feldman* doctrine does not apply to bar the claims against Judge Mascara.[13]

### 3.     Domestic Relations Exception

In addition to the above arguments, the Judicial Defendants submit that because Plaintiffs have asked this Court to interfere with the underlying custody matter involving the minor Plaintiffs, Plaintiffs' claims are barred by the domestic relations exception to federal jurisdiction.  The domestic relations exception prohibits federal courts from issuing divorce, alimony and child custody decrees. *Ankenbrandt v. Richards*, 504 U.S. 689, 703 (1992).  The United States Court of Appeals for the Third Circuit has held that this exception is applicable only to diversity cases, not federal question cases.  *McLaughlin v. Pernsley*, 876 F.2d 308, 312-13 (3d Cir. 1989).  Here, Plaintiffs have brought this action under 42 U.S.C. §§ 1983, 1985, 1986, and 1988, and thus, have  invoked this Court's federal question jurisdiction.  Therefore, it appears that  the domestic relations exception does not apply here.  *McLaughlin*, 876 F.2d at 312-13.

The Judicial Defendants submit that *Elk Grove Unified School District v. Newdow* supports application of the domestic relations exception in this case, as it involves "delicate issues of domestic relations."  542 U.S. 1, 13 (2004).  *Elk Grove* involved an atheist, divorced father who sued his daughter's school to prevent her from participating in the pledge of allegiance, for he argued it was an effort to indoctrinate her with religious views in violation of the First Amendment. *Id.* at 8.  The

---

[13]On the other hand, the record shows that Father did appeal Judge Mascara's September 14, 2006 order regarding the emergency shelter petition to the Pennsylvania Superior Court, which affirmed Judge Mascara on November 29, 2007.  The superior court judgment affirming Judge Mascara's finding that aggravated circumstances existed with regard to the Father pursuant to 42 Pa. Cons. Stat. Ann. §6341, was rendered before this federal action was commenced, and therefore, to the extent Plaintiffs' injuries were caused by this state court judgment, the fourth requirement is satisfied.

child's mother objected to the father's standing to file the lawsuit on the child's behalf. *Id.* at 14.

The Supreme Court refused to entertain the father's First Amendment claim, holding that while a

person with next friend status could bring such a suit, the California Superior Court's order deprived

the father of that status. *Id.* In so holding, the Court reasoned that:

> it is improper for the federal courts to entertain a claim by a plaintiff
> whose standing to sue is founded on family law rights that are in
> dispute when prosecution of the lawsuit may have an adverse effect
> on the person who is the source of the plaintiff's claimed standing.
> When hard questions of domestic relations are sure to affect the
> outcome, the prudent course is for the federal court to stay its hand
> rather than reach out to resolve a weighty question of federal
> constitutional law.

*Id.* at 17. Thus, the Supreme Court concluded that the father lacked prudential standing to bring the

lawsuit in federal court in light of his being deprived of the right to sue as next friend under

California law. *Id.* at 17-18 (footnote omitted).

The Judicial Defendants do not acknowledge the court of appeals' decision in *McLaughlin*,

nor do they indicate what effect the Supreme Court's decision in *Elk Grove* has on *McLaughlin*.[14]

Therefore, the Court hesitates to recommend dismissing Plaintiffs' complaint on the grounds of the

domestic relations exception, in light of the absence of an explicit holding by the Supreme Court

applying the domestic relations exception to federal question cases and the lack of other lower court

cases citing to *Elk Grove* as authority when applying the domestic relations exception, particularly

---

[14]In *Elk Grove*, the Court was dealing with standing to sue, not the domestic relations exception. In fact, the Court specifically states that its holding did not rest on the domestic relations exception. 542 U.S. at 12 n.5. However, the Supreme Court's reasoning was based on the variety of contexts in which the Court has refused to intervene in family law issues, including the domestic relations exception, *id.*, and the Court stated that it is generally inappropriate for federal courts to intervene in family law issues, *id.* at 19. At most, the inference that can be drawn from *Elk Grove* is that the domestic relations exception is not applicable in a federal question case where the substantial federal question is separate and distinct from the family law issue.

when this Court has already found other grounds upon which to dismiss this case.

**C.     Failure to State a Claim**

**1.     Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S.Ct.1937, 1949 (May 18, 2009) (citing *Twombly, supra*).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal,* 129 S.Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, the court of appeals expounded on this standard in light of its decision in *Phillips v. County of Allegheny,* 515 F.3d 224 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and the Supreme Court's recent decision in *Iqbal*:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S.Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual

22

> matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 2009 WL 2501662, at *4.  In light of *Iqbal*, the court of appeals in *Fowler* then set forth

a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to

state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,* slip op. at 14].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 15. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35.  As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal,* slip op. at 14. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 2009 WL 2501662, at *5.

## 2.     Discussion - Absolute Judicial Immunity

Judges Driscoll and Mascara argue, in the alternative, that Plaintiffs' civil rights claims

against them in their individual capacities are barred by the doctrine of absolute judicial immunity.

 The doctrine of judicial immunity grants judges absolute immunity from liability for damages "for

acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). "A

judge will not be deprived of immunity because the action he took was in error, was done

23

maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction." *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal citation and quotation omitted). Judicial immunity will not apply only if the judge acts with "clearly no jurisdiction over the subject matter," *id.* at 356 n.6 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)), or where the challenged conduct is not a judicial act, *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Whether an act is a judicial one is determined by whether the action is typically one performed by a judge and whether the parties thought they were dealing with a judge acting in her judicial capacity. *Stump*, 435 U.S. at 362.

Clearly, Plaintiffs' claims for monetary damages against Judge Mascara and Judge Driscoll are barred by judicial immunity. Judge Mascara and Judge Driscoll were acting in their judicial capacity when the events in question occurred and where not acting in clear absence of their jurisdiction. Most of the Plaintiffs' allegations against Judge Mascara stem from his rulings, (Pls.' Compl. ¶¶ 23, 24, & 85), and written opinions, (*Id.* at ¶¶ 13, 81 & 87), regarding the custody of D.G. Making rulings and issuing opinions in a custody matter are clearly functions performed by judges. The Plaintiffs' allegations against Judge Driscoll stem from a ruling in which he relinquished jurisdiction over a case. (Id. at ¶¶ 31 & 48). As was mentioned above, issuing a ruling is a quintessential judicial function.

Judge Mascara and Judge Driscoll were not acting in clear absence of jurisdiction when they allegedly performed the acts at issue. Pennsylvania law grants Common Pleas Court judges broad original jurisdiction: generally Common Pleas Courts have "unlimited jurisdiction over all actions and proceedings." 42 PA. CONS.STAT. ANN. § 931(a). Under so broad a grant of jurisdiction, it is difficult to see how Judge Mascara and Judge Driscoll acted with clear absence of jurisdiction when

they presided over the custody of Father's children, for all these proceedings are ones typically presided over by Court of Common Pleas Judges.

Because the acts of Judge Mascara and Judge Driscoll were of a judicial nature and neither Judge acted in clear absence of jurisdiction, Plaintiffs' claims for monetary damages against Judge Mascara and Judge Driscoll are barred by the doctrine of absolute judicial immunity.  Moreover, to the extent that Plaintiffs seek injunctive and declaratory relief against the Judges, those claims are also barred.  *Shallow v. Rogers,* 201 Fed. Appx. 901, 904 n. 4 (3d Cir. 2006) (citing 42 U.S.C. §1983; *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000)).[15]

Accordingly, because Plaintiffs' claims against Judges Driscoll and Mascara in their individual capacities are barred by the doctrine of absolute judicial immunity, said claims should be dismissed for failure to state a claim upon which relief may be granted.[16]

### D.   Conclusion

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss (Doc. No. 65) filed by Defendants Washington County 27th Judicial District Court, Westmoreland County 10th Judicial District Court, Judge John Driscoll, and Judge Mark E. Mascara, be granted

---

[15]The Court further notes that in 1996, 42 U.S.C. § 1983 was amended by the Federal Courts Improvement Act of 1996, 110 Stat. 3847 (1996), to bar claims under § 1983 for injunctive relief against judicial officers acting in their judicial capacity.  This statutory provision overruled the Supreme Court ruling in *Pulliam v. Allen,* which held that judicial immunity bars claims for monetary damages, but not injunctive relief.  466 U.S. 522, 541-42 (1984).  As previously discussed, Judge Driscoll and Judge Mascara were acting in a judicial capacity at all relevant time.  Accordingly, Plaintiffs' claims for injunctive relief pursuant to § 1983 against Judges Driscoll and Mascara are barred.

[16]The Court of Appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir.2008). The Court in this matter is recommending dismissal with prejudice and is not recommending a grant of leave to amend because it believes such amendment would be both futile and inequitable.

with prejudice.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrate Judges, the parties are allowed ten (10) days from the date of service to file objections to this Report and Recommendation.  Any party opposing the objections shall have ten (10) days from the date of service of objections to respond thereto.  Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: August 31, 2009                                            BY THE COURT:


                                                                        /s/ Lisa Pupo Lenihan
                                                                  LISA PUPO LENIHAN
                                                                  United States Magistrate Judge

cc:     Honorable Gary L. Lancaster
        United States District Judge

        All Counsel of Record
        *Via Electronic Mail*

        Daniel J. Goodson, III
        GW1171
        SCI Mahanoy
        301 Morea Road
        Frackville, PA 17932

        Daniel J. Goodson, IV
        C/O La Plata Cty CSE Unit
        1060 East 2nd Avenue
        Durango, CO 81301-5157

        Jordan J. Goodson
        C/O La Plata Cty. CSE Unit
        1060 East 2nd Avenue
        Durango, CO 81301-5157

Shiaslynn V. Goodson
C/O La Plata Cty. CSE Unit
1060 East 2nd Avenue
Durango, CO 81301-5157

Destiny D. Goodson
c/o Washington County C.Y.S.
Washington, PA 15301