IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| DANIEL J. GOODSON, III, *et al*, | ) | Civil Action No. 08 - 44 |
| | ) | |
| Plaintiffs, | ) | Judge Gary L. Lancaster |
| | ) | Magistrate Judge Lisa Pupo |
| v. | ) | Lenihan |
| | ) | |
| LAWRENCE O. MAGGI, *et al.*, | ) | |
| | ) | Doc. No. 105 |
| Defendants. | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

**I.   RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss (Doc. No. 105) filed by Defendants Westmoreland County, Tom Balya, Tom Ceraso, and Phil Light, Westmoreland County Commissioners, and Mark Gesalman, Westmoreland County Solicitor[1] (hereinafter collectively "Defendants"), be granted with prejudice.

**II.   REPORT**

**A.   Relevant Facts**

Plaintiff Daniel J. Goodson III (hereinafter "Father") is a *pro se* incarcerated individual who has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of himself

---

[1] Defendant Gesalman has been incorrectly identified as the Controller of Westmoreland County in Plaintiffs' Amended Complaint. Plaintiffs concede that he was incorrectly identified and that they intended to name him as the Westmoreland County Solicitor in that he "provides legal advice to and represents the [D]efendants in his official capacity." (Plaintiffs' Answer to Motion to Dismiss, Doc. No. 127 at ¶ 2.)

and his four minor children, D.G. VI, J.G., S.G. and D.G. (Pls.' Compl. Overview.)[2] Plaintiffs assert violations of their first, fourth, fifth, sixth, thirteenth and fourteenth amendment rights. (*Id.*) The complaint contains a plethora of different claims regarding a variety of different situations. The majority of the claims, however, stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiffs have named thirty-seven different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

D.G. VI, J.G., and S.G were born to Father and his former wife, Tara Thompson. (*Id.* at Synopsis.) According to Plaintiffs, Father and Thompson divorced in 2000, and Father filed for custody of D.G. IV, J.G., and S.G. in Westmoreland County Court of Common Pleas (hereinafter "Westmoreland County Court"). (*Id.*) In the meantime, Thompson and children moved to Colorado and she filed for divorce in the La Plata County District Court in Durango, Colorado (hereinafter "Colorado Court"). (*Id.*) Judge John Driscoll relinquished jurisdiction of the case to the Colorado Court. (*Id.* at ¶ 31.) During all or most of these four years, Father was incarcerated in the Allegheny County Jail. (*Id.* at Synopsis.) Father's parental rights were involuntarily terminated by the Colorado Court in 2004. (*Id.*)

In July 2004, D.G. was born as a result of a relationship between Father and Gina Savko. (*Id.*) In December of 2005, Father learned that D.G. was in an unsafe environment and filed for

---

[2]Plaintiffs' original complaint filed on January 1, 2008 contained a number of attachments. On October 17, 2008, Plaintiffs filed an amended complaint (Doc. No. 36), which is essentially the same as the original complaint but without the attachments. For ease of reference, all citations to the complaint in this report and recommendation are to Doc. No. 36.

custody of D.G. in Westmoreland County Court.  (*Id.*; *see also* Westmoreland County Ct. of Com. Pleas, Family Court-Custody Division, Docket No. 123 of 2006D.)  He also filed a complaint with Westmoreland County Children's Bureau.  (Compl. at Synopsis.)  In March of 2006, Father was advised that D.G. was currently residing in Washington County, and to contact Washington County.  (Letter dated 3/1/06 from Judge Driscoll's Law Clerk (copy attached to Compl.–*see* Doc. No. 1-3).)  On July 27, 2006 and August 18, 2006, Washington County Children & Youth Services ("Washington County CYS") filed   Emergency Shelter Petitions and D.G. was ordered to be temporarily placed in foster care pending a hearing on the Petitions.  (Emergency Shelter Petitions filed 7/27/06 and 8/18/06, and Judge Mascara's 8/18/06 Order, at No. 24 July 2006, Washington Co. Ct. Com. Pleas, Juvenile Ct. Div. (copies of which are attached to Compl.–*see* Doc. No. 1-3).)  A hearing was held in Washington County Court of Common Pleas (hereinafter "Washington County Court") on August 21, 2006 on the Emergency Petitions, after which Judge Mark Mascara entered an order directing that D.G. be placed in protective physical and legal custody of Washington County CYS.[3]   Judge Mascara also presided over subsequent juvenile court hearings regarding the Permanency Petition of Washington County CYS to determine the dependency of D.G. from August 2006 to the filing of this federal lawsuit.  (*See* Washington Co. Ct. Com. Pleas, Juvenile Ct.  Div., Docket No. 24 July, 2006/JV 274-06.)  Judge Mascara ruled that D.G. would remain in foster care, despite Father's request that she be placed with members of his family. (Compl. at ¶ 23.)  It further appears from the public docket of Washington County Court that on November 8, 2007, Judge

---

[3]In addition, in his August 21, 2006 order, Judge Mascara denied Father's motion to change D.G.'s placement to paternal aunt's home and motion for change of venue to Westmoreland County, and directed that Father have no contact with D.G. at that time and that mother have weekly supervised visits provided negative drug testing results. (Judge Mascara's 8/21/06 Order, at Docket No. 24 July 2006, Washington Co. Ct. Com. Pleas, Juvenile Ct. Div. (copy of which are attached to Compl.–*see* Doc. No. 1-3).)

Mascara entered an order scheduling another permanency hearing regarding D.G. on January 31, 2008.  (*See* Judge Mascara's Order dated 11/8/07, at Docket No. 24 July, 2006/JV 274-06, Washington Co. Ct. Com. Pleas, Juvenile Ct.  Div. (copy attached to Compl.–*see* Doc. No. 1-3).)  Plaintiffs commenced this federal civil action on January 10, 2008.

Plaintiffs' primary claim is that all Defendants have engaged in a vast conspiracy to deny Father and his family custody and visitation rights to his minor children because of his race.  (*Id.* at ¶¶ 13,14, 19, 23, 24, 29, 31, 35, 36, 44, 47, 48, 49, 51, 52, 58, 63, 70, 71, 76, 77, 81, 84.)

Plaintiffs allege that Judge Driscoll improperly relinquished jurisdiction over the divorce and custody action filed by Father to the Colorado court.  (*Id.* at ¶ 31.)  Plaintiffs assert that Judge Driscoll was aware that Westmoreland County had proper jurisdiction over the case yet nonetheless relinquished jurisdiction and that such rulings violated his due process rights.  (*Id.* at ¶48.)  Father further asserts that although he has no proof, he will show communication with the other Defendants and a conspiracy against him.  (*Id.* at ¶ 49.) Plaintiffs' allegations against the Westmoreland County Court are similar to the allegations against Judge Driscoll, *i.e.,* that the Westmoreland County Court allegedly violated Plaintiffs' rights by improperly relinquishing jurisdiction of the divorce and custody action.  (*Id.* at ¶ 52.)

The Amended Complaint contains no averments concerning Defendants Tom Bayla, Tom Ceraso, Phil Light and Mark Gesalman, who are sued in their capacities as Westmoreland County officials.  *See id.* at ¶ 59.  Specifically, the only averment in the Amended Complaint as to these moving Defendants is found at ¶ 59 as follows:

> Defendant, Westmoreland County, Pennsylvania, is responsible for the implementation of policy, procedure and enforcement of children's bureau, Domestic relation, 10th Judicial Court in aspects financially.  Also other agencies.  All which injured and deprived the plaintiffs.

(*Id.* at ¶ 59.)

Finally, Plaintiffs assert state law claims against all Defendants for outrageous conduct, intentional infliction of emotional distress, and gross negligence.

Plaintiffs seek generally declaratory, injunctive and monetary relief against all Defendants. (*Id.* at Posture.)  With regard to the Defendants who have filed the instant motion to dismiss, Plaintiffs request the following injunctive and/or declaratory relief:

> (1) enjoin the State of Pennsylvania from seeking to enforcing its final judgment in the interest of DG a minor child at JV 274-06, Washington County, Pennsylvania;
> (2) order that the names of the minor children be changed back to their birth names;
> (3) order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents;
> (4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County CYS.

(*Id.*)  In addition, Plaintiffs ask this Court to order (1) the filing of federal criminal charges against those defendants as warranted and (2) a federal investigation of all Defendants' conduct and actions in regard to the complaint.  With regard to monetary relief, Plaintiffs seek from each Defendant compensatory damages in the amount of $50,000 and punitive damages in the amount of $100,000. (*Id.*)

The Defendants have filed a Joint Motion to Dismiss pursuant to FED.R.CIV.P. 12(b)(6). Defendants argue the following in support of their motion: 1) Plaintiffs have failed to state a cause of action for municipal liability; 2) allegations of negligence and gross negligence are insufficient to state a municipal liability claim pursuant to 42 U.S.C. § 1983; and 3) Plaintiffs' claims fail to invoke the Court's subject matter jurisdiction pursuant to the *Rooker-Feldman* doctrine.

Defendants' arguments regarding subject matter jurisdiction are more properly the basis for a motion to dismiss pursuant to FED. R. CIV. P. 12(b)(1).

    **B.**    **Subject Matter Jurisdiction**

A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In the case at bar, Defendants appear to be making a facial challenge, as evidenced by their brief in support of the Joint Motion to Dismiss, as well as the fact that they have not produced any affidavits or evidence to disprove any of Plaintiffs' factual allegations regarding jurisdiction. In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6). *Mortensen,* 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

A Rule 12(b)(1) motion is the proper vehicle for asserting lack of subject matter jurisdiction based upon the *Rooker-Feldman* doctrine. *Rooker v. Fidelity Trust Co.,* 263 U.S. 413, 416 (1923) (holding that under Congressional legislation, only the Supreme Court has the authority to entertain a proceeding to reverse or modify the judgment of a state court, as to do so would constitute an exercise of appellate jurisdiction; district courts, on the other hand, are vested strictly with original jurisdiction and therefore lack authority to review a state court judgment); *Dist. of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983) (holding district court has no subject matter jurisdiction to review final judgments of a state court because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257).

Here, Defendants argue that Plaintiffs' requests for injunctive relief and declaratory judgment are in fact a request to this Court to review and reverse decisions rendered against Father in various state courts. (Doc. No. 106 at 10.) That is, Plaintiffs' federal claim is inextricably intertwined with the adjudications of the state courts in the underlying custody matter because relief can only be granted in the instant matter if this Court concludes that the rulings by the state courts were wrong. The Defendants suggest that essentially, Plaintiffs are asking this Court to overturn state court decisions in the underlying custody matter (and not, in actuality, requesting injunctive or declaratory relief), and therefore, Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine.

The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*,* and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject mater jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482.[4] "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir. 2000); *see also Gulla v. North Strabane Twp*., 146 F.3d 168, 171 (3d Cir. 1998). This

---

[4]Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*. *See Walker v. Horn,* 385 F.3d 321, 329 n.22 (3d Cir. 2004) (citations omitted).

doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights. *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir. 2006) (citing *Exxon Mobil, id.*).[5] The Court in *Exxon Mobil* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman.* Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted). If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id.* As the Court pointed out,

"[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing FED. R. CIV. P. 8(c)).

Shortly after the Supreme Court's determination in *Exxon Mobil*, the United States Court of Appeals for the Third Circuit, while acknowledging the recent *Exxon Mobil* decision, still

---

[5] The *Rooker-Feldman* doctrine applies to final decisions of lower state courts. *Walker v. Horn,* 385 F.3d 321, 329 (3d Cir. 2004) (citation omitted).

8

applied the two-step *Rooker-Feldman* inquiry that it had applied in the past–a claim in federal court will be barred by *Rooker-Feldman* under two circumstances: "first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In Re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). More recently, however, the court of appeals has cautioned that reliance on its pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, and in particular the "inextricably intertwined" prong, may no longer be appropriate. *See, e.g., Gary v. Braddock Cemetary,* 517 F.3d 195, 200 n.5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,* 240 Fed. Appx. 938, 940 n.1 (3d Cir. 2007) (noting that after *Mobil,* "[t]here is little reason to believe that 'inextricably intertwined' . . . does anything more than state a conclusion or describe a claim that meets the requirements of *Exxon*.") (collecting decisions from other courts of appeals).

Although the United States Court of Appeals for the Third Circuit has not expressly ruled on the continued viability of its prior formulation of the *Rooker-Feldman* inquiry since the Supreme Court's decision in *Exxon Mobil,* at least three other courts of appeals have done so. *See, e.g., Hoblock v. Albany County Bd. of Elections,* 422 F.3d 77, 85-89 (2d Cir. 2005); *McCormick v. Braverman,* 451 F.3d 382, 393-94 (6th Cir. 2006); *Davani v. Virginia Dep't of Transp.,* 434 F.3d 712, 717-19 (4th Cir. 2006). This Court finds the discussions by the courts of appeals in *Holblock, McCormick*, and *Davini*, although not binding, are instructive and well reasoned, and thus, provide guidance to this Court in determining the appropriate test for applying *Rooker-Feldman* post-*Exxon Mobil*.

9

The court of appeals in *Hoblock* distilled the Supreme Court's holding in *Exxon Mobil* as setting forth four requirements in order for *Rooker-Feldman* to apply:

> First, the federal-court plaintiff must have lost in state court. Second, the plaintiff must "complain[ ] of injuries caused by [a] state-court judgment[.]" Third, the plaintiff must "invit[e] district court review and rejection of [that] judgment[ ]." Fourth, the state-court judgment must have been "rendered before the district court proceedings commenced"-i.e., *Rooker-Feldman* has no application to federal-court suits proceeding in parallel with ongoing state-court litigation. The first and fourth of these requirements may be loosely termed procedural; the second and third may be termed substantive.

422 F.3d at 85 (quoting *Exxon Mobil*, 544 U.S. at 284) (footnote omitted). Moreover, the "inextricably intertwined" basis for applying *Rooker-Feldman* to bar federal claims no longer appears to provide an independent basis for applying the doctrine post-*Exxon Mobil*. In this regard, the court of appeals in *McCormick* opined that the Supreme Court in *Exxon Mobil*:

> implicitly repudiated the circuits' post- *Feldman* use of the phrase "inextricably intertwined" to extend *Rooker-Feldman* to situations where the source of the injury was not the state court judgment. In short, the phrase "inextricably intertwined" only describes the conclusion that a claim asserts an injury whose source is the state court judgment, a claim that is thus barred by *Rooker-Feldman*.

*McCormick,* 451 F.3d at 394-95 (noting agreement by courts of appeals in *Davani* and *Hoblock* that the phrase "inextricably intertwined" has no independent content and is simply a descriptive label attached to claims that meet the requirements set forth in *Exxon Mobil*) (citing *Davani*, 434 F.3d at 719; *Hoblock*, 422 F.3d at 86-87). Indeed, two panels of the United States Court of Appeals for the Third Circuit appear to agree with this conclusion. *See Gary v. Braddock Cemetary,* 517 F.3d 195, 200 n.5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,* 240 Fed. Appx. 938, 940 n.1 (3d Cir. 2007).

In *Hoblock, McCormick,* and *Davani,* the courts of appeals found that the key to determining whether the *Rooker-Feldman* doctrine applies, post-*Exxon Mobil*, is identifying the source of the injury alleged in the federal complaint. If the source of the injury is the state court decision, then the *Rooker-Feldman* doctrine will apply to divest the district court of jurisdiction. *Hoblock,* 422 F.3d at 87; *McCormick*, 451 F.3d at 393; *Davani,* 434 F.3d at 718-19. The *Hoblock* court provided a further explanation of this core requirement:

> First, this requirement explains why a federal plaintiff cannot escape the *Rooker-Feldman* bar simply by relying on a legal theory not raised in state court. Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the state judgment violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal. This he may not do, regardless of whether he raised any constitutional claims in state court, because only the Supreme Court may hear appeals from state-court judgments.
>
> Further, by focusing on the requirement that the state-court judgment be the source of the injury, we can see how a suit asking a federal court to "den[y] a legal conclusion" reached by a state court could nonetheless be independent for *Rooker-Feldman* purposes. Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.[6]

---

[6]"The subsequent federal suit could, of course be barred by ordinary preclusion principles." *Hoblock*, 422 F.3d at 88 n.6 (citing *Exxon Mobil,* 544 U.S. at 293).

422 F.3d at 87-88.

The *Hoblock* court further noted that a federal plaintiff cannot avoid *Rooker-Feldman* simply by clever pleading, that is, by alleging that actions taken pursuant to a court order violate his rights without ever challenging the court order itself. *Id.* at 88. Thus, with regard to the child custody example discussed above, "if the state has taken custody of a child pursuant to a state judgment, the parent cannot escape *Rooker-Feldman* simply by alleging in federal court that he was injured by the state employees who took his child rather than by the judgment authorizing them to take the child." *Id.* The challenge will be for the courts to identify which federal lawsuits actually complain of injury by state court judgments and which do not. *Id.* Thus, in making this determination, the *Hoblock* court was guided by the following formula: "a federal suit complains of injury from a state-court judgment, even if it appears to complain only of a third party's actions, when the third party's actions are produced by a state-court judgment and not simply ratified, acquiesced in, or left unpunished by it. Where a state-court judgment causes the challenged third-party action, any challenge to that third-party action is necessarily the kind of challenge to the state judgment that only the Supreme Court can hear." *Id.*

In the instant matter, with regard to Plaintiffs' claims against Defendants Westmoreland County, Tom Balya, Tom Ceraso, and Phil Light, Westmoreland County Commissioners, and Mark Gesalman, Westmoreland County Solicitor, the Court finds that all four requirements as set forth in *Exxon Mobil* have been satisfied. First, Father was the losing party in the custody action with regard to D.G. IV, J.G. and S.G., which was initially filed in Westmoreland County Court and subsequently transferred to the Colorado court in 2000. The Colorado Court subsequently

terminated his parental rights to D.G. IV, J.G., and S.G. in 2004.[7] Second, it is clear that the source of Plaintiffs' alleged injuries in this federal action is the state court judgments. Father is suing in federal court for the reinstitution of his parental rights, an award of custody to the parental grandparents, and return of jurisdiction over the custody matters to Westmoreland County Court. Even though Plaintiffs raise violations of federal constitutional rights (substantive and procedural due process) and federal civil rights (discrimination and conspiracy to discriminate based on race), as well as state law claims for an egregious abuse of governmental power, intentional infliction of emotional distress, and gross negligence, these theories of recovery all seek redress for injuries caused by the state court judgments in the underlying custody matters. Moreover, it is clear from Plaintiffs' request for relief that they are seeking reversal of these judgments. Plaintiffs are, in essence, seeking appellate review of the state court judgments, and therefore, the Court finds that the source of Plaintiffs' alleged injuries in this federal action is the state court judgments. The third requirement under *Exxon Mobil* is also satisfied here because, as discussed, Plaintiffs specifically seek an injunction barring enforcement of the state court judgments, and restoration of Father's parental rights and an award of custody to the paternal grandparents which, if granted, would effectuate a reversal of the state courts' judgments. Finally, it is clear that the relinquishment of jurisdiction to the Colorado court was done in 2000, well before the present litigation was commenced. Accordingly, this Court lacks subject matter jurisdiction over the claims asserted against Defendants under *Rooker-Feldman* insofar as Plaintiff seeks relief as to minors D.G. VI, J.G.,

---

[7]This Court is not aware of any judgment from the Westmoreland County Court vis a vis custody of D.G. as this matter appears to have been litigated in the Washington County Court in front of Judge Mascara at Docket No. 24 July 2006/JV 274-06.

and S.G.[8]

### C. Failure to State a Claim

#### 1. Legal Standard

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United

---

[8]The moving Defendants are so far removed from the facts as they relate to the minor child D.G. born in July 2004, that the Court will not engage in the *Rooker-Feldman* analysis as it relates to this minor Plaintiff.

14

States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the *Fowler* court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,*129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

Finally, the Court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

### 2. Analysis

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

In their Brief in Support of Motion to Dismiss, Defendants argue that the Amended Complaint avers no facts of direct involvement of Commissioners Balya, Ceraso, and/or Light, nor are there allegations directed to Solicitor Gesalman. Instead, argues Defendants, it appears that the sole basis for Plaintiffs' claims against them is municipal liability. (Doc. No. 106 at 6-7.)

In *Monell v. New York City Dep't of Social Servs.*, 436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject

to liability under 42 U.S.C. § 1983. In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of *respondeat superior*. Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell*, 436 U.S. at 694. The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible. *Id.*

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation. *Id*. at 690-91. A municipal policy is made when a decision-maker issues an official proclamation or decision. *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990). A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law. *Andrews*, 895 F.2d at 1480. To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk. *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000). Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right. *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990). That is, a plaintiff must demonstrate an "affirmative link" or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

As noted above, the Amended Complaint contains no averments concerning Defendants Tom Bayla, Tom Ceraso, Phil Light and Mark Gesalman, who are sued in their capacities as Westmoreland County officials.[9] *See id.* at ¶ 59. As stated on page 5 herein, the only averment in the Amended Complaint as to these moving Defendants is found at ¶ 59 as follows:

> Defendant, Westmoreland County, Pennsylvania, is responsible for the implementation of policy, procedure and enforcement of children's bureau, Domestic relation, 10th Judicial Court in aspects financially. Also other agencies. All which injured and deprived the plaintiffs.

Consequently, the averments of the Amended Complaint fail to satisfy the requirements of *Twombly* and its progeny. The Amended Complaint contains no facts such that the moving municipal defendants should be found liable on the basis of an official policy, and if so, what that official policy is. Likewise, if Plaintiffs do not rely on the existence of an official policy as the cause of Plaintiffs' alleged constitutional violations, Plaintiffs aver no facts suggesting the existence of a custom or practice so permanent and widespread, that it had the force of official policy. *See Andrews*, 895 F.2d at 1480. If pursuing a custom or practice theory, Plaintiffs allege no facts that a Defendant decision-maker had notice that the alleged constitutional violation could occur and that this decision-maker acted with deliberate indifference to this known risk. *See Berg*, 219 F.3d at 276. Further, Plaintiffs' averments that unspecified defendants generally are negligent, (Doc. No. 36 at ¶ 29) or "grossly negligent," (Doc. No. 36 at ¶ 33) fall short of the deliberate indifference standard required to make out a municipal liability claim. *Id.* Giving the *pro se* Plaintiffs every benefit of the doubt, the averments of the 52-page amended complaint

---

[9]"An official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Kentucky v. Graham,* 473 U.S. 159, 166 (1985).

suggest that any attempt by Plaintiffs to amend for a second time would be futile.[10] Moreover, Plaintiffs' claims against these moving defendants are barred by the *Rooker-Feldman* doctrine as discussed, *supra*, at pp. 7-14.

Accordingly, Plaintiffs' claims against these Defendants should be dismissed for failure to state a claim upon which relief may be granted.

### III. Conclusion

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss (Doc. No. 105) filed by Defendants Westmoreland County, Tom Balya, Tom Ceraso, Phil Light, Westmoreland County Commissioners, and Mark Gesalman, Westmoreland County Solicitor, be granted with prejudice.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and FEDERAL RULE OF CIVIL PROCEDURE 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: December 21, 2009                                BY THE COURT:

---

[10] The Court of Appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir.2008). The Court in this matter is recommending dismissal with prejudice and is not recommending a grant of leave to amend because it believes such amendment would be both futile and inequitable.

_____
LISA PUPO LENIHAN
United States Magistrate Judge

cc:   All Counsel of Record
      *Via Electronic Mail*

      Daniel J. Goodson, III
      GW1171
      SCI Mahanoy
      301 Morea Road
      Frackville, PA 17932