**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| DANIEL J. GOODSON, III, *et al*,　　) | Civil Action No. 08 - 44 |
| 　　　　　　　　　　　　　　　　　　) | |
| 　　　　　Plaintiffs,　　　　　　　　　) | Judge Gary L. Lancaster |
| 　　　　　　　　　　　　　　　　　　) | Magistrate Judge Lisa Pupo |
| v.　　　　　　　　　　　　　　　　　) | Lenihan |
| 　　　　　　　　　　　　　　　　　　) | |
| LAWRENCE O. MAGGI, *et al*.,　　　) | |
| 　　　　　　　　　　　　　　　　　　) | Doc. No. 125 |
| 　　　　　Defendants.　　　　　　　　) | |
| 　　　　　　　　　　　　　　　　　　) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss (Doc. No. 125) filed by Defendants Harry Wilcox, incorrectly identified as Larry Wilcox, and Danielle Wilcox, be granted with prejudice.

**II.   REPORT**

**A.   Relevant Facts**

Plaintiff Daniel J. Goodson III (hereinafter "Father") is a *pro se* incarcerated individual who has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of himself and his four minor children, D.G. VI, J.G., S.G. and D.G.  (Pls.' Compl. Overview.)[1]  Plaintiffs assert violations of their first, fourth, fifth, sixth, thirteenth and fourteenth amendment rights.  (*Id.*)  The complaint contains a plethora of different claims regarding a variety of different situations.  The

---

[1] Plaintiffs' original complaint, received by the Clerk of Courts on January 11, 2008, contained a number of attachments.  On October 17, 2008, Plaintiffs filed an amended complaint (Doc. No. 36), which is essentially the same as the original complaint but without the attachments.  For ease of reference, all citations to the complaint in this report and recommendation are to Doc. No. 36.

majority of the claims, however, stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiffs have named thirty-seven different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

In July 2004, D.G. was born as a result of a relationship between Father and Gina Savko. (*Id.* at ¶ 31.) On July 25, 2006, D.G.'s mother gave birth to a sibling. (Order, Emergency Shelter Hearing of August 21, 2006, attached to Plaintiffs' original complaint [hereinafter "(Doc. No. 1-3 at 40-41.)"]. Both mother and newborn tested positive for cocaine. The following day, Washington County Children and Youth Services located D.G. at the home of a family friend, Defendants Harry and Danielle Wilcox [hereinafter "Defendants"]. Mother at that time could not be located. (Doc. No. 1-3 at 40-41.) Thereafter, D.G. was permitted to remain in the kinship care of the Defendants on July 27, 2006. (Juvenile Docket Sheet for the Court of Common Pleas of Washington County, attached to Plaintiffs' original complaint, Doc. No. 1-5 at 4.) Through counsel, Plaintiff Father requested that the court change D.G.'s placement to D.G.'s paternal aunt. The Court of Common Pleas of Washington County, Juvenile Division, denied Plaintiff Father's request. (Doc. No. 1-3 at 40-41.)

On August 18, 2006, at the request of the Washington County Children and Youth Services, D.G. was transferred from the kinship care of the Defendants, to foster care at an undisclosed location. (Emergency to Transfer Placement Order, attached to Plaintiffs' original complaint, Doc. No. 1-3 at 39.) In the Emergency Shelter Petition, Washington County Children

and Youth Services indicated that upon learning of D.G.'s location, Plaintiff Father made numerous phone calls to Defendants to the point that the Allegheny County Jail eventually blocked the Defendants' phone number. The Defendants alleged that some of Plaintiff Father's calls were threatening. (Emergency Shelter Petition, attached to Plaintiffs' original complaint, Doc. No. 1-3 at 38.) Consequently, D.G. was in the care of these moving Defendants from July 24, 2006 until August 18, 2006.

In his Amended Complaint, Plaintiff Father generally refers to these moving Defendants as occupying a "crackhouse" that Washington County Children and Youth Services refers to as kinship care, when the Defendants were in no way related to D.G. (Doc. No. 36 at ¶¶ 2, 32.) Likewise, in describing his efforts to remove D.G. from the Defendants' residence, he refers to "that bogus kinship care, crackhouse/whore house environment." (*Id.* at ¶ 20.)

Plaintiff Father's allegations against Defendants are found in Paragraphs 70 and 71 of the Amended Complaint. In Paragraph 70, Father avers that Defendants endangered D.G. by "subjecting child to illegal narcotics, placed in harms way," not telling "authorities" where D.G. was located even though they knew "authorities" were searching for D.G., mistreating and abusing D.G., and giving false testimony under oath. (*Id.* at ¶ 70.) Finally, Plaintiff Father avers that these moving Defendants conspired with Defendants Marcus, Kramer, Judge Mascara, Gray, Berdine, and Savko to racially discriminate against him. (*Id.* at ¶ 71.)

B.      **Legal Standard**

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A

complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the *Fowler* court set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,*129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'-'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In addition to the complaint, courts may consider matters of public record and other matters of which a court may take judicial notice, court orders, and exhibits attached to the complaint. *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1385 n.2 (3d Cir. 1994). A court may also consider indisputably authentic documents. *Spruill v. Gillis,* 372 F.3d 218, 223 (3d Cir. 2004). Finally, the Court must employ less stringent standards when considering *pro se* pleadings than when judging the work product of an attorney. *Haines v. Kerner,* 404 U.S. 519, 520 (1972).

**C.     Analysis**

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

In their Brief in Support of Motion to Dismiss, Defendants first argue that they cannot be liable to Plaintiff for violation of his constitutional rights because they are not state actors. (Doc. No. 126 at 5.) Plaintiff Father responds that Defendants are liable because they acted "with connection to the government." (Doc. No. 148 at 8.) The United States Court of Appeals for the Third Circuit has specifically held that foster parents in Pennsylvania are not state actors for purposes of § 1983 liability. *Leshko v. Servis,* 423 F.3d 337 (3d Cir. 2005). As argued by Defendants, their connection with the government is even more attenuated because they assumed care for D.G. upon her mother's request while she was in the hospital giving birth to D.G.'s sibling. Washington County Children and Youth Services only became involved with D.G. once it was notified that Savko left the hospital without her newborn, and against medical advice. Consequently, Defendants never became foster parents, but provided only interim care for D.G.

from July 24, 2006 to August 18, 2006. Clearly, Defendants herein are not state actors for purposes of 42 U.S.C. § 1983.

In the alternative, Defendants' next two arguments concern whether Plaintiff Father's Amended Complaint states a Substantive Due Process and/or Equal Protection claim. The Court need not reach these arguments in light of its previous discussion that Defendants are not state actors. Consequently, Defendants cannot be liable under § 1983 for any underlying constitutional violation, and any Substantive Due Process and/or Equal Protection claims against these Defendants must be dismissed with prejudice. Any attempt by Plaintiff to amend these claims will be futile[2].

Next, Defendants address Plaintiff Father's averments sounding in conspiracy pursuant to 42 U.S.C. §§ 1983, 1985, and 1986.

As to § 1983, Defendants' argument is correct that because there can be no constitutional violations under § 1983 in the absence of state action, likewise, there can be no § 1983 conspiracy claim. As noted by the United States Court of Appeals for the Third Circuit, "[i]n order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." *Ridgewood Bd. Of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 254 (3d Cir. 1999). In addition, absent a showing of an underlying violation of a federal right, no cause of action for conspiracy under § 1983 can be established. Consequently, Plaintiffs' conspiracy claims pursuant to § 1983 must be dismissed with prejudice as any attempt to amend will be futile.

---

[2]The Court of Appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir.2008).

With regard to any conspiracy claims under 42 U.S.C. § 1985(3), Defendants contend that Plaintiff has failed to state a claim thereunder with regard to these moving Defendants.

Unlike § 1983, state action is not required to support a claim pursuant to § 1985(3). *Griffin v. Breckenridge,* 403 U.S. 88 (1971)  In order to state a claim under § 1985(3), the Plaintiff must allege four elements:  1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) injury to a person or property or deprivation of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983) (citing *Griffin,* 403 U.S. at 102)).  Plaintiff must set forth specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators.  *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)),*abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.,* 326 F.3d 392, 400 (3d Cir. 2003); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991), *later proceeding*, *Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992), *superseded by statute,* Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, *as discussed in Nyhuis v. Reno,* 204 F.3d 65 (3d Cir. 2000)  Even though the Supreme Court held in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), that the allegations in a § 1983 complaint cannot be held to a standard of heightened specificity, a plaintiff must allege conspiracy with some particularity.  *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman,* 507 U.S. at 168).  "While the pleading standard under [Fed. R. Civ. P.] Rule 8 is a liberal one, mere incantation of the words

'conspiracy' or 'acted in concert' does not talismanically satisfy the Rule's requirements." *Loftus v. Southeastern Pennsylvania Transportation Authority*, 843 F. Supp. 981, 987 (E.D. Pa. 1994).

First, as to Plaintiff Father's attempt to allege a conspiracy between the moving Defendants and Savko, Plaintiff Father has failed to allege any facts that indicate that the Defendants entered into any agreement or plan to deprive Plaintiff of his constitutional rights. He has plead no facts suggesting racial or other class bias with regard to Defendants' alleged conspiracy with Savko.  Second, as to Plaintiff Father's attempt to allege a conspiracy between the moving Defendants and Defendants Marcus, Kramer, Mascara, Gray and Berdine, Plaintiff Father has failed to allege any facts from which a conspiratorial agreement between these defendants could be inferred, nor has Plaintiff Father averred any facts to show an act in furtherance of the agreement.  "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (quotation omitted). Accordingly, he has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1985(3).  *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259 (5th Cir. 1976) (dismissal of cause of action for damages arising out of alleged conspiracy to interfere with civil rights was proper where convict's conclusory pleadings failed to allege any facts on which to base a conspiracy charge).

With regard to 42 U.S.C. § 1986, Defendants argue that Plaintiff Father's claims pursuant to §§ 1986 and 1988 must also be dismissed with prejudice because a § 1986 claim cannot exist without a viable § 1985 claim, and § 1988 does not create a private cause of action.  (Doc. No. 126 at 11-12.)

42 U.S.C. § 1986 provides in part as follows:

> Every person who, having knowledge that any of the wrongs conspired to be done, and mentioned in section 1985 of this title, are about to be committed, and having power to prevent or aid in preventing the commission of the same, neglects or refuses so to do, if such wrongful act be committed, shall be liable to the party injured, or his legal representatives, for all damages caused by such wrongful act, which such person by reasonable diligence could have prevented; and such damages may be recovered in an action on the case; and any number of persons guilty of such wrongful neglect or refusal may be joined as defendants in the action . . . .

42 U.S.C. § 1986.

Liability under 42 U.S.C. § 1986 is predicated on knowledge of a violation of 42 U.S.C. § 1985. *Bell v. City of Milwaukee*, 746 F.2d 1250, 1256 (7th Cir. 1984), *overruled on other grounds by Russ v. Watts,* 414 F.3d 783 (7th Cir. 2005). As stated above, Plaintiff has not alleged sufficient facts to support liability under 42 U.S.C. § 1985(3). Consequently, his claim under 42 U.S.C. § 1986 should be dismissed with prejudice. *Accord Rouse v. Benson*, 193 F.3d 936, 943 (8th Cir. 1999) (holding that inmate's allegations did not support liability under 42 U.S.C. §§ 1985(3) or 1986 as he failed to demonstrate a meeting of the minds of the alleged conspirators). Any attempt to amend this claim would be futile.

Finally, 42 U.S.C. § 1988 does not create an independent cause of action for the violation of federal civil rights. *Moor v. County of Alameda,* 411 U.S. 693, 702-03 (1973). Therefore, Plaintiff's § 1988 claim should be dismissed with prejudice.[3]

## III.   Conclusion

---

[3] Clearly, any attempt to amend this claim would be futile.

For the reasons set forth above, it is respectfully recommended that the Motion to Dismiss (Doc. No. 125) filed by Defendants Harry Wilcox, incorrectly identified as Larry Wilcox, and Danielle Wilcox, be granted with prejudice.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and FEDERAL RULE OF CIVIL PROCEDURE 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

Dated: February 22, 2010                      BY THE COURT:

                                              LISA PUPO LENIHAN
                                              United States Magistrate Judge

cc:    All Counsel of Record
       Via Electronic Mail

       Daniel J. Goodson, III
       GW1171
       SCI Mahanoy
       301 Morea Road
       Frackville, PA 17932