**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL J. GOODSON, III, *et al*, | ) | Civil Action No. 08 - 44 |
| | ) | |
| Plaintiff, | ) | Chief Judge Lancaster |
| | ) | Chief Magistrate Judge Lenihan |
| v. | ) | |
| | ) | |
| LAWRENCE O. MAGGI, *et al.*, | ) | ECF No. 184 |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss (ECF No. 184) filed by

Defendant District Court of La Plata County, Colorado be granted.

**II.    REPORT**

**A.    Relevant Facts**

Plaintiff Daniel J. Goodson III (hereinafter "Father" or "Plaintiff") is a *pro se* individual

who has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of

himself and his four minor children, D.G. VI, J.G., S.G. and D.G.  (ECF No. 36 at Overview.)[1]

At ECF No. 242 Chief District Judge Lancaster dismissed the claims of minor Plaintiffs without

prejudice, and on December 23, 2010, these minor children were terminated as parties in the

above-captioned case.  Therefore, Father, Daniel J. Goodson, III, is the only remaining Plaintiff.

Plaintiff asserts violations of his First, Fourth, Fifth, Sixth, Thirteenth and Fourteenth

---

[1] Father's original Complaint, received by the Clerk of Courts on January 11, 2008, contained a number of
attachments.  On October 17, 2008, Father filed an Amended Complaint (ECF No. 36), which is essentially the same
as the original Complaint but without the attachments.  For ease of reference, all citations to the
Complaint in this Report and Recommendation are to ECF No. 36.

Amendment rights. (ECF No. 36 at Overview.) The Amended Complaint contains a plethora of different claims regarding a variety of different situations. The majority of the claims, however, stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiffs have named 37 different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

Presently before the Court is a Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12 (b)(1) and 12 (b)(6) filed by Defendant La Plata District Court. D.G. VI, J.G., and S.G (collectively "children") were born to Father and his former wife, Defendant Tara Thompson ("Thompson"). (ECF No. 36 at Synopsis.) According to Plaintiff, Father and Thompson divorced in 2000, and he filed for custody of the children in Westmoreland County Court of Common Pleas ("Westmoreland County Court"). (ECF No. 36 at Synopsis.) In the meantime, Thompson and children moved to Colorado and she filed for divorce in the La Plata County District Court in Durango, Colorado (hereinafter "Colorado Court"). (ECF No. 36 at Synopsis.) Defendant Judge John Driscoll of the Westmoreland County Court relinquished jurisdiction of the case to the Colorado Court. (ECF No. 36 at ¶ 31.) During all or most of these four years, Father was incarcerated in Allegheny County Jail. (ECF No. 36 at Synopsis.) Father's parental rights to D.G. VI, J.G., and S.G were involuntarily terminated by the Colorado Court in 2004. (ECF No. 36 at Synopsis.)

Plaintiff seeks generally declaratory, injunctive and monetary relief against all Defendants. (ECF No. 36 at Posture.) With regard to the Colorado Court, which has filed the instant motion to dismiss, Plaintiff requests the following injunctive and/or declaratory relief:

(1) declare Colorado State Court's judgment null and void and reverse;

(2) order that the names of the minor children be changed back to their birth names;

(3) order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents;

(4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County CYS;

(5) order that an injunction issue to disqualify the Colorado Court and relieve it of any jurisdiction; and

(6) order a federal investigation of all Defendants' conduct and actions in relating to the Amended Complaint.

(ECF No. 36 at Posture.) In addition, Plaintiff also requests an order directing (1) the filing of federal criminal charges against those Defendants as warranted and (2) a federal investigation of all Defendants' conduct and actions in regard to the complaint. With regard to monetary relief, Plaintiff seeks from each Defendant compensatory damages in the amount of $50,000 and punitive damages in the amount of $100,000. (ECF No. 36 at Posture.)

In his response (ECF No. 210) to the Colorado Court's Motion to Dismiss, Plaintiff states that the following averments of the Amended Complaint are directed against the Colorado Court (as well as other defendants):

1) That Plaintiff has a right to protect and communicate with his minor children although he is temporarily incarcerated, and that Defendants have conspired to interfere with his civil rights.  (ECF No. 36 at ¶ 17.)

2) That Defendants, over a period of hearings, told him that he would never see any of his children again, including D.G., and that his parental rights would eventually be terminated.  (ECF No. 36 at ¶ 19.)

3) Plaintiff avers that his injuries from Defendants' actions are continuing and he is not seeking medical, psychiatric and legal assistance.  He states that he suffers from migraine headaches, severe depression and mood disorders as he continues to fight for his family.  (ECF No. 36 at ¶ 25.)

4) That all Defendants are negligent in violating Plaintiff's due process and equal protection rights through false statements, conspiracy, gross and malicious actions, and acting outside the scope of their professional capacities acting under color of state law.  Plaintiff further avers that Defendants have tried to preclude Plaintiff from filing complaints, and exercising his appellate rights, forbade his testimony, as well as his freedom of speech to the court and news media.  He also avers that Defendants have manipulated the legal system to cause him harm by stealing his rights and freedoms to his children.  Plaintiff further avers that all have made racial slurs/remarks towards him and his family.  (ECF No. 36 at ¶ 29.)

5) Plaintiff avers that all minor children's ties with Plaintiff and his family (who are black), have been severed by Defendants.  Plaintiff states that "[a]ll ties with the children's natural paternal family tree have been negligently and grossly terminated

with extreme racial bias by the defendants from the start of proceedings involving minor children.  (ECF No. 36 at ¶ 35.)

6) Specifically, as to the Colorado Court, Plaintiff avers that it grossly and maliciously violated Plaintiff's due process rights.  Plaintiff alleges that the evidence presented at the termination proceedings was not clear and convincing, statements were unsubstantiated, and no evidence was presented "to support any action."  (ECF No. 36 at ¶ 37.)  Plaintiff was not afforded counsel, and no guardian ad litem was appointed for minor children.  Further, Plaintiff avers that he was not advised of his right to counsel or the right to appeal.  (ECF No. 36 at ¶ 37.)

7) Plaintiff alleges that Judge Walker, then a magistrate in the Colorado Court, together with Defendants Thompson and the Colorado Court, under color of state law, acted outside the scope of their duties to deprive him of his federal rights, and that they conspired against him, denying him equal protection of the laws.  He adds that the Colorado Court involuntarily terminated his parental rights on clearly falsified and frivolous evidence.  Plaintiff avers that the biological mother of all but one of his children, Defendant Thompson, was employed by an agency of, or for, the Colorado Court and that she used "her influence and constituency to ascertain decision and judgments of [the] court in her favor . . . ."  (ECF No. 36 at ¶¶ 38-40.)  Plaintiff also indicates that Defendant Thompson is a convicted felon and "has a history of *crimen falsi.*"  (ECF No. 36 at ¶ 39.)

8) Plaintiff also avers that the Colorado Court relied on lies by Defendant Thompson in involuntarily terminating Plaintiff's parental rights, and that Plaintiff was never informed of "defense opportunity or appeal opportunity."  (ECF No. 36 at ¶ 41.)

9) In Paragraph 53 of the Amended Complaint, Plaintiff alleges that Defendant Judge Walker, then a magistrate in the Colorado Court, acting under color of law and outside the scope of his duties, denied Plaintiff his right to counsel, disregarded the best interests of Plaintiffs' children, relied on circumstantial evidence and hearsay, and avers that Judge Walker is a racist, especially concerning interracial relationships. Plaintiff further alleges that the Colorado Court conspired with others to deprive Plaintiff of his constitutional rights before, during and after court proceedings, and that he was aware of the alleged conflict of interest because of Defendant Thompson's employment with the court. (ECF No. 36 at ¶ 53.)

10) Plaintiff avers that all defendants conspired with one another by off record comments, internet exchanges, and with written and telephonic communications. (ECF No. 36 at ¶ 84.)

11) Finally, Plaintiff asserts state law claims of outrageous conduct, intentional infliction of emotional distress, and gross negligence against all Defendants.

**B.**   <u>**Legal Standards**</u>

PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Amended Complaint because p*ro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Further, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In the case at bar, the Colorado Court presents a facial challenge. (Brief in Support of Motion to Dismiss, ECF No. 195 at 3.) In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6). *Mortensen,* 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

In support of its Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, the Colorado Court argues that Plaintiff's claims are barred by the Eleventh Amendment because under Colorado law, it is an agency of the State of Colorado. The Colorado Court also argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine in that Plaintiff seeks appellate-type review of a final judgment of the Colorado Court. In response, Plaintiff contends that the Colorado Court was acting in its individual capacity and its actions were so egregious that it has waived its Eleventh Amendment immunity. Plaintiff also argues that this case involves a state court conspiracy and does not involve a Colorado state court judgment. Finally, Plaintiff concedes that he "seeks no redress for injuries of their unlawful and highly questionable court proceedings . . . but here Plaintiff[] seek[s] redress as to the State Law claims/violations perpetrated by these Defendants in their individual capacities while on some occasions during official actions." (Plaintiff's Answer to Motion to Dismiss, ECF. No. 210 at 2.)

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure

tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A

complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state

a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556

(2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-

46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at

555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further

explained:

> The plausibility standard is not akin to a "probability requirement,"
> but it asks for more than a sheer possibility that a defendant has
> acted unlawfully. Where a complaint pleads facts that are "merely
> consistent with" a defendant's liability, it "stops short of the line
> between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the

United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County

of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context),

and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as

follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations
> will no longer survive a motion to dismiss: "threadbare recitals of
> the elements of a cause of action, supported by mere conclusory

statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent
dismissal, all civil complaints must now set out "sufficient factual
matter" to show that the claim is facially plausible. This then
"allows the court to draw the reasonable inference that the
defendant is liable for the misconduct alleged." *Id.* at 1948. The
Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must
show that the allegations of his or her complaints are plausible. *See
Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler,* 578 F.3d at 210.

Thereafter, In light of *Iqbal,* the United States Court of Appeals for the Third Circuit in

*Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009),* set forth a two-prong test to

be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated.
> The District Court must accept all of the complaint's well-pleaded
> facts as true, but may disregard any legal conclusions. [*Iqbal,*129
> S. Ct. at 1949]. Second, a District Court must then determine
> whether the facts alleged in the complaint are sufficient to show
> that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In
> other words, a complaint must do more than allege the plaintiff's
> entitlement to relief. A complaint has to "show" such an
> entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the
> Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts
> do not permit the court to infer more than the mere possibility of
> misconduct, the complaint has alleged-but it has not 'show [n]'-
> 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949.
> This "plausibility" determination will be "a context-specific task
> that requires the reviewing court to draw on its judicial experience
> and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In support of the Motion to Dismiss pursuant to Rule 12(b)(6), the Colorado Court argues

that Plaintiff has failed to state a claim as a matter of law because States and their agencies are

not persons with the meaning of §§ 1983, 1985(3) and 1986. In addition, Plaintiff's claims for

injunctive and declaratory relief are barred by the Anti-Injunction Act, 28 U.S.C. § 2283.

Further, Plaintiff's claims fail to satisfy the facial plausibility requirements of *Twombly*.

Plaintiff responds that the "Amended Complaint clearly places Defendants on notice and shows entitlement of relief that is plausible on its face." (Plaintiff's Answer to Motion to Dismiss, ECF. No. 210 at 2.)

## C.     Analysis

MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

11th Amendment Immunity

A Rule 12(b)(1) motion is the proper vehicle for asserting Eleventh Amendment immunity because the Eleventh Amendment "is a jurisdictional bar which deprives federal courts of subject matter jurisdiction." *Blanciak v. Allegheny Ludlum Corp.*, 77 F.3d 690, 694 n. 2 (3d Cir. 1996).

The Eleventh Amendment bars civil rights suits against a state in federal court by private parties where the state has not consented to such action. *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). This immunity applies even to claims seeking injunctive relief. *Id.*; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (holding Eleventh Amendment immunity applies "regardless of the nature of the relief sought."). Eleventh Amendment immunity protects entities created by state governments that operate as alter egos or arms of the State. *See Lake Country Estates v. Tahoe Regional Planning* Agency, 440 U.S. 391, 402 (1979) (denying Eleventh Amendment Immunity to a bi-state agency that was more akin to a political subdivision than an arm of the State); *Ambus v. Granite Bd. Of Educ.*, 995 F.2d 992, 994 (10th Cir. 1993) (en banc) (Eleventh Amendment immunity "extends only to the states themselves and to those governmental entities that are 'arms of the state.'"). The La Plata District Court is the State of Colorado's Sixth Judicial

District Court. § 13-5-107, Colo. Rev. Stat. (2009). District Courts are created within the Judicial Department of the State of Colorado pursuant to power vested in the Colorado General Assembly by the state constitution. Colo. Const. art. VI, § 1, §§ 9-10; *see* § 13-5-101, Colo. Rev. Stat. (2009). Therefore, district courts in Colorado are departments or arms of the State. In addition, none of the factual allegations contained in the Amended Complaint indicate or even suggest that the District Court of La Plata County, Colorado consented to be sued by Plaintiff, a private party, in this federal court. Therefore, the District Court of La Plata County, Colorado is immune from suit by the Eleventh Amendment, and consequently, this Court lacks subject matter jurisdiction over these Defendants.

Rooker-Feldman

The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482.[2] "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp*., 146 F.3d 168, 171 (3d Cir.1998). This

---

[2] Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*. *See Walker v. Horn*, 385 F.3d 321, 329 n.22 (3d Cir. 2004) (citations omitted).

doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights.  *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir.2006) (citing *Exxon Mobil, id.*).[3]  The Court in *Exxon Mobil* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman.*  Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party."  *Exxon Mobil,* 544 U.S. at 293 (citations omitted).  If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id.*  As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter."  *Id.* (citing Fed. R. Civ. P. 8(c)).

Shortly after the Supreme Court's determination in *Exxon Mobil*, the United States Court of Appeals for the Third Circuit, while acknowledging the recent *Exxon Mobil* decision, still applied the two-step *Rooker-Feldman* inquiry that it had applied in the past–a claim in federal court will be barred by *Rooker-Feldman* under two circumstances: "first, if the federal claim was

---

[3] The *Rooker-Feldman* doctrine applies to final decisions of lower state courts.  *Walker*, 385 F.3d at 329 (citation omitted).

actually litigated in state court prior to the filing of the federal action or, second, if the federal

claim is inextricably intertwined with the state adjudication, meaning that federal relief can only

be predicated upon a conviction that the state court was wrong." *In Re Knapper*, 407 F.3d 573,

580 (3d Cir. 2005).  More recently, however, the court of appeals has cautioned that reliance on

its pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, and in particular the "inextricably

intertwined" prong, may no longer be appropriate.  *See, e.g., Gary v. Braddock Cemetery,* 517

F.3d 195, 200 n. 5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,*

240 F. App'x 938, 940 n.1 (3d Cir. 2007) (noting that after *Mobil,* "[t]here is little reason to

believe that 'inextricably intertwined' . . . does anything more than state a conclusion or describe

a claim that meets the requirements of *Exxon*.") (collecting decisions from other courts of

appeals).

      In 2010, the United States Court of Appeals for the Third Circuit rejected its pre-*Exxon*

*Mobil* formulation of the *Rooker-Feldman* inquiry, and established the following test, based on

the Supreme Court's holding in *Exxon Mobil*:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply:  (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010)

(quoting *Exxon Mobil,* 544 U.S. at 284). Furthermore, in formulating the four-part test, the court

of appeals determined that the phrase "inextricably intertwined" neither created an additional

legal test nor expanded the scope of the doctrine beyond challenges to state-court judgments.  *Id.*

at 170.  Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a

judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* (alteration to original) (citing *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1141 (10th Cir. 2006)). Hence, the court of appeals opined that the phrase is no more than "a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil.*" *Id.* at 170 (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 87 (2d Cir. 2005)).

The court of appeals in *Great Western* found that the key to determining whether *Rooker-Feldman* barred a claim lies within the second and fourth requirements of the four-part test. 615 F.3d at 166. Essentially, the second requirement – plaintiff must complain of injuries caused by the state court judgment – is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir. 2006)). The court of appeals offered the following illustration of a situation where the state court judgment itself was the source of the injury:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the *state judgment* violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

*Id.* at 166-67 (emphasis added) (citing *Hoblock,* 422 F.3d at 87-88). By contrast, the court of appeals noted that in the following example, the source of the injury was the defendants' actions (as opposed to the state court judgment), even though the federal lawsuit asks the federal court to deny a legal conclusion reached by the state court:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging

injury based on the employer's discrimination. The fact that the
state court chose not to remedy the injury does not transform the
subsequent federal suit on the same matter into an appeal,
forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 167 (citing *Hoblock*, 422 F.3d at 88).  The court of appeals further explained that a useful

guidepost in determining the source of the injury is the injury's timing, "that is, whether the

injury complained of in federal court existed prior to the state-court proceedings and thus could

not have been 'caused by' those proceedings." *Id.*

The fourth requirement of the four-part test – that the plaintiff must invite federal court

review and rejection of the state court judgment – is closely related to the second requirement.

*Id.* at 168 (quoting *Bolden,* 441 F.3d at 1143).  The fourth requirement focuses, however, on

"whether the federal plaintiff's claims will require appellate review of state-court decisions by

the district court." *Id.* at 169. Moreover, it looks at the relief that is requested by the plaintiff.

In *Great Western*, the plaintiff claimed that due to an alleged conspiracy between the

arbitrator, numerous attorneys, and state court judges, the state court's decisions had been

predetermined before the hearing had taken place, violating its constitutional right to a fair

hearing.  *Id.* at 171.  When addressing the second and fourth requirements, the court of appeals

relied on the reasoning used by the United States Court of Appeals for the Seventh Circuit in two

separate cases with similar claims.  *Id.*

In *Nesses v. Shepard,* the *Great Western* court observed that "the federal plaintiff alleged

that his losses in state court were the product of a conspiracy among the judges and lawyers." *Id.*

(citing *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir. 1995)). But even though the *Great*

*Western* court acknowledged that the federal plaintiff was, in a sense, attacking the ruling and

decision of the state court, because the federal plaintiff "alleged that *'people involved in the*

*decision violated some independent right of his,* such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he [could], without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right.'" *Id.* (quoting *Nesses,* 68 F.3d at 1005) (emphasis in original). Therefore, as a part of the plaintiff's claim for damages, the *Great Western* court found that the plaintiff may show that the violation had caused the state court's decision to be adverse to him, thus doing him harm. *Id.* (citing *Nesses,* 68 F.3d at 1005).

Next, the *Great Western* court noted the reasoning of the court of appeals in *Brokaw v. Weaver,* 305 F.3d 660, 665 (7th Cir. 2002). In that case, the plaintiff contended that her relatives and certain officials had "'conspired – prior to any judicial involvement – to cause false child neglect proceedings to be filed, resulting in her removal from her home in violation of her … substantive and procedural due process rights[.]'" *Great Western,* 615 F.3d at 172 (quoting *Brokaw,* 305 F.3d at 665). Whether the alleged conspiracy would have caused the plaintiff to suffer any damages, absent the state court order, was found to be irrelevant. *Id.* The *Brokaw* court held that *Rooker-Feldman* did not bar the plaintiff's claim, "'because her claim for damages [was] based on an alleged independent violation of her constitutional rights. It was this separate constitutional violation which caused the adverse state court decision.'" *Id.* (quoting *Brokaw,* 305 F.3d at 667).

In applying the reasoning of the Court of Appeals for the Seventh Circuit, the court in *Great Western* found that the federal plaintiff was "not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution. Instead, [the federal plaintiff] claim[ed] that 'people involved in the decision violated some independent right,' that is, the right to an impartial forum." *Id.* (quoting *Nesses,* 68 F.3d at 1005). Because the federal plaintiff based its claim on an alleged independent violation of its constitutional

rights, the *Great Western* court found that actions of the defendants and members of Pennsylvania judiciary, and not the state court decisions themselves, were the source of the federal plaintiff's purported injury. *Id.* (quoting *Brokaw*, 305 F.3d at 667).

Although the court of appeals' finding on the second requirement was enough to render *Rooker-Feldman* inapplicable to the case, the *Great Western* court examined the facts as applied to the fourth requirement as well. *Id.* at 173. The court of appeals found that "if [the federal plaintiff] could prove the existence of a conspiracy to reach a predetermined outcome in state court, it could recover nominal damages for this due process violation." *Id.* (citing *Carey*, 435 U.S. at 262-64). Because the merits of the state court decisions were immaterial to the existence of the alleged violation, the court of appeals held that the federal plaintiff's "entitlement to such damages could be assessed without any analysis of the state-court judgments. To recover for more than the alleged due process violation, however, [the federal plaintiff] would have to show that the adverse state-court decisions were entered erroneously." *Id.* (citing *Nesses,* 68 F.3d at 1005).

Nevertheless, the *Great Western* court found that this is not the type of appellate review that is barred by *Rooker-Feldman*. *Id.* The relief requested by the plaintiffs in both *Rooker* and *Feldman,* who were seeking to have the state-court decisions undone or declared null and void by the federal courts, required effectively overruling the state-court judgments. *Id.* (citing *Rooker,* 263 U.S. at 414; *Feldman,* 460 U.S. at 468-69). To differentiate, the federal plaintiff in *Great Western* had sought relief in the form of damages, and hence, "may, 'as part of [its] claim for damages,' show 'that the [constitutional] violation caused the decision[s] to be adverse to [it] and thus did [it] harm.'" *Id.* (citing *Nesses,* 68 F.3d at 1005). Therefore, "while Great Western's claim for damages may require review of state-court judgments and even a conclusion that they

were erroneous, those judgments would not have to be rejected or overruled for Great Western to prevail. Accordingly, the review and rejection requirement of the *Rooker-Feldman* doctrine [was] not met[.]" *Id.* (alteration to original).

In the instant matter, the Court finds that all four requirements of *Great Western* are met with regard to the claims against the Colorado Court seeking the following relief:

(1) declare Colorado State Court's judgment null and void and reverse.

(2) order that the names of the minor children be changed back to their birth names;

(3) order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents;

(4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County CYS.

(5) order that an injunction issue to disqualify the Colorado Court and relieve it of any jurisdiction.

First, Father was the losing party in the custody action with regard to D.G. IV., J.G. and S.G., which was transferred to the Colorado Court in 2000. Father's parental rights to D.G. IV, J.G., and S.G. were subsequently terminated in the Colorado Court in 2004. Second, it is clear that the source of Plaintiff's alleged injuries in this federal action is the Colorado state court judgment terminating Father's parental rights. Father is now suing in federal court for the reinstitution of his parental rights, an award of custody to the paternal grandparents, and return of jurisdiction over the custody matters to the Pennsylvania state court. It is clear from Plaintiff's declaratory and injunctive requests for relief set out above that he is seeking reversal of the Colorado judgment. Plaintiff is, in essence, seeking appellate review of the Colorado state court judgment, and therefore, the Court finds that the source of Plaintiff's alleged injuries as to these

claims seeking equitable relief is the state court judgment issued in the Colorado Court.  The third requirement is also satisfied here because it is clear that the state court judgment entered by the Colorado Court was issued in 2004, well before the present litigation was commenced.  Finally, the fourth requirement of *Great Western* is satisfied because, as discussed, Plaintiff specifically seeks an injunction barring enforcement of the Colorado state court judgment, the restoration of Father's parental rights, an award of custody to the paternal grandparents, which, if granted, would effectuate a reversal of the Colorado state court judgment.  Accordingly, this Court lacks subject matter jurisdiction over the claims against the Colorado Court seeking the equitable relief set out above.

According to *Great Western*, however, Father's claims for violation of his federal constitutional rights and conspiracy for which he seeks monetary damages, are not barred by *Rooker-Feldman*.  The source of Plaintiff's injuries as to these claims is not the Colorado state court judgment.  Instead, the source of Plaintiff's alleged injuries are the alleged actions of Defendants in participating in the claimed conspiracy.  Even though these injuries helped to cause the Colorado state court judgment, these claims are independent because they stemmed from the alleged actions of Defendants, rather than from the judgment itself.  Further, as to the fourth element of *Great Western*, although Father's claim for damages may require review of the Colorado state court judgment and even a conclusion that it was erroneous, the Colorado state court judgment would not have to be rejected or overruled for Father to prevail on his independent constitutional claims for monetary damages.  Accordingly, the Rooker-Feldman doctrine does not bar Plaintiff's claims seeking monetary damages.

MOTION TO DISMISS PURSUANT TO 12(b)(6)

1. <u>The State is not a person for purposes of §§ 1983, 1985 and 1986</u>

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . ..

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed *by a person or entity* acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994) (emphasis added). Similarly, § 1985(3) and 1986 provide for actions against a person or persons.

The United States Supreme Court has determined that Congress did not intend for Section 1983 to overcome the sovereign immunity of states embodied in the Eleventh Amendment. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66-67 (1989). Therefore, states, as well as entities of the state, such as the District Court of La Plata County, are not "persons" who can be subject to liability under Section 1983. *Id.* at 71. Consequently, Plaintiff's claims against the Colorado Court pursuant to §§ 1983, 1985(3), and 1986 must be dismissed as a matter of law.[4]

---

[4] The court of appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would in inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008). The Court in this matter is

The Supreme Court has noted that where "suits against individual state officers [are] for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atlantic-Pa.,* 271 F.3d 491, 503 (3d Cir. 2001)). This exception is commonly referred to as the doctrine of *Ex Parte Young,* 209 U.S. 123, 155-56 (1908). *See Pa. Fed'n of Sportsmen's Clubs,* 297 F.3d at 323. The Supreme Court has narrowly applied this exception, *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 (1984), and indeed, has declined to apply the exception to relief styled as prospective relief but which, in actuality, seeks compensation for a past injury by a state official. *Green v. Mansour,* 474 U.S. 64, 73 (1985).

Here, Plaintiff's claims for declaratory and injunctive relief against the Colorado Court are barred because in actuality, the so-called prospective relief sought against it is not prospective at all. An examination of the injunctive and/or declaratory relief requested in the complaint reveals that five (5) of the requests for injunctive/declaratory relief arguably pertain to Judge Walker: 1) declare the Colorado Court's judgment null and void and reverse; 2) order that the names of the minor children be changed back to their birth names; 3) order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents; 4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County Children and Youth Services; and 5) order that an injunction issue to disqualify the Colorado Court and relieve it of any jurisdiction. None of this relief would end an ongoing violation of federal law. These requests are purely an attempt by Father to have this Court review the prior decisions of the state court judges, which it

---

recommending dismissal with prejudice and is not granting leave to amend because it believes such amendment would be futile.

is not empowered to do.[5]  Likewise, Plaintiff's requests that this Court order a federal criminal investigation and the filing of federal criminal charges are a violation of the separation of powers provisions in the United States Constitution,  and clearly outside its Article III powers. Therefore, the exception of *Ex Parte Young* is not applicable here and the Eleventh Amendment bars all of Plaintiff's claims against the Colorado Court.

 

2.  <u>Claims for Injunctive and Declaratory relief are barred by the Anti-Injunction Act</u>

In light of the above, the Court will not address Defendant's arguments regarding the Anti-Injunction Act.

 

### III.  <u>CONCLUSION</u>

For the reasons discussed above, it is respectfully recommended that Defendant District Court of La Plata County's Motion to Dismiss at ECF No. 194 be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation.  Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto.  Failure to file timely objections will constitute a waiver of any appellate rights.

---

[5] Despite Plaintiff's argument to the contrary, the allegations of fact in the Amended Complaint do not support his contention that an ongoing violation of federal law exists.  Father appears to be arguing that because the state court decisions have not been vacated or reversed, his due process rights continue to be violated and perpetuated by Defendants' alleged conspiracy to deprive him of his rights based on his race.  The Amended Complaint, however, is completely devoid of any factual support of an ongoing violation of federal law.  Father is attempting to bootstrap the effect of the state judges' previous rulings into an ongoing federal violation.  This he cannot do.

Dated: June 3, 2011                    BY THE COURT:

                                       _____
                                       LISA PUPO LENIHAN
                                       Chief United States Magistrate Judge


cc:     All Counsel of Record
        Via Electronic Mail

        Daniel Goodson, III
        1312 Woodmont Avenue
        P.O. Box 303
        New Kensington, PA  15068