**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL J. GOODSON, III, *et al*, | ) | Civil Action No. 08 - 44 |
| | ) | |
| Plaintiff, | ) | Chief Judge Lancaster |
| | ) | Chief Magistrate Judge Lenihan |
| v. | ) | |
| | ) | |
| LAWRENCE O. MAGGI, *et al*., | ) | ECF No. 194 |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.     RECOMMENDATION**

It is respectfully recommended that the Motion to Dismiss (ECF No. 194) filed by

Defendant Judge Douglas S. Walker be granted.

**II.    REPORT**

**A.     Relevant Facts**

Plaintiff Daniel J. Goodson III (hereinafter "Father" or "Plaintiff") is a *pro se* individual

who has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of

himself and his four minor children, D.G. VI, J.G., S.G. and D.G.  (ECF No. 36 at Overview.)[1]

At ECF No. 242, Chief District Judge Lancaster dismissed the claims of minor Plaintiffs without

prejudice, and on December 23, 2010, these minor children were terminated as parties in the

above-captioned case.  Therefore, Father, Daniel J. Goodson, III, is the only remaining Plaintiff.

Plaintiff asserts violations of his First, Fourth, Fifth, Sixth, Thirteenth and Fourteenth

---

[1]Father's original Complaint, received by the Clerk of Courts on January 11, 2008, contained a number of
attachments.  On October 17, 2008, Father filed an Amended Complaint (ECF No. 36), which is essentially the same
as the original Complaint but without the attachments.  For ease of reference, all citations to the Complaint in this
Report and Recommendation are to ECF No. 36.

Amendment rights. (ECF No. 36 at Overview.) The Amended Complaint contains a plethora of different claims regarding a variety of different situations. The majority of the claims, however, stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiff has named 37 different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

According to Plaintiff, Father and Defendant Tara Thompson ("Thompson"), the biological mother of D.G. VI, J.G., and S.G., divorced in 2000. Plaintiff Father filed for custody of D.G. IV, J.G., and S.G. in Westmoreland County Court of Common Pleas ("Westmoreland County Court"). (ECF No. 36 at Overview.) In the meantime, Thompson and children moved to Colorado and she filed for divorce in the La Plata County District Court in Durango, Colorado (hereinafter "Colorado Court"). (ECF No. 36 at Overview.) Defendant Judge John Driscoll of the Westmoreland County Court relinquished jurisdiction of the case to the Colorado Court. (ECF No. 36 at ¶ 31.) During all or most of these four years, Father was incarcerated in the Allegheny County Jail. (ECF No. 36 at Synopsis.) Plaintiff avers that Defendant Judge Douglas S. Walker ("Judge Walker"), then a magistrate in Colorado's Sixth Judicial District, presided over the divorce action involving Plaintiff and Defendant Thompson. Eventually, Father's parental rights were involuntarily terminated by the Colorado Court in 2004. (ECF No. 36 at Synopsis.)

Plaintiff seeks generally declaratory, injunctive and monetary relief against all Defendants. (ECF No. 36 at Posture.) With regard to Judge Walker, who has filed the present Motion to Dismiss, Plaintiff requests the following injunctive and/or declaratory relief:

(1) declare the Colorado Court's judgment null and void and reverse;

(2) order that the names of the minor children be changed back to their birth names;

(3) order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents;

(4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County Children and Youth Services;

(5) order that an injunction issue to disqualify the Colorado Court and relieve it of any jurisdiction.

(6) order a federal investigation of all Defendants' conduct and actions relating to the Amended Complaint.

(ECF No. 36 at Synopsis.) In addition, Plaintiff also requests an order directing (1) the filing of federal criminal charges against those Defendants as warranted and (2) a federal investigation of all Defendants' conduct and actions in regard to the complaint. With regard to monetary relief, Plaintiff seeks from each Defendant compensatory damages in the amount of $50,000 and punitive damages in the amount of $100,000. (ECF No. 36 at Synopsis.)

In his response to Judge Walker's Motion to Dismiss, Plaintiff Goodson states at ECF No. 212 that the following averments of the Amended Complaint are directed against Judge Walker (as well as other defendants):

1) That Plaintiff has a right to protect and communicate with his minor children, although he is temporarily incarcerated and that Defendants have conspired to interfere with his civil rights. (ECF No. 36 at ¶ 17.)

2) That Defendants, over a period of hearings, told him that he would never see any of his children again, including D.G., and that his parental rights would eventually be terminated. (ECF No. 36 at ¶ 19.)

3) That as a result of Defendants' actions, Plaintiff suffers from migraine headaches, severe depression, mood disorders and other related dysfunctions. (ECF No. 36 at ¶25.)

4) That all Defendants are negligent in violating Plaintiff's due process and equal protection rights through false statements, conspiracy, gross and malicious actions, and acting outside the scope of their professional capacities acting under color of state law. Plaintiff further avers that Defendants have tried to preclude Plaintiff from filing complaints, and exercising his appellate rights, forbade his testimony, as well as his freedom of speech to the court and news media. He also avers that Defendants have manipulated the legal system to cause him harm by stealing his rights and freedoms to his children. Plaintiff further avers that all have made racial slurs/remarks towards him and his family. (ECF No. 36 at ¶ 29.)

5) Plaintiff states that Defendants have been grossly negligent, and that most of their actions occurred "during the administrative acts," and therefore fall outside the protections of absolute judicial immunity. (ECF No. 36 at ¶ 33.)

6) Defendants have terminated Plaintiff's parental rights, allegedly, with racial bias. Plaintiff further avers that he has suffered harm as a result of Defendants' attempts to separate minor children from the black paternal side of the family, and that he was never

told of his right to counsel, or of his appellate rights. Plaintiff alleges that Judge Walker and the La Plata County District Court, under color of state law, acted outside the scope of their duties to deprive him of his federal rights, and that they conspired against him, denying him equal protection of the laws. He adds that the Colorado Court involuntarily terminated his parental rights on clearly falsified and frivolous evidence. Plaintiff avers that the biological mother of all but one of his children, Defendant Thompson, was employed either by an agency of the Colorado Court, or by the Colorado Court itself and that she used "her influence and constituency to ascertain decision and judgments of [the] court in her favor . . . ." (ECF No. 36 at ¶¶ 35-40.)

7) In Paragraph 53 of the Amended Complaint, Plaintiff alleges that Defendant Judge Walker, acting under color of law and outside the scope of his duties, denied Plaintiff his right to counsel, disregarded the best interests of Plaintiff's children, relied on circumstantial evidence and hearsay, and avers that Judge Walker is a racist, especially concerning interracial relationships. Plaintiff further alleges that Defendant conspired with others to deprive Plaintiff of his constitutional rights before, during and after court proceedings, and that he was aware of the alleged conflict of interest because of Thompson's employment with the court. (ECF No. 36 at ¶ 53.)

8) Plaintiff avers that all defendants conspired with one another by off record comments, internet exchanges, and with written and telephonic communications. (ECF No. 36 at ¶ 84.)

9) Finally, Plaintiff asserts state law claims of outrageous conduct, intentional infliction of emotional distress, and gross negligence against all Defendants.

**B.**     **Legal Standards**

PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Amended Complaint because p*ro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Further, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In the case at bar, Judge Walker presents a facial challenge. (Brief in Support of Motion to Dismiss, ECF No. 195 at 3.) In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6). *Mortensen,* 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

In support of his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Judge Walker argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine in that Plaintiff seeks appellate-type review of a final judgment of the Colorado Court. In response, Plaintiff argues that this case involves a state court conspiracy and does not involve a state court judgment.

MOTION TO DISMISS PURSUANT TO RULE 12(b)(2)

In deciding a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), the court must accept all allegations of the complaint as true. *Dayhoff, Inc. v. H.J. Heinz, Co.*, 86 F.3d 1287, 1302 (3d Cir. 1996). Once defendant raises the personal jurisdictional defense, plaintiff bears the burden of proving that jurisdiction is proper by producing affidavits or other competent evidence. *Id. See also North Penn Gas Co. v. Corning Natural Gas Co.*, 897 F.2d 687, 689 (3d Cir. 1990).

In support of his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(2), Judge Walker argues that the Amended Complaint contains no factual allegations from which he should have foreseen that he would be haled into a Pennsylvania court.

In response, Plaintiff argues that Judge Walker is subject to personal jurisdiction in Pennsylvania because he allegedly engaged in a conspiracy that violated Plaintiff's rights.

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court further

explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the

United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County*

*of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context),

and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as

follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in

*Fowler v. UPMC Shadyside,* 578 F.3d 203 (3d Cir. Aug. 18, 2009), set forth a two-prong test to

be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,*129

> S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In support of the Motion to Dismiss pursuant to Rule 12(b)(6), Judge Walker argues that he is entitled to judgment as a matter of law because he is entitled to absolute judicial immunity.

Plaintiff does not specifically respond to this argument, he states only that "[t]he facts pled show entitlement to the relief requested."

**C.** **Analysis**

1. SUBJECT MATTER JURISDICTION

Rooker-Feldman

The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*, and District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court

judgments under 28 U.S.C. § 1257.  *Feldman*, 460 U.S. at 482.[2]  "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp*., 146 F.3d 168, 171 (3d Cir.1998).  This doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights.  *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005).[3]  The Court in *Exxon Mobil* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman*.  Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted).  If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles.  *Id.*  As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing Fed. R. Civ. P. 8(c)).

---

[2] Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman.  See Walker v. Horn*, 385 F.3d 321, 329 n.22 (3d Cir. 2004) (citations omitted).
[3] The *Rooker-Feldman* doctrine applies to final decisions of lower state courts.  *Walker*, 385 F.3d at 329 (citation omitted).

Shortly after the Supreme Court's determination in *Exxon Mobil*, the United States Court of Appeals for the Third Circuit, while acknowledging the recent *Exxon Mobil* decision, still applied the two-step *Rooker-Feldman* inquiry that it had applied in the past–a claim in federal court will be barred by *Rooker-Feldman* under two circumstances: "first, if the federal claim was actually litigated in state court prior to the filing of the federal action or, second, if the federal claim is inextricably intertwined with the state adjudication, meaning that federal relief can only be predicated upon a conviction that the state court was wrong." *In Re Knapper*, 407 F.3d 573, 580 (3d Cir. 2005). More recently, however, the court of appeals has cautioned that reliance on its pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, and in particular the "inextricably intertwined" prong, may no longer be appropriate. *See, e.g., Gary v. Braddock Cemetery,* 517 F.3d 195, 200 n. 5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,* 240 F. App'x 938, 940 n.1 (3d Cir. 2007) (noting that after *Mobil,* "[t]here is little reason to believe that 'inextricably intertwined' . . . does anything more than state a conclusion or describe a claim that meets the requirements of *Exxon*.") (collecting decisions from other courts of appeals).

In 2010, the United States Court of Appeals for the Third Circuit rejected its pre-*Exxon Mobil* formulation of the *Rooker-Feldman* inquiry, and established the following test, based on the Supreme Court's holding in *Exxon Mobil*:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010)

(quoting *Exxon Mobil,* 544 U.S. at 284). Furthermore, in formulating the four-part test, the court

of appeals determined that the phrase "inextricably intertwined" neither created an additional

legal test nor expanded the scope of the doctrine beyond challenges to state-court judgments. *Id.*

at 170. Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a

judgment is barred even if the claim forming the basis of the challenge was not raised in the state

proceedings." *Id.* (alteration to original) (citing *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129,

1141 (10th Cir. 2006)). Hence, the court of appeals opined that the phrase is no more than "a

descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil.*" *Id.* at

170 (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 87 (2d Cir. 2005)).

The court of appeals in *Great Western* found that the key to determining whether *Rooker-*

*Feldman* barred a claim lies within the second and fourth requirements of the four-part test. 615

F.3d at 166. Essentially, the second requirement – plaintiff must complain of injuries caused by

the state court judgment – is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner*

*v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir. 2006)). The court of

appeals offered the following illustration of a situation where the state court judgment itself was

the source of the injury:

> Suppose a state court, based purely on state law, terminates a
> father's parental rights and orders the state to take custody of his
> son. If the father sues in federal court for the return of his son on
> grounds that the *state judgment* violates his federal substantive
> due-process rights as a parent, he is complaining of an injury
> caused by the state judgment and seeking its reversal.

*Id.* at 166-67 (emphasis added) (citing *Hoblock,* 422 F.3d at 87-88). By contrast, the court of

appeals noted that in the following example, the source of the injury was the defendants' actions

(as opposed to the state court judgment), even though the federal lawsuit asks the federal court to deny a legal conclusion reached by the state court:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging injury based on the employer's discrimination. The fact that the state court chose not to remedy the injury does not transform the subsequent federal suit on the same matter into an appeal, forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 167 (citing *Hoblock*, 422 F.3d at 88). The court of appeals further explained that a useful guidepost in determining the source of the injury is the injury's timing, "that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.*

The fourth requirement of the four-part test – that the plaintiff must invite federal court review and rejection of the state court judgment – is closely related to the second requirement. *Id.* at 168 (quoting *Bolden,* 441 F.3d at 1143). The fourth requirement focuses, however, on "whether the federal plaintiff's claims will require appellate review of state-court decisions by the district court." *Id.* at 169. Moreover, it looks at the relief that is requested by the plaintiff.

In *Great Western*, the plaintiff claimed that due to an alleged conspiracy between the arbitrator, numerous attorneys, and state court judges, the state court's decisions had been predetermined before the hearing had taken place, violating its constitutional right to a fair hearing. *Id.* at 171. When addressing the second and fourth requirements, the court of appeals relied on the reasoning used by the United States Court of Appeals for the Seventh Circuit in two separate cases with similar claims. *Id.*

In *Nesses v. Shepard,* the *Great Western* court observed that "the federal plaintiff alleged that his losses in state court were the product of a conspiracy among the judges and lawyers." *Id.* (citing *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir. 1995)). But even though the *Great Western* court acknowledged that the federal plaintiff was, in a sense, attacking the ruling and decision of the state court, because the federal plaintiff "alleged that *'people involved in the decision violated some independent right of his,* such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he [could], without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right.'" *Id.* (quoting *Nesses,* 68 F.3d at 1005) (emphasis in original). Therefore, as a part of the plaintiff's claim for damages, the *Great Western* court found that the plaintiff may show that the violation had caused the state court's decision to be adverse to him, thus doing him harm. *Id.* (citing *Nesses,* 68 F.3d at 1005).

Next, the *Great Western* court noted the reasoning of the court of appeals in *Brokaw v. Weaver,* 305 F.3d 660, 665 (7th Cir. 2002). In that case, the plaintiff contended that her relatives and certain officials had "'conspired – prior to any judicial involvement – to cause false child neglect proceedings to be filed, resulting in her removal from her home in violation of her … substantive and procedural due process rights[.]'" *Great Western,* 615 F.3d at 172 (quoting *Brokaw,* 305 F.3d at 665). Whether the alleged conspiracy would have caused the plaintiff to suffer any damages, absent the state court order, was found to be irrelevant. *Id.* The *Brokaw* court held that *Rooker-Feldman* did not bar the plaintiff's claim, "'because her claim for damages [was] based on an alleged independent violation of her constitutional rights. It was this separate constitutional violation which caused the adverse state court decision.'" *Id.* (quoting *Brokaw,* 305 F.3d at 667).

In applying the reasoning of the Court of Appeals for the Seventh Circuit, the court in *Great Western* found that the federal plaintiff was "not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution. Instead, [the federal plaintiff] claim[ed] that 'people involved in the decision violated some independent right,' that is, the right to an impartial forum." *Id.* (quoting *Nesses,* 68 F.3d at 1005). Because the federal plaintiff based its claim on an alleged independent violation of its constitutional rights, the *Great Western* court found that actions of the defendants and members of Pennsylvania judiciary, and not the state court decisions themselves, were the source of the federal plaintiff's purported injury. *Id.* (quoting *Brokaw*, 305 F.3d at 667).

Although the court of appeals' finding on the second requirement was enough to render *Rooker-Feldman* inapplicable to the case, the *Great Western* court examined the facts as applied to the fourth requirement as well. *Id.* at 173. The court of appeals found that "if [the federal plaintiff] could prove the existence of a conspiracy to reach a predetermined outcome in state court, it could recover nominal damages for this due process violation." *Id.* (citing *Carey*, 435 U.S. at 262-64). Because the merits of the state court decisions were immaterial to the existence of the alleged violation, the court of appeals held that the federal plaintiff's "entitlement to such damages could be assessed without any analysis of the state-court judgments. To recover for more than the alleged due process violation, however, [the federal plaintiff] would have to show that the adverse state-court decisions were entered erroneously." *Id.* (citing *Nesses,* 68 F.3d at 1005).

Nevertheless, the *Great Western* court found that this is not the type of appellate review that is barred by *Rooker-Feldman*. *Id.* The relief requested by the plaintiffs in both *Rooker* and *Feldman,* who were seeking to have the state-court decisions undone or declared null and void

by the federal courts, required effectively overruling the state-court judgments. *Id.* (citing *Rooker,* 263 U.S. at 414; *Feldman,* 460 U.S. at 468-69). To differentiate, the federal plaintiff in *Great Western* had sought relief in the form of damages, and hence, "may, 'as part of [its] claim for damages,' show 'that the [constitutional] violation caused the decision[s] to be adverse to [it] and thus did [it] harm.'" *Id.* (citing *Nesses,* 68 F.3d at 1005). Therefore, "while Great Western's claim for damages may require review of state-court judgments and even a conclusion that they were erroneous, those judgments would not have to be rejected or overruled for Great Western to prevail. Accordingly, the review and rejection requirement of the *Rooker-Feldman* doctrine [was] not met[.]" *Id.* (alteration to original).

In the instant matter, the Court finds that all four requirements of *Great Western* are met with regard to the claims against Judge Walker seeking the following relief:

(1) declare Colorado State Court's judgment null and void and reverse.

(2) order that the names of the minor children be changed back to their birth names;

(3) order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents;

(4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County CYS.

(5) order that an injunction issue to disqualify the Colorado Court and relieve it of any jurisdiction.

First, Father was the losing party in the custody action with regard to D.G. IV., J.G. and S.G., which was transferred to Judge Walker in the Colorado Court in 2000. Judge Walker subsequently terminated Father's parental rights to D.G. IV, J.G., and S.G. in 2004. Second, it is clear that the source of Plaintiff's alleged injuries in this federal action is the Colorado state court

judgment terminating Father's parental rights issued by Judge Walker. Father is now suing in federal court for the reinstitution of his parental rights, an award of custody to the paternal grandparents, and return of jurisdiction over the custody matters to the Pennsylvania state court. It is clear from Plaintiff's declaratory and injunctive requests for relief set out above that he is seeking reversal of the Colorado judgment. Plaintiff is, in essence, seeking appellate review of the Colorado state court judgment, and therefore, the Court finds that the source of Plaintiff's alleged injuries as to these claims seeking equitable relief is the state court judgment issued in the Colorado court by Judge Walker. The third requirement is also satisfied here because it is clear that the state court judgment was entered by Judge Walker in 2004, well before the present litigation was commenced. Finally, the fourth requirement of *Great Western* is satisfied because, as discussed, Plaintiff specifically seeks an injunction barring enforcement of the Colorado state court judgment, the restoration of Father's parental rights, and an award of custody to the paternal grandparents, which, if granted, would effectuate a reversal of the Colorado state court judgment. Accordingly, this Court lacks subject matter jurisdiction over the claims against Judge Walker seeking the equitable relief set out above.

According to *Great Western*, however, Father's claims for violation of his federal constitutional rights and conspiracy for which he seeks monetary damages, are not barred by *Rooker-Feldman*. The source of Plaintiff's injuries as to these claims is not the Colorado state court judgment. Instead, the source of Plaintiff's alleged injuries is Judge Walker's alleged actions in participating in the claimed conspiracy. Even though these actions may have lead up to the Colorado state court judgment, these claims are independent because they stemmed from the alleged actions of Judge Walker, rather than from the judgment itself. Further, as to the fourth element of *Great Western*, although Father's claim for damages may require review of the

Colorado state court judgment and even a conclusion that it was erroneous, the Colorado state court judgment would not have to be rejected or overruled for Father to prevail on his independent constitutional claims for damages. Accordingly, *Rooker-Feldman* does not bar the claims against Judge Walker seeking monetary damages.

2.     PERSONAL JURISDICTION

In responding to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(2) for lack of personal jurisdiction, the plaintiff bears the burden of proving, by a preponderance of the evidence, facts sufficient to establish personal jurisdiction over the defendants, by producing affidavits or other competent evidence. *Metcalfe v. Renaissance Marine, Inc.,* 566 F.3d 324, 330 (3d Cir. 2009) (citing *Pinker v. Roche Holdings Ltd.,* 292 F.3d 361, 368 (3d Cir. 2002); *Dayhoff Inc. v. H.J. Heinz Co.,* 86 F.3d 1287, 1302 (3d Cir. 1996)); *Time Share Vacation Club v. Atlantic Resorts, Ltd.,* 735 F.2d 61, 65 (3d Cir. 1984) (citation omitted). If an evidentiary hearing is not held on the 12(b)(2) motion, then the plaintiff need only demonstrate a prima facie case of personal jurisdiction. *Metcalfe*, 566 F.3d at 330 (citing *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007)); *D'Jamoos v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 102 (3d Cir. 2009) (citing *Miller Yacht Sales, Inc. v. Smith,* 384 F.3d 93, 97 (3d Cir. 2004)). In deciding a Rule 12(b)(2) motion, the court must accept as true all allegations contained in the complaint and view all factual disputes in plaintiff's favor. *D'Jamoos*, 566 F.3d at 102 (citing *Miller Yacht Sales,* 384 F.3d at 97).

The starting point for determining whether personal jurisdiction can be exercised over a nonresident defendant is Rule 4(e) of the Federal Rules of Civil Procedure. Rule 4(e) "authorizes personal jurisdiction over non-resident defendants to the extent permissible under the

law of the state where the district court sits." *Mellon Bank (East) PSFS, Nat'l Ass'n v. Farino,* 960 F.2d 1217, 1221 (3d Cir. 1992) (citation omitted); *D'Jamoos*, 566 F.3d at 102 (citing *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir. 1987)). Pennsylvania's long-arm statute, codified at 42 Pa. Cons. Stat. Ann. § 5322(b), permits Pennsylvania courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and may be based on the most minimum contact with [Pennsylvania] allowed under the Constitution of the United States."[4] Thus, as long as the requirements of the Due Process Clause of the United States Constitution have been satisfied, jurisdiction will lie over non-resident defendants in Pennsylvania. *Farino,* 960 F.2d at 1221; *Pennzoil Prod. Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197, 200 (3d Cir. 1998) (citing *Farino,* 960 F.2d at 1221; *Renner v. Lanard Toys Ltd.,* 33 F.3d 277, 279 (3d Cir. 1994)); *Santana Prod., Inc. v. Bobrick Washroom Equip.,* 14 F.Supp.2d 710, 713 (M.D.Pa. 1998).

It is axiomatic that to satisfy due process, the defendant must have certain "minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"[5] *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer,* 311 U.S. 457, 463 (1940)) (other citations omitted). The minimum contacts requirement serves the purpose of "protect[ing] the defendant against the burdens of litigating in a distant and inconvenient forum" by requiring that the "defendant's conduct and connection with the forum State [be] such that [a defendant] should reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291-92, 297 (1980) (citations omitted). This framework enables "potential defendants to

---

[4] Subsection (a) of Pennsylvania's long-arm statute also provides for personal jurisdiction over a person who engages in certain enumerated business transactions or activities in Pennsylvania, or which are directed at a Pennsylvania resident/business. 42 Pa. Cons. Stat. Ann § 5322(a). The Amended Complaint, however, fails to assert any facts to support personal jurisdiction over Judge Walker under § 5322(a).

[5] The Due Process standard must be applied to each defendant. *Carteret Sav. Bank, FA v. Shushan,* 954 F.2d 141, 145 n.6 (3d Cir. 1992) (citing *Calder v. Jones,* 465 U.S. 783, 790 (1984)).

structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit." *Id.* at 297. Thus, a plaintiff cannot unilaterally create the necessary contacts between the defendant and the forum; rather, "minimum contacts" can arise only by "'some act by which the defendant purposely avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws.'" *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla,* 357 U.S. 235, 253 (1958)).

Personal jurisdiction can exist in one of two forms: specific jurisdiction or general jurisdiction. Specific jurisdiction applies where the cause of action is related to or arises from the defendant's contacts with the forum, *Toys "R" Us, Inc. v. Step Two, S.A.,* 318 F.3d 446, 451 (3d Cir. 2003) (quoting *Pinker,* 292 F.3d at 368), while general jurisdiction applies where the defendant's contacts with the forum are "continuous and systematic" but are not related to the plaintiff's cause of action, *Pennzoil,* 149 F.3d at 200 (citation omitted).

### a.       Specific Jurisdiction

In determining whether it can exercise specific jurisdiction, the court must undertake a three-part inquiry. *D'Jamoos,* 566 F.3d at 102. Initially, the court must determine whether the defendant has "'purposefully directed'" its activities toward the forum State. *Id.* (quoting *Burger King,* 471 U.S. at 472 (quoting *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770, 775 (1984) (whether "minimum contacts" exist requires the court to examine "the relationship among the defendant, the forum, and the litigation."))). "Second, the litigation must 'arise out of or relate to' at least one of those activities." *Id.* (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408 414 (1984); *O'Connor,* 496 F.3d at 317). Finally, if the plaintiff has established the first two elements, only then does the court proceed to the third part of the

inquiry–whether the defendant's contacts with the forum state are such that maintenance of the action "'does not offend traditional notions of fair play and substantial justice.'"[6] *World-Wide Volkswagon,* 444 U.S. at 292 (citing *Int'l Shoe,* 326 U.S. at 316); *D'Jamoos,* 566 F.3d at 102. In this regard, the court of appeals observed:

> The first two parts of the test determine whether a defendant has the requisite minimum contacts with the forum. The threshold requirement is that the defendant must have "purposefully avail[ed] itself of the privilege of conducting activities within the forum State." *Hanson v. Denckla*, 357 U.S. [at 253]. To meet this requirement, the defendant's physical entrance into the forum is not necessary. *See Burger King*, 471 U.S. at 476, 105 S.Ct. at 2184; *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.*, 988 F.2d 476, 482 (3d Cir.1993). A defendant's contacts, however, must amount to "a deliberate targeting of the forum." *O'Connor*, 496 F.3d at 317. The "unilateral activity of those who claim some relationship with a nonresident defendant" is insufficient. *Hanson*, 357 U.S. at 253 . . . .

*D'Jamoos,* 566 F.3d at 102-03.

The Court has carefully reviewed the factual allegations contained in Plaintiff's Amended Complaint and concludes that the allegations, even when taken as true and viewed in the light most favorable to Plaintiff, do not support a prima facie case of specific personal jurisdiction. The allegations in the Amended Complaint simply fail to establish that Judge Walker purposely directed any of his activities at Plaintiff while he was in Pennsylvania.

Likewise, Plaintiff is unable to establish the second requirement that this litigation arises out of or relates to any activities purposefully directed toward Pennsylvania, since Plaintiff has failed to establish any activities purposefully directed to Pennsylvania by Judge Walker in the first instance.

---

[6] With regard to the third prong of the specific jurisdiction analysis, the court should consider the following factors: "'the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies,' and the 'shared interest of the several States in furthering fundamental substantive social policies.'" *Burger King*, 471 U.S. at 477 (quoting *World-Wide Volkswagon*, 444 U.S. at 292).

Because the Court has found that Plaintiff has failed to establish the first two requirements of specific personal jurisdiction, it need not address the third element, *i.e.,* whether the exercise of personal jurisdiction over Defendant would offend traditional notions of fair play and substantial justice. *D'Jamoos,* 566 F.3d at 106 (citations omitted). Accordingly, the Court finds that it lacks specific personal jurisdiction over Judge Walker.

### b. General Jurisdiction

Having failed to establish a prima facie case of specific personal jurisdiction over Judge Walker, Plaintiff must now show that Judge Walker had "continuous and systematic" contacts with Pennsylvania, such that general personal jurisdiction exists. Plaintiff's Amended Complaint, however, is completely devoid of any allegations that would suggest such contacts.

The Court of Appeals has held that a plaintiff must prove significantly more than mere minimum contacts to invoke the court's general jurisdiction. *Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 437 (3d Cir. 1987) (citations omitted). Thus, to satisfy due process, the contacts of a nonresident defendant with the form must be continuous and substantial. *Id.* (citations omitted). For example, continuous and substantial contacts were found to exist where the evidence of record showed that defendants transacted business in the forum "[b]y maintaining an office and an agent in [the forum] on an ongoing basis, entering into contractual relationships in [the forum], and designating and maintaining billing and technical contacts within [the forum]," thereby subjecting the non-resident defendants to the general jurisdiction of the forum district. *Twentieth Century Fox Film Corp. v. iCraveTV,* Nos. Civ. A. 00-121 and 00-120, 2000 WL 255989, at* 4 (W.D. Pa. Feb.8, 2000) (citations omitted).

A review of Plaintiff's Amended Complaint reveals that Judge Walker has not engaged in any activities in Pennsylvania, let alone any continuous and substantial business activities, that

would allow this Court to properly exercise jurisdiction over him. Indeed, Plaintiff's Amended Complaint is completely devoid of any allegations of fact suggesting any contacts by Judge Walker with Pennsylvania. Accordingly, Plaintiff cannot establish a prima facie case of general personal jurisdiction over Judge Walker.

Finally, Plaintiff suggests that this Court has personal jurisdiction over Judge Walker because Plaintiff has attempted to state a claim for conspiracy, and the alleged co-conspirators are within this Court's personal jurisdiction. (Plaintiffs' Response in Opposition of Defendant Walker's Motion to Dismiss, ECF No. 212 at 3.) "Under Pennsylvania law, personal jurisdiction of a non-forum co-conspirator may be asserted only where a plaintiff demonstrates that substantial acts in furtherance of the conspiracy occurred in Pennsylvania and that the non-forum co-conspirator was aware or should have been aware of those acts." *Santana Prod., Inc.*, 14 F. Supp.2d at 718 (citing *Raymark Indus., Inc. v. Baron,* No. Civ. 96-7625, 1997 WL 35933, at *4 (E.D. Pa. June 23, 1997) ("Pennsylvania law requires proof that the co-conspirator was or should have been aware of the conspiratorial acts within the forum state."); *Murray v. Nat'l Football League*, No. Civ. A. 94-5971, 1996 WL 363911, at *15 (E.D. Pa. June 28, 1996) ("Plaintiff must show that substantial acts in furtherance of the conspiracy occurred in the forum state, 'of which the out-of-state co-conspirator was, or should have been aware.'"); *Massachusetts Sch. of Law v. American Bar Assoc.,* 846 F. Supp. 374, 379 (E.D. Pa. 1994), *aff'd,* 107 F.3d 1026, 1042 (3d Cir. 1997) ("[T]here must also be substantial acts in furtherance of the conspiracy within the forum, of which the out-of-state co-conspirator was or should have been aware."). Therefore, an alleged co-conspirator is not subject to the jurisdiction of every other co-conspirator's forum by virtue of his membership alone, in the alleged conspiracy.

Here, there are absolutely no facts alleged in the voluminous Amended Complaint that

Judge Walker was aware, or should have been aware of, any of the alleged activities occurring in Pennsylvania. The mere fact that Judge Walker assumed jurisdiction in the Colorado Court of a domestic case originally filed in Pennsylvania, is not enough to support a claim of personal jurisdiction under a conspiracy theory. Consequently, this Court cannot exercise personal jurisdiction over Judge Walker without offending "traditional notions of fair play and substantial justice." *World-Wide Volkswagon,* 444 U.S. at 292.

FAILURE TO STATE A CLAIM

<u>Absolute Judicial Immunity</u>

Judge Walker argues, in the alternative, that Plaintiff's civil rights claims against him in his individual capacity are barred by the doctrine of absolute judicial immunity. The doctrine of judicial immunity grants judges absolute immunity from liability for damages "for acts committed within their judicial jurisdiction." *Pierson v. Ray*, 386 U.S. 547, 553-54 (1967). "A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'" *Stump v. Sparkman*, 435 U.S. 349, 356-57 (1978) (internal citation and quotation omitted). Judicial immunity will not apply only if the judge acts with "clearly no jurisdiction over the subject matter," *id.* at 356 n.6 (quoting *Bradley v. Fisher*, 80 U.S. (13 Wall.) 335, 351 (1871)), or where the challenged conduct is not a judicial act, *Mireles v. Waco*, 502 U.S. 9, 11 (1991). Whether an act is a judicial one is determined by whether the action is typically one performed by a judge and whether the parties thought they were dealing with a judge acting in his judicial capacity. *Stump*, 435 U.S. at 362.

Clearly, Plaintiff's claims for monetary damages against Judge Walker are barred by

judicial immunity. Judge Walker was acting in his judicial capacity when the events in question occurred and was not acting in clear absence of his jurisdiction. Plaintiff's allegations against Judge Walker stem from his rulings and courtroom proceedings (Amended Compl. at ¶¶ 37, 38, 39, 40, & 53) regarding the custody of D.G. VI, J.G., and S.G. Making rulings and conducting proceedings in a custody matter are clearly functions performed by judges. Hence, Judge Walker was not acting in clear absence of jurisdiction when he allegedly performed the acts at issue.

Because the acts of Judge Walker were of a judicial nature and he did not act in clear absence of jurisdiction, Plaintiff's claims for monetary damages against Judge Walker are barred by the doctrine of absolute judicial immunity. Moreover, to the extent that Plaintiff seeks injunctive and declaratory relief against the Judge, those claims are also barred. *Shallow v. Rogers,* 201 Fed. Appx. 901, 904 n. 4 (3d Cir. 2006) (citing 42 U.S.C. §1983; *Brandon E. ex rel. Listenbee v. Reynolds*, 201 F.3d 194 (3d Cir. 2000)).[7]

Accordingly, because Plaintiff's claims against Judge Walker in his individual capacity are barred by the doctrine of absolute judicial immunity, said claims should be dismissed for failure to state a claim upon which relief may be granted.[8]

Further, Judge Walker is also not a "person" under Section 1983 with regard to the claims brought against him in his official capacity, because the state is the real party in interest when state officials are sued in their official capacities; the state is not a "person" under § 1983. *Hafer*

---

[7] The Court further notes than in 1996, 42 U.S.C. § 1983 was amended by the Federal Courts Improvement Act of 1996, 110 Stat. 3847 (1996), to bar claims under § 1983 for injunctive relief against judicial officers acting in their judicial capacity. This statutory provision overruled the Supreme Court's ruling in *Pulliam v. Allen,* which held that judicial immunity bars claims for monetary damages, but not injunctive relief. 466 U.S. 522, 541-42 (1984). As previously discussed, Judge Walker was acting in a judicial capacity at all relevant times. Accordingly, Plaintiff's claim for injunctive relief pursuant to § 1983 against Judge Walker is barred.

[8] The court of appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would in inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008). The Court in this matter is recommending dismissal with prejudice and is not granting leave to amend because it believes such amendment would be futile.

*v. Melo*, 502 U.S. 21, 26 (1991) (citing *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71 (1989)).

Further, the claims against Judge Walker in his official capacity are barred by the Eleventh Amendment. The Eleventh Amendment bars civil rights suits against a state in federal court by private parties where the state has not consented to such action. *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh*, 438 U.S. 781 (1978)). This immunity applies even to claims seeking injunctive relief. *Id.*; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (holding Eleventh Amendment immunity applies "regardless of the nature of the relief sought."). Hence, the Eleventh Amendment bars actions in federal court against state officials acting in their official capacity for money damages or back pay, as such retrospective relief would be paid out of the state treasury. *Laskaris,* 661 F.2d at 26 (citing *Edelman v. Jordan,* 415 U.S. 651 (1974)). However, the Supreme Court has noted an exception to this rule where "suits against individual state officers [are] for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atlantic-Pa.,* 271 F.3d 491, 503 (3d Cir. 2001)). This exception is commonly referred to as the doctrine of *Ex Parte Young,* 209 U.S. 123, 155-56 (1908). *See Pa. Fed'n of Sportsmen's Clubs,* 297 F.3d at 323. The Supreme Court has narrowly applied this exception, *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 (1984), and indeed, has declined to apply the exception to relief styled as prospective relief but which, in actuality, seeks compensation for a past injury by a state official. *Green v. Mansour,* 474 U.S. 64, 73 (1985).

Here, Plaintiff's claims for declaratory and injunctive relief against Judge Walker in his official capacity are barred because in actuality, the so-called prospective relief sought against

him is not prospective at all. An examination of the injunctive and/or declaratory relief requested in the complaint reveals that five (5) of the requests for injunctive/declaratory relief arguably pertain to Judge Walker: 1) declare the Colorado Court's judgment null and void and reverse; 2) order that the names of the minor children be changed back to their birth names; 3) order that D.G. IV, J.G., and S.G. be returned to Pennsylvania and that they be placed under the guardianship of their paternal grandparents; 4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County Children and Youth Services; and 5) order that an injunction issue to disqualify the Colorado Court and relieve it of any jurisdiction. None of this relief would end an ongoing violation of federal law. These requests are purely an attempt by Father to have this Court review the prior decisions of the state court judges, which it is not empowered to do.[9] Likewise, Plaintiff's requests that this Court order a federal criminal investigation and the filing of federal criminal charges are a violation of the separation of powers provisions in the United States Constitution, and clearly outside its Article III powers. Therefore, the exception of *Ex Parte Young* is not applicable here and the Eleventh Amendment bars all of Plaintiff's claims against Judge Walker in his official capacity.

## III.    <u>CONCLUSION</u>

For the reasons discussed above, it is respectfully recommended that Defendant Judge Walker's Motion to Dismiss at ECF No. 194 be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are

---

[9] Despite Plaintiff's argument to the contrary, the allegations of fact in the Amended Complaint do not support his contention that an ongoing violation of federal law exists. Father appears to be arguing that because the state court decisions have not been vacated or reversed, his due process rights continue to be violated and perpetuated by Defendants' alleged conspiracy to deprive him of his rights based on his race. The Amended Complaint, however, is completely devoid of any factual support of an ongoing violation of federal law. Father is attempting to bootstrap the effect of the state judges' previous rulings into an ongoing federal violation. This he cannot do.

allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: June 3, 2011                    BY THE COURT:

                                       _____
                                       LISA PUPO LENIHAN
                                       Chief United States Magistrate Judge

cc:     All Counsel of Record
        Via Electronic Mail

        Daniel Goodson, III
        1312 Woodmont Avenue
        P.O. Box 303
        New Kensington, PA  15068