**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DANIEL J. GOODSON, III,** | ) | Civil Action No. 08 - 44 |
| | ) | |
| **Plaintiff,** | ) | Chief Judge Lancaster |
| | ) | Chief Magistrate Judge Lenihan |
| **v.** | ) | |
| | ) | |
| **LAWRENCE O. MAGGI, *et al*.,** | ) | ECF No. 229 |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.   RECOMMENDATION

It is respectfully recommended that the Motion for Summary Judgment (ECF No. 229) filed by Defendants Jeffrey A. Beard and Christopher J. Neal be granted.

### II.   REPORT

Plaintiff Daniel J. Goodson III (hereinafter "Father") is a *pro se* individual who has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of himself and his four (4) minor children, D.G. VI, J.G., S.G. and D.G.  (ECF No. 36 at Overview.)[1]  At ECF No. 242, Chief District Judge Lancaster dismissed the claims of minor Plaintiffs without prejudice, and on December 23, 2010, these minor children were terminated as parties in the above-captioned case.  Therefore, Father, Daniel J. Goodson, III, is the only remaining Plaintiff.

Plaintiff asserts violations of his First, Fourth, Fifth, Sixth, Thirteenth and Fourteenth Amendment rights.  (ECF No. 36 at Overview.)  The Amended Complaint contains a plethora of

---

[1] Father's original Complaint, received by the Clerk of Courts on January 11, 2008, contained a number of attachments.  On October 17, 2008, Father filed an Amended Complaint (ECF No. 36), which is essentially the same as the original Complaint but without the attachments.  For ease of reference, all citations to the Amended Complaint in this Report and Recommendation are to ECF No. 36.

different claims regarding a variety of different situations. The majority of the claims, however, stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiff has named 37 different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

Presently before the Court is a Motion for Summary Judgment filed by Defendants Jeffrey A. Beard ("Beard") and Christopher J. Neal ("Neal") (collectively "Defendants") pursuant to Federal Rule of Civil Procedure 56.[2] Plaintiff filed a Brief in Opposition at ECF No. 239. Plaintiff, however, failed to file his Response to Defendants' Concise Statement of Undisputed Facts as required by the Local Rules of Court for the Western District of Pennsylvania.[3] In Plaintiff's Brief in Opposition to Defendants' Motion for Summary Judgment (ECF No. 239), Plaintiff references his Affidavit filed at ECF No. 241 wherein Plaintiff indicates he is "experiencing trouble in ascertaining declarations [] which will support and serve as evidence as to the facts at issue . . . ." (ECF No. 241 at 2.) Plaintiff describes why he has been confronted with certain difficulties in coming forward with his evidence in response to Defendants' Motion for Summary Judgment. He concludes that "[u]pon this Court[']s order I could and would summarize the evidence and explain how it supports each point needed to be

---

[2] Defendants also note that although only Neal and Beard are named as Defendants, Plaintiff also appears to allege claims against the Pennsylvania Department of Corrections ("DOC"), the Pennsylvania Board of Probation and Parole ("PBPP") and/or its Chairman, Catherine McVey ("McVey'). "Because the Office of the Attorney General would ordinarily represent such purported parties," Defendants, "in an abundance of caution," assert arguments on their behalf as if they were named as parties. (Brief in Support of Motion for Summary Judgment, ECF No. 230 at 1 n.1.)

[3] Plaintiff was ordered to file his responsive statement on December 6, 2010. (ECF No. 263.) Thereafter, Plaintiff filed a Motion for Extension of Time which the Court granted on December 27, 2010. The Court granted Plaintiff's request for an extension until April 6, 2011. No response has been filed by Plaintiff.

proved." (ECF No. 241 at 2.) Consequently, on April 11, 2011, the Court entered an Order that

Plaintiff shall file his summary of the evidence in opposition to Defendants' Motion for

Summary Judgment by May 2, 2011, and thereafter, the Court would order additional discovery

if necessary. (ECF No. 280.) Plaintiff did not file his summary of the evidence. The Court now

turns to Defendants' Motion for Summary Judgment without benefit of Plaintiff's evidence

summary.


### A.    Relevant Facts

Liberally construing the Amended Complaint, Plaintiff avers the following regarding

Defendants Neal and Beard, the DOC, PBPP, and McVey.

Plaintiff avers that Defendant Neal, acting in his official capacity as a member of the

Pennsylvania State Police ("PSP"), conspired on November 1, 2006 to discriminate against, and

selectively prosecute Plaintiff. Plaintiff avers that Neal used false statements from alleged

victims in an affidavit of probable cause and criminal complaint against Plaintiff.[4] Plaintiff

indicates that these actions were taken in retribution for Plaintiff's whistle blowing activities

against Defendants in general. Plaintiff further states that Defendants committed perjury at

various court proceedings. Specifically, Plaintiff avers that Neal admitted under oath that he was

"asked" to pursue false criminal allegations against Plaintiff and that Neal lied under oath to this

---

[4] The Washington County criminal complaint filed at Docket No. 2431-2006 charged Father with four counts each of Terroristic Threats under 18 Pa. Cons. Stat. Ann. § 2706(a)(1); Harassment under 18 Pa. Cons. Stat. Ann. § 2709(a)(4); Threats and Other Improper Influence in Official and Political Matters under 18 Pa. Cons. Stat. Ann. § 4702(a)(2). The alleged victims of these charges are three employees of the Washington County CYS and Judge Mascara, all of whom are named as defendants in this federal action. *See Commw. of Pa. v. Goodson*, CR No. 2431-2006, Mem. Op. & Order dated August 15, 2007 (John F. Bell, S.J.) The conduct which gave rise to the criminal charges brought against Father in No. 2431-2006 arose during the juvenile court proceedings regarding the custody of D.G. over which Judge Mascara presided.

end "[i]n a conspiracy that was engaged in and signed off in by Debbie O'Dell Seneca on December 4, 2006."[5]  (ECF No. 36 at ¶ 4.)

Plaintiff also avers that the PSP questioned Plaintiff prior to giving him his Miranda warnings, and that the PSP stated on or around December 6, 2006, that "rights don't apply to those already incarcerated."  (ECF No. 36 at ¶ 5.)  Despite Plaintiff's request for legal representation, the PSP continued questioning Plaintiff until just prior to fingerprinting, when he received his Miranda warnings.  Plaintiff notes he was not given his Miranda warnings when questioning began in the PSP car.  (ECF No. 36 at ¶ 5.)

Next, Plaintiff avers that the PSP conspired with Judge Mark Mascara on December 6, 2006 after a bail hearing "to advise co conspirator of the position and defense they allegedly thought the Plaintiff was going to pursue based on their illegally ascertained answers Plaintiff provided prior to [being Mirandized]."  (ECF No. 36 at ¶ 6.)

Plaintiff avers that Defendant Neal failed to turn over letters to the prosecutor which would have exonerated Plaintiff of the criminal charges concerning the Washington County criminal case against him at docket No. 2431 of 2006.  Plaintiff again indicates that Neal "falsified statements" and lied under oath concerning Plaintiff's Miranda warnings and used false statements in preliminary and trial proceedings.  Finally, Plaintiff avers that Neal admitted on the record to several disciplinary actions in his 12 years with the PSP and that the court maliciously denied Plaintiff access to Neal's service records.  (ECF No. 36 at ¶ 34.)

Paragraphs 66 and 67 of the Amended Complaint are directed to the Pennsylvania Board of Probation and Parole ("PBPP").  Plaintiff avers that on August 2, 2007, the PBPP denied Plaintiff parole for biased reasons which prejudiced Plaintiff and denied him his constitutional

---

[5] Debbie O'Dell Seneca was the President Judge in Washington County during the pendency of the criminal matters involving Plaintiff.

rights. (ECF No. 36 at ¶ 66.) Further, Plaintiff avers that the PBPP concealed information, used false statements, denied earlier review of Plaintiff despite a Pennsylvania Superior Court decision vacating a judgment order which would have shortened his sentence by over 12 months. (ECF No. 36 at ¶ 67.)

Paragraph 68 of the Amended Complaint is directed to the Pennsylvania Department of Corrections ("DOC"). Plaintiff avers that from March 9, 2007 to the present, it ignored a Pennsylvania Superior Court order vacating a judgment of sentence in a conspiracy to prejudice and bias Plaintiff, thereby subjecting Plaintiff to a longer sentence. Plaintiff states that despite his grievance which was "properly filed in August 17, 2007," the DOC failed to act. (ECF No. 36 at ¶ 68.)

Finally, Plaintiff states that the actions of the PBPP and the DOC resulted in the deprivation of his freedom. (ECF No. 36 at ¶ 69.)

### B.     Legal Standard

*PRO SE* PLEADINGS

The Court must liberally construe the factual allegations of the Complaint because pleadings filed by *pro se* plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [Plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [Plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728 at *3 (W.D. Pa. March 19, 2009) (citing *Boag v.*

*MacDougall,* 454 U.S. 364, 365 (1982) (*per curiam*)). The Court remains ever mindful of the Plaintiff's *pro se* status.

## SUMMARY JUDGMENT

Summary judgment is appropriate if, drawing all inferences in favor of the nonmoving party, "the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment may be granted against a party who fails to adduce facts sufficient to establish the existence of any element essential to that party's case, and for which that party will bear the burden of proof at trial. *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). The moving party bears the initial burden of identifying evidence which demonstrates the absence of a genuine issue of material fact; that is, the movant must show that the evidence of record is insufficient to carry the non-movant's burden of proof. *Id.* Once that burden has been met, the nonmoving party must set forth "specific facts showing that there is a genuine issue for trial" or the factual record will be taken as presented by the moving party and judgment will be entered as a matter of law. *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e)) (emphasis added by *Matsushita* Court). An issue is genuine only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty-Lobby, Inc.,* 477 U.S. 242, 248 (1986). In *Anderson,* the United States Supreme Court noted the following:

> [A]t the summary judgment stage the judge's function is not
> himself to weigh the evidence and determine the truth of the matter
> but to determine whether there is a genuine issue for trial. . . .
> [T]here is no issue for trial unless there is sufficient evidence

favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted.

*Id.* at 249-50 (internal citations omitted).

While any evidence used to support a motion for summary judgment must be admissible, it is not necessary for it to be in admissible form. *See* Fed. R. Civ. P. 56 (e); *Celotex Corp.*, 477 U.S. at 324; *J.F. Feeser, Inc. v. Serv-A-Portion, Inc.*, 909 F.2d 1524, 1542 (3d Cir. 1990). The non-movant cannot rely solely on unsupported assertions or conclusory allegations. *Anderson*, 477 U.S. at 249.

**Analysis**

    1.  Duration of Confinement

Defendants argue that they are entitled to judgment as a matter of law on Plaintiff's claims concerning the duration of his confinement pursuant to the doctrine of *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), wherein the United States Supreme Court held that a state prisoner's sole remedy in challenging the fact or duration of his physical imprisonment is a writ of habeas corpus.

Plaintiff responds that he is not challenging the fact or duration of imprisonment and is not seeking an early release from prison; instead, Plaintiff argues that he is complaining of the Defendants' failure to do their duty and follow court orders. This failure, argues Plaintiff, interfered with his "correctional plan, rehabilitation, pre-release, promotional transfer etc.[,]" and *Preiser v. Rodriguez* does not apply. (Plaintiff's Brief in Opposition to Motion for Summary Judgment, ECF No. 239 at 3.)

Contrary to Plaintiff's argument, it appears that the gravamen of his Amended Complaint as to this claim is that he was deprived "of his freedom." (ECF No. 36 at ¶ 69.) Consequently, Plaintiff's sole remedy would be limited to a writ of habeas corpus.

Moreover, Defendants submit the Sentence Status Summary for Plaintiff which illustrates that Plaintiff's legal maximum sentence expires on June 28, 2012. (Sentence Status Summary, ECF No. 231-2 at 2-5.) In fact, on March 4, 2011, a Notice of Change of Address for Plaintiff appears on the docket sheet at ECF No. 276, listing a New Kensington, Pennsylvania mailing address for Plaintiff. Hence, record evidence demonstrates that Plaintiff was not incarcerated beyond his legal maximum sentence. Consequently, Plaintiff's claim must fail as a matter of law and Defendants' Motion for Summary Judgment on this issue should be granted.

## 2. Malicious Prosecution

Plaintiff states that this claim is not directed to Defendant Neal. (Plaintiff's Brief in Opposition to Motion for Summary Judgment, ECF No. 239 at 3-4.) Similarly, it has no factual application to Defendant Beard. Consequently, Defendants' Motion for Summary Judgment on this claim should be granted.

## 3. Failure to Exhaust the Claim that DOC Failed to Acknowledge Superior Court Order Vacating One of His Sentences and thereby DOC Illegally Prolonged Plaintiff's Incarceration

Although the doctrine of *Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973), appears to bar this claim as a matter of law, and although Plaintiff's release from prison before the expiration of his legal maximum sentence appears to moot the claim, Defendants argue in the alternative that record evidence demonstrates that Plaintiff failed to exhaust his administrative remedies

regarding this claim. Plaintiff responds that the documents on file demonstrate that he properly exhausted his administrative remedies.

Under the Prisoner Litigation Reform Act ("PLRA"), the mandatory exhaustion requirement provides as follows:

> (a)     Applicability of administrative remedies
>
> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e (a). Before filing a civil action, a plaintiff-inmate must exhaust his administrative remedies. *Booth v. Churner*, 206 F.3d 289, 300 (3d Cir. 2000), *cert. granted*, 531 U.S. 956 (2000), *aff'd*, 532 U.S. 731 (2001). There is no "futility" exception to the administrative exhaustion requirement. *Ahmed v. Dragovich*, 297 F.3d 201, 206 (3d Cir. 2002) (citing *Nyhuis v. Reno*, 204 F.3d 65, 78 (3d Cir. 2000)).

The PLRA also requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules . . . .). This is the functional equivalent of the procedural default requirement in the habeas context. *Spruill v. Gillis*, 372 F.3d 218, 228-29 (3d Cir. 2004). While a prisoner must comply with prison procedures, "compliance with the administrative remedy scheme will be satisfactory if it is substantial." *Id.*; *Nyhuis*, 204 F.3d at 77-78. Failure to exhaust is an affirmative defense under the PLRA that must be pleaded and proven by the defendant. *Ray v. Kertes*, 285 F.3d 287, 295 (3d Cir. 2002).

Here, Defendants have demonstrated that Plaintiff has failed to exhaust his administrative remedies. Record evidence reflects that Plaintiff failed to perfect his appeal for Final Review to the Secretary's Office, and consequently, Grievance No. 197806 has not been exhausted. Further, Plaintiff has failed to comply with the applicable deadlines of DC-ADM 804 and therefore, he will not be able to properly exhaust this grievance. (Declaration of Dorina Varner, DOC Grievance Review Officer, ECF No. 231-3 at 13-15.) Plaintiff has come forward with no evidence to raise a genuine issue of fact regarding his failure to exhaust his administrative remedies as to Grievance No. 197806. Hence, Defendants' Motion for Summary Judgment on this claim should be granted.

### 4.  Absence of Personal Involvement of Chairman McVey and Secretary Beard

Chairman McVey and Secretary Beard argue that insofar as Plaintiff's claims are directed to them individually, summary judgment must be granted in their favor because Plaintiff has failed to allege the personal involvement of either individual. Relatedly, Defendants submit that Plaintiff has failed to make out a claim of supervisory liability against them.

Plaintiff responds that discovery will reveal that McVey and Beard were personally involved in the facts alleged in the Amended Complaint.[6] Specifically, Plaintiff states generally that Beard and Plaintiff spoke several times while Plaintiff was at SCI-Mahanoy, and that Beard told Plaintiff that Beard ordered certain actions and responses regarding the facts in issue. (ECF No. 239 at 4.)

In order to make out a claim against individuals pursuant to § 1983, Plaintiff is required to allege facts demonstrating that they had personal involvement in the alleged wrongs; § 1983

---

[6] As noted, *supra* text at 2-3, Plaintiff failed to comply with the Court's Order of April 11, 2011 (ECF No. 280) directing Plaintiff to file his summary of the evidence.

liability may not be predicated upon the operation of *respondeat superior.  Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).  Plaintiff does not allege any actions taken personally by McVey and Beard in the Amended Complaint.  Similarly, Plaintiff does not come forward with evidence of McVey and Beard's personal involvement in the facts giving rise to Plaintiff's claims.  *See Betts v. New Castle Youth Dev. Ctr.,* 621 F.3d 249, 252, 259 (3d Cir. 2010) ("Unsupported assertions, conclusory allegations, or mere suspicions are insufficient to overcome a motion for summary judgment.").

Defendants also contend that they are not liable to Plaintiff under a theory of supervisory liability.  With regard to supervisory liability, the Court of Appeals for the Third Circuit set forth the standard for imposing liability against a supervisor under § 1983 in *Sample v. Diecks*, 885 F.2d 1099 (3d Cir. 1989).  Relying on the precepts set forth by the United States Supreme Court in *City of Canton v. Harris*, 489 U.S. 378 (1989), the *Sample* court noted that "a 'person' is not the 'moving force [behind] the constitutional violation' of a subordinate, unless that 'person'–whether a natural one or a municipality–has exhibited deliberate indifference to the plight of the person deprived."  *Sample*, 885 F.2d at 1117-18.  The Court continued that in order to establish supervisory liability, the plaintiff must identify a specific supervisory practice or procedure that the defendant failed to employ, that the existing custom or practice without that specific practice or procedure created an unreasonable risk of harm, that defendant was aware that this unreasonable risk existed, that defendant was indifferent to that risk, and that plaintiff's harm resulted from defendant's failure to employ that supervisory practice or procedure.  885 F.2d at 1118.  As to causation, the *Sample* court concluded as follows:

> On remand, the district court should bear in mind that under the teachings of *City of Canton* it is not enough for a plaintiff to argue that the constitutionally cognizable injury would not have occurred if the superior had done more than he or she did.  The district court

> must insist that [plaintiff] identify specifically what it is that
> [defendant] failed to do that evidences his deliberate indifference.
> Only in the context of a specific defalcation on the part of the
> supervisory official can the court assess whether the official's
> conduct evidenced deliberate indifference and whether there is a
> close causal relationship between the "identified deficiency" and
> the "ultimate injury."

Sample, 885 F.2d at 1118.

Defendants submit that Chairman McVey has no role with respect to individual parole determinations, citing the Pennsylvania Manual, § 4-131, ECF No. 231-3 at 17-18. Defendants further submit that Secretary Beard has no role with respect to individual sentence calculations, citing the Pennsylvania Manual, § 4-45, ECF No. 231-3 at 20. Plaintiff has failed to come forward with evidence raising an issue of material fact that these individuals did play a role in these respective functions. Moreover, Plaintiff has failed to aver facts, or come forward with evidence to support any claim of supervisory liability.

### 5. Failure to Show Facts Supporting Conspiracy

Defendants contend that they are entitled to judgment as a matter of law on Plaintiff's conspiracy claims because Plaintiff makes only "sweeping, vague and conclusory allegations of conspiracy. Plaintiff responds that he has sufficiently alleged a conspiracy.

In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and

12

the certain actions of the alleged conspirators taken to achieve that purpose." *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000). Further, in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

In the instant action, Plaintiff has failed to allege any facts that plausibly suggest a meeting of the minds between Defendant Neal and any other Defendants to discriminate and selectively prosecute Plaintiff.[7] Plaintiff claims that Neal falsified an affidavit of probable cause and criminal complaint, that he lied under oath, and failed to turn over exculpatory evidence concerning the criminal case against him in Washington County. He also avers that the PSP conspired with Judge Mark Mascara on December 6, 2006 after a bail hearing concerning the Plaintiff's anticipated defenses regarding the criminal charges against Plaintiff. Finally, Plaintiff alleges that the PBPP denied parole to Plaintiff for frivolous reasons in a conspiracy; he avers that at least one board member had personal knowledge of unrelated pending criminal matters concerning Plaintiff in which a constituent and friend was an alleged victim. Plaintiff alleges that the board member communicated this information to Judge O'Dell Seneca, Judge Mark Mascara, Frank Mascara and others. Plaintiff's bald allegations of conspiracy are insufficient to state a claim upon which relief can be granted. *Mincy v.Klem*, 1:08-CV-0066, 2009 WL 331432, at *5 (M.D. Pa. Feb. 9, 2009) (In alleging conspiracy "[a] plaintiff cannot rely on subjective suspicions and unsupported speculation."). Plaintiff's voluminous and far-reaching Amended Complaint does not contain enough facts "to raise a reasonable expectation that discovery will

---

[7] Plaintiff avers that the conspiracy "was engaged in and signed off on by Debbie O'Dell Seneca on December 4, 2006." (Amended Complaint, ECF No. 36 at ¶ 4.) Plaintiff has come forward with no evidence to support this averment.

reveal evidence of illegal agreement." *See Twombly*, 550 U.S. at 556. Further, Plaintiff has come forward with no evidence (or summary of his evidence pursuant to this Court's Order), to support his conspiracy claims. Therefore, Defendants' Motion for Summary Judgment should be granted on Plaintiff's claim of conspiracy pursuant to 42 U.S.C. § 1983.

In order to state a claim under § 1985(3), the Plaintiff must allege four elements: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) injury to a person or property or deprivation of any right or privilege e of a citizen of the United States. *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29 (1983) (citing *Griffin v. Breckenridge,* 403 U.S. 88, 102 (1971)). Plaintiff must set forth specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators. *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)),*abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.,* 326 F.3d 392, 400 (3d Cir. 2003); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991), *later proceeding*, *Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992), *superseded by statute,* Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, *as discussed in Nyhuis v. Reno,* 204 F.3d 65 (3d Cir. 2000). Even though the Supreme Court held in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), that the allegations in a § 1983 complaint cannot be held to a standard of heightened specificity, a plaintiff must allege conspiracy with some particularity. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman,* 507 U.S. at 168).

As discussed above, Plaintiff has failed to allege any facts that indicate that the Defendants entered into any agreement or plan to deprive Plaintiff of his constitutional rights, nor has Plaintiff Father averred any facts to show an act in furtherance of the agreement. "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch.*, 972 F.2d 1364, 1377 (3d Cir. 1992) (quotation omitted). Further, he has failed to come forward with any evidence to support his claim of conspiracy under 42 U.S.C. § 1985(3).[8] Hence, Defendants' Motion for Summary Judgment on this claim should be granted.

6. <u>Equal Protection</u>

Defendants move for summary judgment on Plaintiff's equal protection claim arguing that Plaintiff is unable to show that he was treated differently than similarly situated individuals merely because of his membership in a protected class. Plaintiff does not respond to Defendants' arguments concerning equal protection.

The Equal Protection Clause provides "no . . . state shall deny any person within its jurisdiction the equal protection of the laws." U.S. CONST. amend. XIV § 1. Pursuant to the Equal Protection Clause, all persons are not entitled to be treated identically; rather, the Equal Protection Clause requires that "all persons similarly situated should be treated alike." *Artway v. Attorney General of N.J.,* 81 F.3d 1235, 1267 (3d Cir. 1996) (quoting *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 439 (1985)). "To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class." *Shoemaker v. City of Lock Haven,* 906 F.

---

[8] Plaintiff's claims pursuant to §§ 1986 and 1988 must also be dismissed with prejudice because a § 1986 claim cannot exist without a viable § 1985 claim. *Clark v. Clabaugh,* 20 F.3d 1290, 1295 (3d Cir. 1994). Further, § 1988 does not create a private cause of action. *Moor v. County of Alameda,* 411 U.S. 693, 702-04 (1973).

Supp. 230, 238 (M.D. Pa. 1995) (quoting *Henry v. Metro. Sewer Dist.,* 922 F.2d 332, 341 (6th Cir. 1990)); *see Tillman v. Lebanon County Corr. Facility,* 221 F.3d 410, 423 (3d Cir. 2000). Protected classes include those based on race, religion, national origin, and those impacting fundamental rights. *Artway*, 81 F.3d at 1267. Therefore, if the differential treatment involves a protected classification such as race, the government must have a compelling reason for the differential treatment. *City of Cleburne,* 473 U.S. at 440. A § 1983 plaintiff must prove the existence of purposeful discrimination, and demonstrate that he was treated differently from similarly situated individuals. *See Kennan v. City of Philadelphia,* 983 F.2d 459, 465 (3d Cir. 1992).

Here, Plaintiff avers in the Amended Complaint that he was treated differently by Defendants because he is an African American. Plaintiff, however, has come forward with no evidence that others similarly situated to Plaintiff were treated differently by Defendants. Further, Plaintiff has come forward with no evidence that the actions of Neal and/or Beard were motivated by racial discrimination. Therefore, he has failed to raise a genuine issue of material fact regarding his Equal Protection claim; Defendants' Motion for Summary Judgment on this claim should be granted.


7.   11th Amendment Immunity

Defendants argue that the PSP, DOC, and PBPP are protected by Eleventh Amendment Immunity, and that Defendants Neal and Beard sued in their official capacities, are likewise immune from suit for monetary damages. Plaintiff responds that Defendants directly participated in the alleged wrongs, and that he is suing for more than monetary relief.

The Eleventh Amendment bars civil rights suits against a state in federal court by private parties where the state has not consented to such action. *Laskaris v. Thornburgh,* 661 F.2d 23, 25 (3d Cir. 1981) (citing *Alabama v. Pugh,* 438 U.S. 781 (1978)). This immunity applies even to claims seeking injunctive relief. *Id.*; *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984) (holding Eleventh Amendment immunity applies "regardless of the nature of the relief sought."). Hence, the Eleventh Amendment bars actions in federal court against state officials acting in their official capacity for money damages or back pay, as such retrospective relief would be paid out of the state treasury. *Laskaris,* 661 F.2d at 26 (citing *Edelman v. Jordan,* 415 U.S. 651 (1974)). The Supreme Court, however, has noted an exception to this rule where "suits against individual state officers [are] for prospective injunctive and declaratory relief to end an ongoing violation of federal law." *Pa. Fed'n of Sportsmen's Clubs, Inc. v. Hess,* 297 F.3d 310, 323 (3d Cir. 2002) (citing *MCI Telecomm. Corp. v. Bell Atlantic-Pa.,* 271 F.3d 491, 503 (3d Cir. 2001)). This exception is commonly referred to as the doctrine of *Ex Parte Young,* 209 U.S. 123, 155-56 (1908). *See Pa. Fed'n of Sportsmen's Clubs,* 297 F.3d at 323. The Supreme Court has narrowly applied this exception, *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 102 (1984), and indeed, has declined to apply the exception to relief styled as prospective relief but which, in actuality, seeks compensation for a past injury by a state official. *Green v. Mansour,* 474 U.S. 64, 73 (1985).

Here, Plaintiff's claims for declaratory and injunctive relief against Neal and Beard in their official capacities are barred because in actuality, the so-called prospective relief sought is not prospective at all. An examination of the injunctive and/or declaratory relief requested in the Amended Complaint reveals that the requests for injunctive/declaratory relief are purely an attempt by Father to have this Court review the prior decisions of the state court judges, which it

is not empowered to do.[9]  None of this relief would end an ongoing violation of federal law.

Likewise, Plaintiff's requests that this Court order a federal criminal investigation and the filing

of federal criminal charges are a violation of the separation of powers provisions in the United

States Constitution, and clearly outside its Article III powers.  Therefore, the exception of *Ex*

*Parte Young* is not applicable here and the Eleventh Amendment bars all of Plaintiff's claims

against Neal and Beard in their official capacities, and all claims against the Pennsylvania DOC,

PSP, and PBPP.  *See Atkin v. Johnson,* No. 10-4046, 2011 WL 1654665, at *1 (3d Cir. May 3,

2011) (Eleventh Amendment bars claims for damages against the PSP); *Weigher v. Prison*

*Health Servs.,* 402 Fed. Appx. 668, 670-71 (3d Cir. 2010) (DOC enjoys Eleventh Amendment

immunity); *Dill v. Oslick,* No. Civ. A. 97-4957, 1999 WL 360203, at *2 (E.D. Pa. May 28, 1999)

("The Pennsylvania Board of Probation and Parole is an arm of the Commonwealth of

Pennsylvania entitled to assert the Eleventh Amendment.").


        8.  Defendants are not persons under § 1983

        Section 1983 of the Civil Rights Act provides as follows:

        Every person who, under color of any statute, ordinance, regulation,
        custom, or usage of any State or Territory or the District of Columbia, subjects, or
        causes to be subjected, any citizen of the United States or any other person within
        the jurisdiction thereof to the deprivation of any rights, privileges, or immunities
        secured by the Constitution and laws, shall be liable to the party injured in an
        action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.  Thus, to state a claim for relief under this provision, a plaintiff must

demonstrate that the conduct in the complaint was committed by a "person."  *Piecknick v.*

---

[9] Despite Plaintiff's argument to the contrary, the allegations of fact in the Amended Complaint do not support his
contention that an ongoing violation of federal law exists.  Father appears to be arguing that because the state court
decisions have not been vacated or reversed, his due process rights continue to be violated and perpetuated by
Defendants' alleged conspiracy to deprive him of his rights based on his race.  The Amended Complaint, however,
is completely devoid of any factual support of an ongoing violation of federal law.  Father is attempting to bootstrap
the effect of the state judges' previous rulings into an ongoing federal violation.  This he cannot do.

*Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). In *Will v. Michigan*, 491 U.S. 58, 71 (1989), the United States Supreme Court held that the State, or an official of the State while acting in his or her official capacity, is not a "person" for purposes of § 1983. The Court in *Will* noted that a claim against a state official in his or her official capacity "is no different from a suit against the State itself." 491 U.S. at 71 (citing *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985)). Hence, Plaintiff's claims against Neal and Beard in their official capacities must be dismissed as a matter of law. To the extent that Plaintiff avers claims against the DOC, PSP, and PBPP, these claims must also be dismissed with prejudice as these state entities are not "persons" for purposes of § 1983.

        9. *Miranda*

To the extent that Plaintiff alleges that Defendant Neal violated his Fifth Amendment rights by questioning him prior to giving *Miranda* warnings, the Court, pursuant to 28 U.S.C. § 1915 (e)(2)(B)(i)&(ii), raises the issue *sua sponte*. (*See* ECF No. 36 at ¶¶ 5, 34.) In *Chavez v. Martinez*, 538 U.S. 760, 772 (2003), the United States Supreme Court discussed *Miranda* in the context of a civil action pursuant to § 1983. The Supreme Court noted that the *Miranda* exclusionary rule is a prophylactic measure intended to prevent the admission into evidence of confessions obtained through coercive custodial questioning in the prosecution of a criminal case. *Id.* That is, the Fifth Amendment protection afforded by the text of the Self-Incrimination Clause only forbids the introduction of coerced statements at trial. Therefore, failure to read *Miranda* warnings does not violate a defendant's constitutional rights and cannot be grounds for a § 1983 action where there is no claim that the statements were used against the defendant at trial. *Id.* (citing *Warren v. Lincoln*, 864 F.2d 1436, 1442 (8th Cir. 1989) (alleged *Miranda*

violation not actionable under § 1983); *Giuffre v. Bissell,* 31 F.3d 1241, 1256 (3d Cir. 1994) (same) (other citations omitted).  Here, Plaintiff complains that Neal lied and made false statements in preliminary and trial proceedings, but he does not claim that his own statements allegedly obtained in violation of *Miranda* were used against him at trial.  Therefore, to the extent that Plaintiff attempts to raise a Fifth Amendment violation as a claim in the Amended Complaint, it must fail as a matter of law.

Moreover, Plaintiff has failed to come forward with any evidence from which a reasonable jury could return a verdict in his favor on this claim.  The Court is presented only with the unsupported and conclusory allegations of the Amended Complaint.

### 10. Exculpatory Evidence

Similarly, to the extent that Plaintiff alleges that Defendant Neal failed to turn over exculpatory evidence to the prosecution in the criminal proceeding filed in Washington County, Pennsylvania at Docket No. 2431-2006, the Court, pursuant to 28 U.S.C. § 1915 (e)(2)(B)(i)&(ii), raises the issue *sua sponte.*  Plaintiff has failed to come forward with any evidence upon which a reasonable jury could return a verdict in his favor.  Plaintiff cannot rely solely on the unsupported and conclusory allegations of his Amended Complaint to defeat Defendants' Motion for Summary Judgment.

## III.   **CONCLUSION**

For the reasons discussed above, it is respectfully recommended that the Motion for Summary Judgment filed by Defendants Neal and Beard at ECF No. 229 be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: June 3, 2011

BY THE COURT:

LISA PUPO LENIHAN
Chief United States Magistrate Judge

cc:     All Counsel of Record
        Via Electronic Mail

        Daniel Goodson, III
        1312 Woodmont Avenue
        P.O. Box 303
        New Kensington, PA  15068