**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL J. GOODSON, III, *et al*, | ) | Civil Action No. 08 - 44 |
| | ) | |
| Plaintiff, | ) | Chief Judge Lancaster |
| | ) | Chief Magistrate Judge Lenihan |
| v. | ) | |
| | ) | |
| LAWRENCE O. MAGGI, *et al.*, | ) | ECF No. 255 |
| | ) | |
| Defendants. | ) | |
| | ) | |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

## I.   RECOMMENDATION

It is respectfully recommended that the Renewed Motion to Dismiss (ECF No. 255) filed

by Defendant Frank C. Kocevar, Esquire, be granted.

## II.   REPORT

### A.   Relevant Facts

Plaintiff Daniel J. Goodson III (hereinafter "Father" or "Plaintiff") is a *pro se* individual

who has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of

himself and his four minor children, D.G. VI, J.G., S.G. and D.G.  (ECF No. 36 at Overview.)[1]

At ECF No. 242, Chief District Judge Lancaster dismissed the claims of minor Plaintiffs without

prejudice, and on December 23, 2010, these minor children were terminated as parties in the

above-captioned case.  Therefore, Father, Daniel J. Goodson, III, is the only Plaintiff remaining.

Plaintiff asserts violations of his First, Fourth, Fifth, Sixth, Thirteenth and Fourteenth

Amendment rights.  (ECF No. 36 at Overview.)  The Amended Complaint contains a plethora of

---

[1]Father's original Complaint, received by the Clerk of Courts on January 11, 2008, contained a number of
attachments.  On October 17, 2008, Father filed an Amended Complaint (ECF No. 36), which is essentially the same
as the original Complaint but without the attachments.  For ease of reference, all citations to the Amended
Complaint in this Report and Recommendation are to ECF No. 36.

different claims regarding a variety of different situations. The majority of the claims, however, stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiff has named 37 different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

In July 2004, D.G. was born as a result of a relationship between Father and Gina Savko. (ECF No. 36 at ¶ 31.) In December of 2005, Father learned that D.G. was in an allegedly unsafe environment and he filed for custody of D.G. in Westmoreland County Court. (ECF No. 36 at ¶ 31; *see also* Westmoreland County Ct. of Com. Pleas, Family Court-Custody Division, Docket No. 123 of 2006D.) He also filed a complaint with Westmoreland County Children's Bureau. (ECF No. 36 at Synopsis.) In March of 2006, Father was advised that D.G. was currently residing in Washington County, and to contact Washington County. (Letter dated 3/1/06 from Judge Driscoll's Law Clerk (copy attached to Compl.–*see* Doc. No. 1-3).) On July 27, 2006 and August 18, 2006, Washington County Children & Youth Services ("Washington County CYS") filed Emergency Shelter Petitions and D.G. was ordered to be temporarily placed in foster care pending a hearing on the Petitions. (Emergency Shelter Petitions filed 7/27/06 and 8/18/06, and Judge Mascara's 8/18/06 Order, at No. 24 July 2006, Washington Co. Ct. Com. Pleas, Juvenile Ct. Div. (copies of which are attached to Compl.–*see* Doc. No. 1-3).) A hearing was held in Washington County Court of Common Pleas (hereinafter "Washington County Court") on August 21, 2006 on the Emergency Petitions, after which Defendant Judge Mark Mascara entered an order directing that D.G. be placed in protective physical and legal custody of

Washington County CYS.[2]   Judge Mascara also presided over subsequent juvenile court hearings regarding the Permanency Petition of Washington County CYS to determine the dependency of D.G. from August 2006 to the filing of this federal lawsuit.

Plaintiff seeks generally declaratory, injunctive and monetary relief against all Defendants.  (ECF No. 36 at Posture.)   Relating to the facts and circumstances involving Defendant Frank C. Kocevar, Esquire, ("Kocevar"), who has filed the instant Motion to Dismiss, Plaintiff requests the following injunctive and/or declaratory relief:

(1) enjoin the state of Pennsylvania from seeking to enforce its final judgment in the interest of D.G. a minor child at JV 274-06, Washington County, PA.

(2) order that the names of the minor children be changed back to their birth names;

(3) order that D.G. be placed under the guardianship of her paternal grandparents;

(4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County CYS.

(5) order a federal investigation of all Defendants' conduct and actions in relating to the Amended Complaint.

(ECF No. 36 at Synopsis.)   In addition, Plaintiff requests an order directing (1) the filing of federal criminal charges against those defendants as warranted and (2) a federal investigation of all Defendants' conduct and actions in regard to the complaint.  With regard to monetary relief, Plaintiff seeks from each Defendant compensatory damages in the amount of $50,000 and punitive damages in the amount of $100,000.  (ECF No. 36 at Synopsis.)

---

[2] In addition, in his August 21, 2006 order, Judge Mascara denied Father's motion to change D.G.'s placement to paternal aunt's home and motion for change of venue to Westmoreland County.  He further ordered that Father shall have no contact with D.G. at that time and that mother shall have weekly supervised visits provided negative drug testing results.  (Judge Mascara's 8/21/06 Order at Compl. ECF No. 1-3).

Presently before the Court is the Renewed Motion to Dismiss filed by Kocevar pursuant to Federal Rules of Civil Procedure 12(b)(1) & (6).

Liberally construing Plaintiff's Amended Complaint, Plaintiff's claims against Kocevar are found in Paragraphs 17, 29, 32, 33, 36 44, 76, 77 and 84 and aver as follows:

1) That Kocevar, along with other Defendants, has conspired to interfere with Plaintiff's civil rights under color of law and in his personal capacity. (ECF No. 36 at ¶ 17.)

2) That Kocevar, along with other Defendants, has made false statements, has attempted to preclude Plaintiff from filing complaints and appeals, and forbade his testimony and his freedom of speech to the court and news media. Plaintiff further avers that Kocevar and other Defendants have made racial slurs/remarks towards Plaintiff and his family. Plaintiff also alleges that Defendants, including Kocevar, have manipulated the legal system to harm Plaintiff and his family. (ECF No. 36 at ¶ 29.)

3) Specifically as to Kocevar in his capacity as guardian ad litem of D.G., Plaintiff avers that he conspired with the Washington County Defendants in his "grossly negligent representation of minor D.G.," in failing to examine records or documents, in failing to file any motions on the minor's behalf, in failing to conduct an investigation including the failure to interview witnesses, minor's parents, foster parents, or other caretakers, all which lead to D.G. being placed in a known crack house. Plaintiff further avers that Kocevar never attempted to relocate D.G. to a safer environment. (ECF No. 36 at ¶ 32.)

4) Plaintiff avers that most of the actions of the Defendants occurred "during the administrative acts [and] therefore absolute immunity" does not apply. (ECF No. 36 at ¶ 33.)

5) Plaintiff alleges that Defendants had meetings without Plaintiff's defense counsel present where they orchestrated and coordinated their theories to prosecute Plaintiff civilly and criminally to keep minor children away from him and his family. (ECF No. 36 at ¶ 36.)

6) Plaintiff further avers that defendants Kocevar, Jeffries (Father's attorney during the Washington County dependency proceedings), Judge Mascara , Savko, Kramer (attorney for Savko), and Washington County Children and Youth Services conspired with one another to make false and inflammatory statements against Plaintiff. Plaintiff alleges that these statements were made to both racially discriminate against him and in retribution for his filing complaints against all of these defendants. (ECF No. 36 at ¶ 44.)

7) Plaintiff alleges that during a September 14, 2006 conference call between himself, and defendants Judge Mascara, Jeffries, Kramer, the Wilcoxes (interim caregivers for D.G.), Savko and others, he overheard all defendants making racially disparaging remarks when they believed that the phone call had been terminated, when in fact, it had not. Plaintiff avers that these remarks continued for 3-5 minutes and only ceased when Plaintiff made it known that he could hear their remarks. At that point, the call was terminated. (ECF No. 36 at ¶¶ 76-77.)

8) Plaintiff avers that all defendants conspired with one another by off record comments, internet exchanges, and with written and telephonic communications. (ECF No. 36 at ¶ 84.)

9) Finally, Plaintiff asserts state law claims of outrageous conduct, intentional infliction of emotional distress, and gross negligence against all Defendants.

**B.** <u>Legal Standard</u>

PRO SE PLEADINGS

The Court must liberally construe the factual allegations of Plaintiff's Amended Complaint because p*ro se* pleadings, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007); *Haines v. Kerner,* 404 U.S. 519, 520-21 (1972). Further, Federal Rule of Civil Procedure 8(e) requires that all pleadings be construed "so as to do justice." Fed. R. Civ. P. 8(e).

MOTION TO DISMISS PURSUANT TO RULE 12(b)(1)

A motion to dismiss under Rule 12(b)(1) may be treated as either a facial or factual challenge to the court's subject matter jurisdiction. *Patsakis v. Greek Orthodox Archdiocese of America*, 339 F. Supp.2d 689, 692 (W.D. Pa. 2004) (citing *Mortensen v. First Fed. Sav. & Loan Ass'n,* 549 F.2d 884, 891 (3d Cir. 1977)); *Gould Electronics, Inc. v. United States,* 220 F.3d 169, 176 (3d Cir. 2000). In the case at bar, Kocevar appears to make a facial challenge. In a facial attack, the court must consider the allegations of the complaint as true, in the light most favorable to the plaintiff, similar to a motion to dismiss under Rule 12(b)(6). *Mortensen,* 549 F.2d at 891; *In re Kaiser Group Int'l, Inc.,* 399 F.3d 558, 561 (3d Cir. 2005).

In support of his Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction, Kocevar argues that Plaintiff's claims are barred by the *Rooker-Feldman* doctrine in that Plaintiff seeks appellate-type review of a Pennsylvania state

court judgment.  In response, Plaintiff argues that this case involves claims apart from the state court judgment.[3]

MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993).  A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556 (2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556).  The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.  Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context),

---

[3] Although ordered to file a Response to Defendant Kocevar's Renewed Motion to Dismiss, (*see* ECF No. 278), Plaintiff failed to respond.  The Court, however, looks to Plaintiff's Response (ECF No. 221) to Kocevar's initial Motion to Dismiss.

and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, In light of *Iqbal*, the United States Court of Appeals for the Third Circuit in *Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009),* set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,*129 S. Ct. at 1949].  Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35.  As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

In support of the Motion to Dismiss pursuant to Rule 12(b)(6), Kocevar argues that he is entitled to judgment as a matter of law because as a guardian ad litem, he is entitled to absolute judicial immunity. Defendant Kocevar further argues that he is not a state actor, and consequently, the claims against him must be dismissed as a matter of law.

Plaintiff responds that Kocevar's actions fall outside the realm of the judicial process and therefore he is not protected by absolute judicial immunity. Plaintiff further argues that Kocevar conspired with other state actors to deprive Plaintiff of his constitutional rights and therefore can be considered to be a state actor for purposes of § 1983.

**C.     Analysis**

MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Rooker- Feldman

The *Rooker-Feldman* doctrine is a judicially-created doctrine that bars lower federal courts from reviewing certain state court actions. The doctrine originated from two Supreme Court opinions: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923)*, and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). Specifically, the *Rooker-Feldman* doctrine holds that a United States District Court has no subject matter jurisdiction to review final judgments of a state court, because only the Supreme Court has jurisdiction to review state court judgments under 28 U.S.C. § 1257. *Feldman*, 460 U.S. at 482.[4] "The Rooker-Feldman doctrine is based on the statutory foundation of 28 U.S.C. § 1257 and the well-settled understanding that the Supreme Court of the United States, and not the lower federal courts, has jurisdiction to review a state court decision." *Parkview Assocs. P'ship v. City of Lebanon*, 225 F.3d 321, 324 (3d Cir.2000); *see also Gulla v. North Strabane Twp*., 146 F.3d 168, 171 (3d Cir.1998). This

---

[4] Habeas corpus petitions are an exception to the jurisdictional bar of *Rooker-Feldman*. *See Walker v. Horn*, 385 F.3d 321, 329 n.22 (3d Cir. 2004) (citations omitted).

doctrine applies even where the challenges to the state court judgment allege that the state court's action was unconstitutional, such as a deprivation of due process and equal protection rights. *Feldman,* 460 U.S. at 485-86 (citation omitted).

In *Exxon Mobil Corp. v. Saudi Basic Industries Corporation*, the Supreme Court emphasized the narrowness of the doctrine and held that *Rooker-Feldman* is "confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejections of those judgments." 544 U.S. 280, 284 (2005); *see also Turner v. Crawford Square Apartments III, L.P.*, 449 F.3d 542, 544 (3d Cir.2006) (citing *Exxon Mobil, id.*).[5]  The Court in *Exxon Mobil* further clarified that just because a federal claim was previously adjudicated in state court does not trigger the application of *Rooker-Feldman.*  Thus, the court must determine if the plaintiff in the federal lawsuit has presented "some independent claim, albeit one that denies a legal conclusion that a state court has reached in a case to which he was a party." *Exxon Mobil,* 544 U.S. at 293 (citations omitted).  If the court finds that an independent claim has been presented, then jurisdiction exists and state law controls whether the defendant prevails on preclusion principles. *Id.*  As the Court pointed out, "[p]reclusion, of course, is not a jurisdictional matter." *Id.* (citing Fed. R. Civ. P. 8(c)).

Shortly after the Supreme Court's determination in *Exxon Mobil*, the United States Court of Appeals for the Third Circuit, while acknowledging the recent *Exxon Mobil* decision, still applied the two-step *Rooker-Feldman* inquiry that it had applied in the past–a claim in federal court will be barred by *Rooker-Feldman* under two circumstances: "first, if the federal claim was

---

[5] The *Rooker-Feldman* doctrine applies to final decisions of lower state courts.  *Walker*, 385 F.3d at 329 (citation omitted).

actually litigated in state court prior to the filing of the federal action or, second, if the federal

claim is inextricably intertwined with the state adjudication, meaning that federal relief can only

be predicated upon a conviction that the state court was wrong." *In Re Knapper*, 407 F.3d 573,

580 (3d Cir. 2005). More recently, however, the court of appeals has cautioned that reliance on

its pre-*Exxon* formulation of the *Rooker-Feldman* doctrine, and in particular the "inextricably

intertwined" prong, may no longer be appropriate. *See, e.g., Gary v. Braddock Cemetery,* 517

F.3d 195, 200 n. 5 (3d Cir. 2008) (citations omitted); *East Hill Synagogue v. City of Englewood,*

240 F. App'x 938, 940 n.1 (3d Cir. 2007) (noting that after *Mobil,* "[t]here is little reason to

believe that 'inextricably intertwined' . . . does anything more than state a conclusion or describe

a claim that meets the requirements of *Exxon*.") (collecting decisions from other courts of

appeals).

In 2010, the United States Court of Appeals for the Third Circuit rejected its pre-*Exxon*

*Mobil* formulation of the *Rooker-Feldman* inquiry, and established the following test, based on

the Supreme Court's holding in *Exxon Mobil*:

> [T]here are four requirements that must be met for the *Rooker-Feldman* doctrine to apply: (1) the federal plaintiff lost in state court; (2) the plaintiff "complain[s] of injuries caused by [the] state-court judgments"; (3) those judgments were rendered before the federal suit was filed; and (4) the plaintiff is inviting the district court to review and reject the state judgments.

*Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 166 (3d Cir. 2010)

(quoting *Exxon Mobil,* 544 U.S. at 284). Furthermore, in formulating the four-part test, the court

of appeals determined that the phrase "inextricably intertwined" neither created an additional

legal test nor expanded the scope of the doctrine beyond challenges to state-court judgments. *Id.*

at 170. Rather, "[t]he purpose of the [phrase had been] to highlight that a challenge to a

judgment is barred even if the claim forming the basis of the challenge was not raised in the state proceedings." *Id.* (alteration to original) (citing *Bolden v. City of Topeka, Kan.,* 441 F.3d 1129, 1141 (10th Cir. 2006)). Hence, the court of appeals opined that the phrase is no more than "a descriptive label attached to claims that meet the requirements outlined in *Exxon Mobil*." *Id.* at 170 (quoting *Hoblock v. Albany Cnty. Bd. of Elections,* 422 F.3d 77, 87 (2d Cir. 2005)).

The court of appeals in *Great Western* found that the key to determining whether *Rooker-Feldman* barred a claim lies within the second and fourth requirements of the four-part test. 615 F.3d at 166. Essentially, the second requirement – plaintiff must complain of injuries caused by the state court judgment – is an inquiry into the source of the plaintiff's injury. *Id.* (citing *Turner v. Crawford Square Apartments III, L.P.,* 449 F.3d 542, 547 (3d Cir. 2006)). The court of appeals offered the following illustration of a situation where the state court judgment itself was the source of the injury:

> Suppose a state court, based purely on state law, terminates a father's parental rights and orders the state to take custody of his son. If the father sues in federal court for the return of his son on grounds that the *state judgment* violates his federal substantive due-process rights as a parent, he is complaining of an injury caused by the state judgment and seeking its reversal.

*Id.* at 166-67 (emphasis added) (citing *Hoblock,* 422 F.3d at 87-88). By contrast, the court of appeals noted that in the following example, the source of the injury was the defendants' actions (as opposed to the state court judgment), even though the federal lawsuit asks the federal court to deny a legal conclusion reached by the state court:

> Suppose a plaintiff sues his employer in state court for violating both state anti-discrimination law and Title VII and loses. If the plaintiff then brings the same suit in federal court, he will be seeking a decision from the federal court that denies the state court's conclusion that the employer is not liable, but he will not be alleging injury from the state judgment. Instead, he will be alleging

> injury based on the employer's discrimination. The fact that the
> state court chose not to remedy the injury does not transform the
> subsequent federal suit on the same matter into an appeal,
> forbidden by *Rooker-Feldman*, of the state-court judgment.

*Id.* at 167 (citing *Hoblock*, 422 F.3d at 88).  The court of appeals further explained that a useful guidepost in determining the source of the injury is the injury's timing, "that is, whether the injury complained of in federal court existed prior to the state-court proceedings and thus could not have been 'caused by' those proceedings." *Id.*

The fourth requirement of the four-part test – that the plaintiff must invite federal court review and rejection of the state court judgment – is closely related to the second requirement. *Id.* at 168 (quoting *Bolden*, 441 F.3d at 1143).  The fourth requirement focuses, however, on "whether the federal plaintiff's claims will require appellate review of state-court decisions by the district court." *Id.* at 169. Moreover, it looks at the relief that is requested by the plaintiff.

In *Great Western*, the plaintiff claimed that due to an alleged conspiracy between the arbitrator, numerous attorneys, and state court judges, the state court's decisions had been predetermined before the hearing had taken place, violating its constitutional right to a fair hearing.  *Id.* at 171.  When addressing the second and fourth requirements, the court of appeals relied on the reasoning used by the United States Court of Appeals for the Seventh Circuit in two separate cases with similar claims.  *Id.*

In *Nesses v. Shepard,* the *Great Western* court observed that "the federal plaintiff alleged that his losses in state court were the product of a conspiracy among the judges and lawyers." *Id.* (citing *Nesses v. Shepard,* 68 F.3d 1003, 1004 (7th Cir. 1995)). But even though the *Great Western* court acknowledged that the federal plaintiff was, in a sense, attacking the ruling and decision of the state court, because the federal plaintiff "alleged that *'people involved in the*

*decision violated some independent right of his,* such as the right (if it is a right) to be judged by a tribunal that is uncontaminated by politics, then he [could], without being blocked by the *Rooker-Feldman* doctrine, sue to vindicate that right.'" *Id.* (quoting *Nesses,* 68 F.3d at 1005) (emphasis in original). Therefore, as a part of the plaintiff's claim for damages, the *Great Western* court found that the plaintiff may show that the violation had caused the state court's decision to be adverse to him, thus doing him harm. *Id.* (citing *Nesses,* 68 F.3d at 1005).

Next, the *Great Western* court noted the reasoning of the court of appeals in *Brokaw v. Weaver,* 305 F.3d 660, 665 (7th Cir. 2002). In that case, the plaintiff contended that her relatives and certain officials had "'conspired – prior to any judicial involvement – to cause false child neglect proceedings to be filed, resulting in her removal from her home in violation of her … substantive and procedural due process rights[.]'" *Great Western,* 615 F.3d at 172 (quoting *Brokaw,* 305 F.3d at 665). Whether the alleged conspiracy would have caused the plaintiff to suffer any damages, absent the state court order, was found to be irrelevant. *Id.* The *Brokaw* court held that *Rooker-Feldman* did not bar the plaintiff's claim, "'because her claim for damages [was] based on an alleged independent violation of her constitutional rights.  It was this separate constitutional violation which caused the adverse state court decision.'" *Id.* (quoting *Brokaw,* 305 F.3d at 667).

In applying the reasoning of the Court of Appeals for the Seventh Circuit, the court in *Great Western* found that the federal plaintiff was "not merely contending that the state-court decisions were incorrect or that they were themselves in violation of the Constitution. Instead, [the federal plaintiff] claim[ed] that 'people involved in the decision violated some independent right,' that is, the right to an impartial forum." *Id.* (quoting *Nesses,* 68 F.3d at 1005).  Because the federal plaintiff based its claim on an alleged independent violation of its constitutional

rights, the *Great Western* court found that actions of the defendants and members of Pennsylvania judiciary, and not the state court decisions themselves, were the source of the federal plaintiff's purported injury. *Id.* (quoting *Brokaw*, 305 F.3d at 667).

Although the court of appeals' finding on the second requirement was enough to render *Rooker-Feldman* inapplicable to the case, the *Great Western* court examined the facts as applied to the fourth requirement as well. *Id.* at 173. The court of appeals found that "if [the federal plaintiff] could prove the existence of a conspiracy to reach a predetermined outcome in state court, it could recover nominal damages for this due process violation." *Id.* (citing *Carey*, 435 U.S. at 262-64). Because the merits of the state court decisions were immaterial to the existence of the alleged violation, the court of appeals held that the federal plaintiff's "entitlement to such damages could be assessed without any analysis of the state-court judgments. To recover for more than the alleged due process violation, however, [the federal plaintiff] would have to show that the adverse state-court decisions were entered erroneously." *Id.* (citing *Nesses,* 68 F.3d at 1005).

Nevertheless, the *Great Western* court found that this is not the type of appellate review that is barred by *Rooker-Feldman*. *Id.* The relief requested by the plaintiffs in both *Rooker* and *Feldman,* who were seeking to have the state-court decisions undone or declared null and void by the federal courts, required effectively overruling the state-court judgments. *Id.* (citing *Rooker,* 263 U.S. at 414; *Feldman,* 460 U.S. at 468-69). To differentiate, the federal plaintiff in *Great Western* had sought relief in the form of damages, and hence, "may, 'as part of [its] claim for damages,' show 'that the [constitutional] violation caused the decision[s] to be adverse to [it] and thus did [it] harm.'" *Id.* (citing *Nesses,* 68 F.3d at 1005). Therefore, "while Great Western's claim for damages may require review of state-court judgments and even a conclusion that they

were erroneous, those judgments would not have to be rejected or overruled for Great Western to prevail.  Accordingly, the review and rejection requirement of the *Rooker-Feldman* doctrine [was] not met[.]" *Id.* (alteration to original).

In the instant matter, the Court finds that all four requirements of *Great Western* are met with regard to the claims against Kocevar seeking the following relief:

(1) enjoin the state of Pennsylvania from seeking to enforce its final judgment in the interest of D.G. a minor child at JV 274-06, Washington County, PA.

(2) order that the names of the minor children be changed back to their birth names;

(3) order that D.G. be placed under the guardianship of her paternal grandparents;

(4) order that jurisdiction in all custody matters be remanded to the Westmoreland County Court and Westmoreland County CYS.

First, Father was the losing party in the custody action with regard to D.G.  Second, it is clear that the source of Plaintiff's alleged injuries in this federal action is the Pennsylvania state court judgment terminating Father's parental rights to D.G.  Father is now suing in federal court for the reinstitution of his parental rights, an award of custody to the paternal grandparents, and return of jurisdiction over the custody matters to the Pennsylvania state court, Westmoreland County.  It is clear from Plaintiff's declaratory and injunctive requests for relief set out above that he is seeking reversal of the Washington County state court judgment.  Plaintiff is, in essence, seeking appellate review of the state court judgment, and therefore, the Court finds that the source of Plaintiff's alleged injuries as to these claims seeking equitable relief is the state court judgment issued in Washington County.  The third requirement is also satisfied here because it is clear that the state court judgment entered by Judge Mascara was entered well before the present litigation was commenced.  Finally, the fourth requirement of *Great Western*

is satisfied because, as discussed, Plaintiff specifically seeks an injunction barring enforcement of the Pennsylvania state court judgment, the restoration of Father's parental rights, and an award of custody to the paternal grandparents, which, if granted, would effectuate a reversal of the Pennsylvania state court judgment. Accordingly, this Court lacks subject matter jurisdiction over the claims against Kocevar seeking the equitable relief set out above.

According to *Great Western*, however, Father's claims for violation of his federal constitutional rights and conspiracy for which he seeks monetary damages, are not barred by *Rooker-Feldman*. The source of Plaintiff's injuries as to these claims is not the Pennsylvania state court judgment. Instead, the source of Plaintiff's alleged injuries is Kocevar's alleged actions in participating in the claimed conspiracy. Even though these injuries may have helped to cause the Pennsylvania state court judgment, these claims are independent because they stemmed from the alleged actions of Kocevar, rather than from the judgment itself. Further, as to the fourth element of *Great Western*, although Father's claim for damages may require review of the Pennsylvania state court judgment and even a conclusion that it was erroneous, the Washington County Pennsylvania state court judgment would not have to be rejected or overruled for Father to prevail on his independent constitutional claims for damages. Accordingly, *Rooker-Feldman* does not bar the claims against Kocevar seeking monetary damages.

MOTION TO DIMISS FOR FAILURE TO STATE A CLAIM

Judicial Immunity

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the

> jurisdiction thereof to the deprivation of any rights, privileges, or
> immunities secured by the Constitution and laws, shall be liable to
> the party injured in an action at law, suit in equity, or other proper
> proceeding for redress . . ..

42 U.S.C. § 1983. To state a claim for relief under this provision, the Plaintiff must demonstrate that the conduct in the complaint was committed by a person or entity acting under color of state law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36 F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a remedy for violations of those rights created by the United States Constitution or federal law. *Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).

Although 42 U.S.C. § 1983 does not provide for immunity defenses on its face, the United States Supreme Court has held that Congress did not intend § 1983 to abrogate immunities "well grounded in history and reason." *Tenny v. Brandhove*, 341 U.S. 367, 376 (1951). The United States Supreme Court has recognized the defense of absolute immunity from civil rights suits in several contexts where the judicial process is in play. In *Hughes v. Long,* the United States Court of Appeals for the Third Circuit discussed the role of a guardian ad litem and the fact that they enjoy judicial immunity. 242 F.3d 121, 127 (3d Cir. 2001). In *Hughes,* the court of appeals noted that "[a] guardian ad litem is a person appointed by the court in custody proceedings to serve as an investigator and gather information about the parents and the children and report back to the court recommending which parent should receive custody." *Id.* Hence, guardian ad litems inform and assist the court. *Id.* Consequently, when performing these duties, they are entitled to absolute judicial immunity. *Id.* (citing *Gardner v. Parson*, 874 F.2d 131, 146 (3d Cir. 1989); *Cok v. Cosentino*, 876 F.2d 1, 2-3 (1st Cir. 1989) (other citations omitted)).

Plaintiff's averments against Kocevar concern his duties as a guardian ad litem. These averments involve Kocevar's alleged failures to examine records or documents, to file motions on D.G.'s behalf, and to conduct an investigation which included witness interviews. Plaintiff further avers that in his representation of D.G., Kocevar never attempted to relocate her to a safe environment. Even Plaintiff's averments of conspiracy as to Kocevar concern circumstances relating to his duties as a guardian ad litem. Consequently, he is protected by absolute immunity. Therefore, Plaintiff's claims against Kocevar should be dismissed with prejudice on this basis.

2. State Action

Defendant Kocevar also argues that he is not a state actor for purposes of § 1983 liability. As noted above, a § 1983 plaintiff must demonstrate that the defendant acted under color of state law. Court appointed counsel, especially one serving as a guardian ad litem, does not qualify as a state actor for purposes of § 1983. *See Polk County v. Dodson*, 454 U.S. 312, 325 (1981) (although an employee of the state when serving as counsel to an indigent defendant, public defender does not act under color of state law; public defender owes loyalty to the criminal defendant, not the state); *Davis v. Philadelphia County*, 195 F. Supp.2d 686, 688-89 (E.D. Pa. 2002) (court-appointed defense attorney does not qualify as a state actor for purposes of § 1983). *See also Kirtley v. Rainey,* 326 F.3d 1088 (9th Cir. 2003) (guardian ad litem not state actor for purposes of § 1983); *Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir. 1986) (court relied on analogy between public defender and guardian ad litem to hold guardian ad litem not state actor for purposes of § 1983).

Further, Defendant Kocevar may not be found to be a state actor by virtue of the conspiracy allegations of the Amended Complaint. Although § 1983 liability will not generally lie against a private party, liability may attach where the private party "is a willful participant in

joint action with the State or its agents." *Dennis v. Sparks*, 449 U.S. 24, 27 (1980). Hence, private action may be converted into state action if a state actor conspires with a private individual to deprive a plaintiff of his constitutional rights. *Id.* at 27-29. The requisite state action may be found even if the state actor with whom the private individual allegedly conspired is himself immune from suit. *Id.* (action against private parties accused of conspiring with judge found to be state action under § 1983). The allegations of a complaint, however, must state a claim for conspiracy. *See id.* at 28.

Plaintiff has failed to allege a plausible conspiracy claim pursuant to the requirements of *Twombly* and its progeny. In order to make out a claim for conspiracy pursuant to 42 U.S.C. § 1983, a plaintiff must allege conspiracy with particularity even though a heightened pleading standard generally does not apply to civil rights actions against individual defendants. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993)). "To plead conspiracy adequately, a plaintiff must set forth allegations that address the period of the conspiracy, the object of the conspiracy, and the certain actions of the alleged conspirators taken to achieve that purpose." *See, e.g., Shearin v. E.F. Hutton Group, Inc.,* 885 F.2d 1162, 1166 (3d Cir. 1989), *abrogated on other grounds by Beck v. Prupis,* 529 U.S. 494 (2000). Further, in light of *Twombly* and its progeny, there must be "'enough factual matter (taken as true) to suggest that an agreement was made,' in other words, 'plausible grounds to infer an agreement.'" *Great Western Mining & Mineral Co.,* 615 F.3d 159, 178 (3d Cir. 2010) (quoting *Twombly*, 550 U.S. at 556).

In the instant action, Plaintiff has failed to allege any facts that plausibly suggest a meeting of the minds between Kocevar and the other Defendants to keep Plaintiff and his family away from Plaintiff's children. Plaintiff only claims that Kocevar conspired with the

Washington County Defendants in the "grossly negligent representation of minor D.G." (ECF No. 36 at ¶ 32.) Plaintiff also states generally that Defendants, at some unidentified point, held meetings without Plaintiff's defense counsel present, conspired to make false statements, and that during a conference call, he overheard some Defendants making racially disparaging remarks. Plaintiff's bald allegations of conspiracy are insufficient to state a claim upon which relief can be granted. *Mincy v.Klem*, 1:08-CV-0066, 2009 WL 331432, at *5 (M.D. Pa. Feb. 9, 2009) (In alleging conspiracy "[a] plaintiff cannot rely on subjective suspicions and unsupported speculation."). Plaintiff's voluminous and far-reaching Amended Complaint does not contain enough facts "to raise a reasonable expectation that discovery will reveal evidence of illegal agreement." *See Twombly*, 550 U.S. at 556. Accordingly, Plaintiff may not convert Defendant Kocevar's purely private action into state action by including him in an alleged conspiracy with state officials. Therefore, Plaintiff's claim of conspiracy pursuant to 42 U.S.C. § 1983 should be dismissed with prejudice. Any attempt by Plaintiff to amend his already voluminous and exhaustive Amended Complaint would be futile.[6]

Unlike § 1983, state action is not required to support a claim pursuant to § 1985(3). *Griffin v. Breckenridge,* 403 U.S. 88 (1971) In order to state a claim under § 1985(3), the Plaintiff must allege four elements: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; 3) an act in furtherance of the conspiracy; and 4) injury to a person or property or deprivation of any right or privilege of a citizen of the United States. *United Brotherhood of Carpenters & Joiners Local 610 v. Scott*, 463 U.S. 825, 828-29

---

[6] The United States Court of Appeals for the Third Circuit in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to Fed. R. Civ. P. 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would be inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008).

(1983) (citing *Griffin,* 403 U.S. at 102)). Plaintiff must set forth specific factual allegations that demonstrate collusion or concerted action among the alleged conspirators. *Parkway Garage, Inc. v. City of Philadelphia*, 5 F.3d 685, 700 (3d Cir. 1993) (quoting *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 150 (1970)),*abrogated on other grounds by United Artists Theatre Circuit, Inc. v. Twp. of Warrington, Pa.,* 326 F.3d 392, 400 (3d Cir. 2003); *Young v. Kann*, 926 F.2d 1396, 1405 n.16 (3d Cir. 1991), *later proceeding*, *Young v. Quinlan*, 960 F.2d 351 (3d Cir. 1992), *superseded by statute,* Prison Litigation Reform Act of 1996, Pub. L. No. 104-134, 110 Stat. 1321, *as discussed in Nyhuis v. Reno,* 204 F.3d 65 (3d Cir. 2000). Even though the Supreme Court held in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 168 (1993), that the allegations in a § 1983 complaint cannot be held to a standard of heightened specificity, a plaintiff must allege conspiracy with some particularity. *Bieros v. Nicola*, 860 F. Supp. 223, 225 (E.D. Pa. 1994) (citing *Leatherman,* 507 U.S. at 168).

As discussed above, Plaintiff has failed to allege any facts that indicate that the Defendants entered into any agreement or plan to deprive Plaintiff of his constitutional rights, nor has Plaintiff Father averred any facts to show an act in furtherance of the agreement. "[M]ere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim." *D.R. by L.R. v. Middle Bucks Area Vocational Technical Sch*., 972 F.2d 1364, 1377 (3d Cir. 1992) (quotation omitted). Accordingly, he has failed to state a claim upon which relief may be granted under 42 U.S.C. § 1985(3).[7] As noted above, any attempt to amend would be futile.

---

[7] Plaintiff's claims pursuant to §§ 1986 and 1988 must also be dismissed with prejudice because a § 1986 claim cannot exist without a viable § 1985 claim. *Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994). Further, § 1988 does not create a private cause of action. *Moor v. County of Alameda,* 411 U.S. 693, 702-04 (1973).

## III.    CONCLUSION

For the reasons discussed above, it is respectfully recommended that Defendant's Motion to Dismiss at ECF No. 255 be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: June 3, 2011                    BY THE COURT:

                                       LISA PUPO LENIHAN
                                       Chief United States Magistrate Judge

cc:    All Counsel of Record
       Via Electronic Mail

       Daniel Goodson, III
       1312 Woodmont Avenue
       P.O. Box 303
       New Kensington, PA  15068