**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| DANIEL J. GOODSON, III, *et al*, | ) | Civil Action No. 08 - 44 |
| | ) | |
| Plaintiff, | ) | Chief Judge Lancaster |
| | ) | Chief Magistrate Judge Lenihan |
| v. | ) | |
| | ) | |
| LAWRENCE O. MAGGI, *et al*., | ) | ECF No. 272 |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

### I.     RECOMMENDATION

It is respectfully recommended that the Motion to Dismiss Plaintiff's Third Amended

Complaint filed by Defendant Washington County Correctional Facility Warden Joseph Pelzer

(ECF No. 272) be granted.

### II.     REPORT

#### A.     Relevant Facts

Plaintiff Daniel J. Goodson III (hereinafter "Father" or "Plaintiff") is a *pro se* individual

who has filed this civil action pursuant to 42 U.S.C. §§ 1983, 1985, 1986 and 1988 on behalf of

himself and his four minor children, D.G. VI, J.G., S.G. and D.G.  (ECF No. 36 at Overview.)[1]

At ECF No. 242, Chief District Judge Lancaster dismissed the claims of minor Plaintiffs without

prejudice, and on December 23, 2010, these minor children were terminated as parties in the

---

[1]Father's original Complaint, received by the Clerk of Courts on January 11, 2008, contained a number of attachments.  On October 17, 2008, Father filed an Amended Complaint (ECF No. 36), which is essentially the same as the original Complaint but without the attachments.  For ease of reference, all citations to the Complaint in this Report and Recommendation are to ECF No. 36.

above-captioned case. Therefore, Father, Daniel J. Goodson, III, is the only remaining Plaintiff.

Plaintiff asserts violations of his First, Fourth, Fifth, Sixth, Thirteenth and Fourteenth Amendment rights. (ECF No. 36 at Overview.) The Amended Complaint contains a plethora of different claims regarding a variety of different situations. The majority of the claims, however, stem from custody proceedings regarding Father's children in the state courts of Pennsylvania and Colorado (hereinafter the "underlying custody matter"). Plaintiff named 37 different defendants who are judges, courts, court employees, county commissioners and controllers, social workers employed by various county children and youth services, the mothers of Father's children, Father's former counsel, foster parents, a guardian ad litem, a state trooper, a prison official, a sheriff, and state and federal prosecutors.

Presently before the Court is Defendant Washington County Correctional Facility Warden Joseph Pelzer's ("Defendant Pelzer") Motion to Dismiss Plaintiff's Third Amended Complaint. On March 1, 2010 Defendant Pelzer's Motion to Dismiss Plaintiff's Amended Complaint at ECF No. 108 was granted in part and denied in part. (ECF No. 228.) Thereafter, Plaintiff was granted leave to file a Third Amended Complaint against Defendant Pelzer limited to the following claims:

1. First Amendment Free Exercise claim (Report and Recommendation, ECF No. 228 at pp. 36-38);
2. First Amendment claim regarding denial of outgoing communications (Report and Recommendation, ECF No. 228 at pp. 40-41);
3. First Amendment claim regarding censorship of legal mail (Report and Recommendation, ECF No. 228 at pp. 41-42);
4. Retaliation for complaining/filing legal paperwork claim (Report and Recommendation, ECF No. 228 at pp. 42-44); and
5. Eighth Amendment claim regarding denial of adequate medical care (Report and Recommendation, ECF No. 228 at pp. 45-46).

(ECF No. 263.) The Court also indicated that "[a]ny amendments other than those allowed above will be stricken." (ECF No. 263.)

Plaintiff filed his Third Amended Complaint on December 23, 2010. (ECF No. 267.) Defendant Pelzer filed this Motion to Dismiss the Third Amended Complaint on January 20, 2011. Plaintiff filed a Motion for Extension of Time to File a Response to Defendant's Motion. (ECF No. 275.) The Court granted Plaintiff's Motion for Extension of Time on February 17, 2011, and Plaintiff was ordered to file his Response by May 18, 2011. Plaintiff did not file a Response.

Plaintiff's claims against Defendant Pelzer stem from "several SHU [Special Housing Unit] housing assignments over a period of approx. 3 years in which [he] was transported and housed at the WCCF [Washington County Correctional Facility] for criminal proceedings at No. 2431 of 2006 before various judges" in Washington County Criminal Court. (ECF No. 267 at ¶ 13.) The Washington County criminal complaint filed at Docket No. 2431-2006 charged Father with four counts each of Terroristic Threats under 18 Pa. Cons. Stat. Ann. § 2706(a)(1); Harassment under 18 Pa. Cons. Stat. Ann. § 2709(a)(4); and Threats and Other Improper Influence in Official and Political Matters under 18 Pa. Cons. Stat. Ann. § 4702(a)(2). The alleged victims of these charges were three employees of Washington County Children and Youth Services and Judge Mascara, all of whom are named as defendants in this federal action. *See Commw. of Pa. v. Goodson,* CR No. 2431-2006, Mem. Op. & Order dated August 15, 2007 (John F. Bell, S.J.). The conduct which gave rise to the criminal charges brought against Father in No. 2431-2006 arose during the juvenile court proceedings regarding the custody of D.G. over which Judge Mascara presided.

Liberally construing Plaintiff's Third Amended Complaint against Defendant Pelzer in his individual and official capacities, Plaintiff alleges the following:

1. On September 27, 2007, Plaintiff was placed in administrative custody at the Washington County Correctional Facility ("WCCF") without benefit of any paperwork after Pelzer received a phone call from Washington County President Judge Seneca, even though no particular incident occurred while Plaintiff was in the general population. (Third Amended Complaint, ECF NO. 267 at ¶ 7 [hereinafter "ECF No. 267 at ¶ __"].) Plaintiff avers that he was told that because of his penmanship and letter writing campaign, he was being placed in administrative custody. (ECF No. 267 at ¶ 7.)

2. Plaintiff avers that he was denied access to his legal materials, writing paper and pen/pencil, and therefore was unable to meet legal deadlines in his other pending cases, and was unable to correspond with his public defender as to his defense regarding his incarceration. (ECF No. 267 at ¶ 7.)

3. Plaintiff also alleges that he was denied access to his personal mail, and his incoming legal mail was already opened and inspected. Plaintiff avers that Defendant Pelzer indicated that he would ensure that Plaintiff would not have access to any writing materials. (ECF No. 267 at ¶ 7.)

4. Plaintiff avers that he was on "24/24 lockdown" at this time and that despite three judges' orders to the contrary, he was not returned to SCI Mahanoy. Consequently, he was removed from certain "critical parole mandated programs." (ECF No. 267 at ¶ 7.)

5. Plaintiff states that he was not allowed to place any phone calls while in administrative custody, and his designated outgoing mail was not sent. He was also not permitted to seek medical attention while in administrative custody for his stomach aches, migraines, dizziness, and other symptoms that were left untreated. He had no means to complain,

did his own laundry in the sink, showered only once a week and used the same sheet and blanket for his entire stay. (ECF No. 267 at ¶ 7.)

6. Plaintiff further avers that he "was not afforded any communication with the catholic representative who frequents the jail." (ECF No. 267 at ¶ 8.) Plaintiff was not permitted any religious meetings/materials or visits. No church services were permitted. (ECF No. 267 at ¶ 8.)

7. Plaintiff further states that while being in the SHU, he received very small food portions (as compared to portions received by other inmates) that were cold. (ECF No. 267 at ¶ 10.)

8. Plaintiff complained regarding pain relating to his herpes condition, but it was left untreated. When asked why he was being treated in this manner, Plaintiff avers that he was told that it was because of his letter writing campaign, having sex with co-defendant Gina Savko and getting her pregnant while she was in the custody of WCCF. (ECF No. 267 at ¶ 11.)

9. Plaintiff further avers that while being housed in the SHU, he was granted no exercise or recreation time. He also states that the "temperature of the cell felt like it was 20-30 degrees constantly." (ECF No. 267 at ¶ 12.)

10. Plaintiff alleges that he has proof that his legal mail was read by prison staff members, and that when he was housed at WCCF, his legal mail from the state correctional facility where he was permanently housed pertaining to the Washington County Court cases was not forwarded, so he could not adequately prepare for those proceedings. (ECF No. 267 at ¶¶ 14-15.)

11. Plaintiff avers that there was no grievance procedure in place at WCCF and that his only means to file a grievance was to speak to a captain. Further, he had no writing materials with which to file a written complaint. (ECF No. 267 at ¶ 16.)

12. Plaintiff alleges that during intake at WCCF, he was forced to sleep on the floor in a holding area for several days, and thereafter, in a medical holding area with 10-20 other inmates due to overcrowding. (ECF No. 267 at ¶ 17.)

13. Plaintiff further indicates that he was subject to strip searches on a weekly basis, while other inmates in the SHU were not. Plaintiff indicates at times he was left to stand naked in the cold cell for over an hour. (ECF No. 267 at ¶ 18.)

14. Plaintiff states that his prescription eyeglasses were confiscated during the entire SHU confinement; Plaintiff was told that the metal frames were contraband. Consequently, Plaintiff was forced to go many months without his prescription eyeglasses which he needed for distance vision. (ECF No. 267 at ¶ 19.)

15. Plaintiff alleges that he was not permitted to seal his outgoing mail, including his legal mail, and that his mail was often returned to him without being sent. (ECF No. 267 at ¶ 20.)

16. Plaintiff states that Defendant Pelzer told others that Plaintiff was threatening others, including Washington County Children and Youth Services caseworkers (i.e. home invasion of caseworker, taking pictures of caseworkers), and that Plaintiff was responsible for mailing a "phony hazmat threat to the courthouse." Plaintiff avers that these reasons were given to Plaintiff as to why he was being mistreated, and why he was confined to the SHU. Plaintiff avers that "no charges nor convictions resulted" as to these alleged threats. (ECF No. 267 at ¶ 20.)

17. Plaintiff avers that "no other inmates were strip searched and mistreated in the manner the plaintiff was, with the exception of those who were forced to sleep on the floor in certain areas of the WCCF." (ECF No. 267 at ¶ 21.)

18. Plaintiff avers that Defendant Pelzer, as warden of WCCF, "is legally responsible for the overall operation of the Washington County Correctional Facility and all departments and employees therein . . . ." (ECF No. 267 at ¶ 4.) He further states that this includes the training of all employees. (ECF No. 267 at ¶4.)

### B.    <u>Legal Standard</u>

<u>*PRO SE* PLEADINGS</u>

The Court must liberally construe the factual allegations of the Third Amended Complaint because pleadings filed by *pro se* plaintiffs are held to a less stringent standard than formal pleadings drafted by lawyers. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). Therefore, if the Court "can reasonably read [the] pleadings to state a valid claim on which [Plaintiff] could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or [Plaintiff's] unfamiliarity with pleading requirements." *Wilberger v. Ziegler*, No. 08-54, 2009 WL 734728 at *3 (W.D. Pa. March 19, 2009) (citing *Boag v. MacDougall,* 454 U.S. 364, 365 (1982) (*per curiam*)).

<u>MOTION TO DISMISS PURSUANT TO RULE 12(b)(6)</u>

A motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure tests the legal sufficiency of a complaint. *Kost v. Kozakiewicz,* 1 F.3d 176, 183 (3d Cir. 1993). A complaint must be dismissed for failure to state a claim if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 556

(2007) (rejecting the traditional 12(b)(6) standard set forth in *Conley v. Gibson,* 355 U.S. 41, 45-46 (1957)); *Ashcroft v. Iqbal,* 129 S. Ct.1937, 1949 (May 18, 2009) (citing *Twombly,* 550 U.S. at 555-57). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal,* 129 S. Ct. at 1949 (citing *Twombly,* 550 U.S. at 556). The Supreme Court further explained:

> The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* (citing *Twombly*, 550 U.S. at 556-57).

Recently, in *Fowler v. UPMC Shadyside*, 578 F.3d 203 (3d Cir. Aug. 18, 2009), the United States Court of Appeals for the Third Circuit discussed its decision in *Phillips v. County of Allegheny,* 515 F.3d 224, 232-33 (3d Cir. 2008) (construing *Twombly* in a civil rights context), and described how the Rule 12(b)(6) standard had changed in light of *Twombly* and *Iqbal* as follows:

> After *Iqbal,* it is clear that conclusory or "bare-bones" allegations will no longer survive a motion to dismiss: "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 129 S. Ct. at 1949. To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 1948. The Supreme Court's ruling in *Iqbal* emphasizes that a plaintiff must show that the allegations of his or her complaints are plausible. *See Id.* at 1949-50; *see also Twombly,* 505 U.S. at 555, & n. 3.

*Fowler*, 578 F.3d at 210.

Thereafter, in light of *Iqbal*, the United States Court of Appeals for the Third Circuit in *Fowler v. UPMC Shadyside, 578 F.3d 203 (3d Cir. Aug. 18, 2009),* set forth a two-prong test to be applied by the district courts in deciding motions to dismiss for failure to state a claim:

> First, the factual and legal elements of a claim should be separated. The District Court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. [*Iqbal,* 129 S. Ct. at 1949]. Second, a District Court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." *Id.* at 1950. In other words, a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to "show" such an entitlement with its facts. *See Phillips,* 515 F.3d at 234-35. As the Supreme Court instructed in *Iqbal,* "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged-but it has not 'show [n]'- 'that the pleader is entitled to relief.'" *Iqbal,* 129 S. Ct. at 1949. This "plausibility" determination will be "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

*Fowler,* 578 F.3d at 210-11.

### C. <u>Analysis</u>

The Court limits its analysis to those claims outlined in its Order of December 6, 2010. (ECF No. 263.) All other claims that Plaintiff attempts to raise in the Third Amended Complaint must be stricken pursuant to the terms of the December 6, 2010 Order. Further, Plaintiff raises several claims that were already dismissed with prejudice. (ECF Nos. 228 & 243). Likewise, these claims will not be discussed in the Court's Report and Recommendation.

Section 1983 of the Civil Rights Act provides as follows:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or any other person within the jurisdiction thereof to the deprivation of any rights, privileges, or

immunities secured by the Constitution and laws, shall be liable to
the party injured in an action at law, suit in equity, or other proper
proceeding for redress . . . .

42 U.S.C. § 1983. To state a claim for relief under this provision, a plaintiff must demonstrate

that the conduct in the complaint was committed by a person or entity acting under color of state

law and that such conduct deprived the plaintiff of rights, privileges or immunities secured by the

Constitution or the laws of the United States. *Piecknick v. Commonwealth of Pennsylvania*, 36

F.3d 1250, 1255-56 (3d Cir. 1994). Section 1983 does not create rights; it simply provides a

remedy for violations of those rights created by the United States Constitution or federal law.

*Kneipp v. Tedder*, 95 F.3d 1199, 1204 (3d Cir. 1996).


Personal Involvement of Defendant Pelzer

As a preliminary matter, the Court notes that as to Plaintiff's claims against Defendant

Pelzer in his individual capacity, Plaintiff has failed to plead sufficient factual matter to show the

personal involvement of Defendant Pelzer. That is, although Plaintiff's averments may be

"consistent with" Pelzer's liability, the Third Amended Complaint "stops short of the line

between possibility and plausibility" regarding Plaintiff's entitlement to relief. *Iqbal*, 129 S. Ct.

at 1949 (citing *Twombly*, 550 U.S. at 556-57.) Plaintiff's averments relating to Pelzer's

involvement speak in the following conclusory terms without reference to specific actions

allegedly taken by Defendant: 1) "by and through his orders;" 2) "per Defendant's order;" 3)

"ordering other personnel." The law is clear that § 1983 liability may not be premised on the

doctrine of *respondeat superior*; instead, Plaintiff must aver that Pelzer was personally involved

by alleging personal direction, actual knowledge or acquiescence. *Rode v. Dellarciprete*, 845

F.2d 1195, 1207 (3d Cir. 1988). "Allegations of participation or actual knowledge and

acquiescence, however, *must* be made with appropriate particularity." *Id.* (emphasis added).

Here, Plaintiff's averments fall short of this requirement and all claims against Defendant in his

individual capacity should be dismissed with prejudice on this basis alone. Clearly, any further

attempt to amend would be futile.[2]

In addition, claims against Defendant should be dismissed for the following reasons:

First Amendment Free Exercise Claim

In support of his Motion to Dismiss the Third Amended Complaint as it relates to

Plaintiff's amendment of his First Amendment Free Exercise claim, Defendant Pelzer argues that

Plaintiff's claim remains deficient. He argues that Plaintiff does not aver how the absence of

religious meetings with a Catholic representative and/or the absence of visits/materials,

substantially impacted his ability to exercise a central tenet of his religion. He also argues that

WCCF policy of precluding all SHU inmates from communal religious services does not offend

the First Amendment because the policy is reasonably related to legitimate penological

objectives, namely the maintaining of security and order within the institution. As noted above,

Plaintiff did not respond to Defendant's arguments.

The United States Supreme Court has recognized that the First Amendment guarantees

that all prisoners must be afforded reasonable opportunities to exercise their religious freedom.

*Cruz v. Beto,* 405 U.S. 319, 322 n.2 (1972). In order to state a free exercise claim, a plaintiff

must allege a "substantial burden" on the exercise of religion. *See, e.g., Thomas v. Review Bd.,*

450 U.S. 707, 718 (1981); *Wisconsin v. Yoder,* 406 U.S. 205, 218 (1972). *See also Williams v.*

*Sweeney,* 882 F. Supp. 1520, 1523 (E.D. Pa. 1995); *Madison v. Horn,* Civ. A. 97-3143, 1998 WL

---

[2] The court of appeals in *Phillips v. County of Allegheny* has ruled that if a district court is dismissing a claim pursuant to 12(b)(6) in a civil rights case, it must *sua sponte* "permit a curative amendment unless such an amendment would in inequitable or futile." 515 F.3d 224, 245 (3d Cir. 2008). The Court in this matter is recommending dismissal with prejudice and is not granting leave to amend because it believes such amendment would be futile.

531830, at *8 (E.D. Pa. Aug. 21, 1998). With respect to prisoners, however, the inquiry does not end there. Although inmates retain certain protections afforded by the First Amendment, "lawful incarceration brings about the necessary withdrawal or limitation of many privileges and rights, a retraction justified by the considerations underlying our penal system." *O'Lone v. Estate of Shabazz*, 482 U.S. 342, 348 (1987) (quotations omitted). In *Shabazz*, the Supreme Court determined that prison regulations alleged to infringe upon an inmate's "religious" rights under the First Amendment must be reviewed under a "reasonableness" test less restrictive than that ordinarily applied to alleged infringements of fundamental constitutional rights. *Id*. In so concluding, the Court held that when a prison regulation impinges on inmates' constitutional rights "the regulation is valid if it is reasonably related to legitimate penological interests." *Id*. at 349. In determining whether the regulation was "reasonably related," the Court employed the four-factor test that it developed in *Turner v. Safley*, 482 U.S. 78, 89 (1987), namely: 1) whether there is a rational connection between the regulation and the penological interest asserted; 2) whether inmates have an alternative means of exercising their rights; 3) what impact accommodation of the right will have on guards, other inmates and the allocation of prison resources, and 4) whether alternative methods for accommodation exist at *de minimis* cost to the penological interest asserted.

Plaintiff here only alleges that he "was not afforded any communication with the catholic representative who frequents the jail." He also avers that Pelzer and his staff stated that Plaintiff "was not permitted any religious meetings/materials or visits[,]" and that "no church services were permitted in the SHU." (ECF No. 267 at ¶ 8.) Plaintiff continues that his parents became ill during the holiday season, that he became very upset, and was not able to worship or speak with someone from his faith. (ECF No. 267 at ¶ 8.) Plaintiff alleges that his complaints relate to

"several SHU [Special Housing Unit] housing assignments over a period of approx. 3 years in which [he] was transported and housed at the WCCF [Washington County Correctional Facility] for criminal proceedings at No. 2431 of 2006 before various judges" in Washington County Criminal Court."  (ECF No. 267 at ¶ 13.)  He does not state how long he was assigned to WCCF at any one time; that is, he does not aver how long his ability to worship was limited at any one time.

Plaintiff's amended averments fail to set forth facts showing a substantial burden on his ability to practice his religion.  As noted by Defendant, Plaintiff has pled no facts showing that meetings, or the possession of certain materials are a required central tenet of the Catholic religion.  Conversely, Defendant has identified a legitimate penological interest justifying the absence of communal religious services for inmates housed in the SHU at WCCF—institutional security and order.  *See Turner*, 482 U.S. at 89.  In fact, Plaintiff himself avers that "no church services were permitted in the SHU[,]" such that all SHU inmates were treated alike due to institutional security concerns.  Heightened security concerns will justify some restrictions on inmates' First Amendment Free Exercise rights.  *See generally Houseknecht v. Doe*, 653 F. Supp.2d 547, 556-57 (E.D. Pa. 2009); *Williams v. Beard,* Civil No. 4:08-CV-0044, 2011 WL 1343141, at *14 (M.D. Pa. March 30, 2011); *Brightwell v. Roth*, Civ. A. No. 90-6942, 1992 WL 195389 (E.D. Pa. Aug. 4, 1992).  Therefore, Defendant's Motion to Dismiss Plaintiff's Free Exercise claim should be granted as Plaintiff has failed to allege "enough facts to state a claim that is plausible on its face." *Twombly,* 550 U.S. at 556.

<u>First Amendment Claim regarding denial of outgoing communications</u>

In support of his Motion to Dismiss Plaintiff's claim regarding denial of outgoing communications in violation of the First Amendment, Defendant argues that Plaintiff indicates that mail was returned to him because he had exceeded the WCCF postage limit for indigent prisoners, and prisoners do not have an unlimited right to free postage.

In *Procunier v. Martinez*, 416 U.S. 396 (1974), the United States Supreme Court reviewed a state's procedures for censoring inmates' outgoing correspondence. In its review, the Court was concerned with the fact that censorship of prisoners' outgoing mail affected the First and Fourteenth Amendment rights of the addressee as well as the sender of the correspondence. In light of that recognition, the Court held that censorship of outgoing prisoner mail is justified when: 1) the regulation or practice furthers an important or substantial governmental interest unrelated to the suppression of expression; and 2) the limitation is no greater than is necessary or essential to the protection of the particular governmental interest involved. *Martinez*, 416 U.S. at 413.

In addition, the Court held that "the interest of prisoners and their correspondents in uncensored communication by letter, grounded as it is in the First Amendment, is plainly a 'liberty' interest within the meaning of the Fourteenth Amendment even though qualified of necessity by the circumstance of imprisonment." *Id*. at 418. As such, the Court required that "an inmate be notified of the rejection of a letter written by or addressed to him, that the author of that letter be given a reasonable opportunity to protest that decision, and that complaints be referred to a prison official other than the person who originally disapproved the correspondence." *Id*. at 418-19.

Plaintiff has submitted no responsive brief, and the Court relies solely on the averments of his Third Amended Complaint. Plaintiff alleges that his designated outgoing mail was not sent, and that he was told that he exceeded his postage limit even though he had not mailed any items since his arrival at WCCF. (ECF No. 267 at ¶¶ 7, 20.) Finally, Plaintiff avers that he was not permitted to seal his outgoing mail. (ECF No. 267 at ¶ 20.)

As noted above, Plaintiff does not allege facts showing that Defendant Pelzer was personally involved in the interference with his outgoing communications; Plaintiff only avers that Pelzer told jail officials to stay away from Plaintiff. Section 1983 liability may not be premised on the doctrine of *respondeat superior*; instead, Plaintiff must aver that Pelzer was personally involved by alleging personal direction, actual knowledge or acquiescence. *Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988). Here, Plaintiff's averments fall short of this requirement.

<u>First Amendment Claim regarding censorship of legal mail</u>

In support of his Motion to Dismiss Plaintiff's First Amendment claim regarding censorship of legal mail, Defendant Pelzer argues that Plaintiff has failed to allege facts indicating that legal mail bearing a control number was being opened outside of his presence.

In *Jones v. Brown*, the United States Court of Appeals for the Third Circuit held that a blanket practice of opening inmate legal mail outside the presence of the inmate implicates First Amendment concerns. 461 F.3d 353, 359 (3d Cir. 2006). Thereafter, in *Fontroy v. Beard*, 559 F.3d 173 (3d Cir. 2009), the United States Court of Appeals for the Third Circuit upheld as constitutional the Pennsylvania Department of Corrections' ("DOC") policy involving legal mail delivered to the inmate unopened. The policy required that either attorneys hand deliver sealed communications to the specified DOC facilities, or the attorneys obtain a Control Number from

the DOC and place it on each envelope mailed to an inmate. Later, two revisions were made to the policy: 1)courts were permitted to obtain Control Numbers in the same manner as attorneys; and 2) all incoming mail without Control Numbers that appeared to be sent by a court was to be hand-delivered after it was opened and inspected like other regular mail. *Id.* at 176. Therefore, any mail from an attorney or court not bearing a control number may be opened outside the presence of an inmate without violating the inmate's First Amendment rights.

With regard to the opening of his legal mail, Plaintiff fails to aver facts that suggest a plausible claim for violation of his First Amendment rights. Plaintiff only avers that he has proof that his legal mail was read by prison staff members; he states that Defendant and staff spoke to him about details they would know only from reading his legal mail. (ECF No. 267 at ¶ 14.) Plaintiff also avers that his legal mail was opened when he received it, but he does not aver whether it was properly identified as legal mail, whether the WCCF had a policy regarding legal mail, what that policy provided, and whether the WCCF violated that policy. Further, Plaintiff fails to aver whether Defendant and staff engaged in a single, inadvertent opening of properly marked legal mail outside of his presence, or a pattern or practice of such actions. The former does not infringe his First Amendment rights, while a pattern or practice of such behavior does. *Bieregu v. Reno*, 59 F.3d 1445, 1458 (3d Cir. 1995), *abrogated on other grounds by Lewis v. Casey,* 518 U.S. 343 (1996). Consequently, Plaintiff has failed to allege facts sufficient to state a plausible First Amendment claim pursuant to *Twombly*. Therefore, Defendant's Motion to Dismiss on this claim should be granted.

<u>Retaliation for complaining/filing legal paperwork claim</u>

In support of his Motion to Dismiss, Defendant Pelzer argues that Plaintiff has failed to include averments in his Third Amended Complaint that establish a causal connection between Plaintiff's complaints/legal filings and his placement in administrative custody.

It is well settled that retaliation for the exercise of a constitutionally protected right is itself a violation of rights secured by the Constitution, which is actionable under § 1983. *Rauser v. Horn*, 241 F.3d 330 (3d Cir. 2001); *White v. Napoleon*, 897 F.2d 103, 111-12 (3d Cir. 1990). Merely alleging the fact of retaliation, however, is insufficient. In order to state a claim for retaliation claim, a plaintiff must allege the following: (1) the conduct which led to the alleged retaliation was constitutionally protected; (2) that he was subjected to adverse actions by a state actor (here, the prison officials); and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See Mt. Healthy City Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977); *Anderson v. Davila*, 125 F.3d 148, 163 (3d Cir. 1997).

A plaintiff can satisfy the second requirement by demonstrating that the "adverse" action "was sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights." *See Allah v. Seiverling*, 229 F.3d 220, 225 (3d Cir. 2000). The third factor, "motivation," may be established by alleging a chronology of events from which retaliation plausibly may be inferred. *Tighe v. Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Goff v. Burton*, 91 F.3d 1188 (8th Cir. 1996); *Pride v. Peters*, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).

If the plaintiff proves these three elements, the burden shifts to the state actor to prove that it would have taken the same action without the unconstitutional factors. *Mt. Healthy*, 429 U.S. at 287. "This means that, once a prisoner demonstrates that his exercise of a constitutional right was a substantial or motivating factor in the challenged decision, the prison officials may

still prevail by proving that they would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." *Rauser,* 241 F.3d at 334. Because retaliation claims can be easily fabricated, district courts must view prisoner retaliation claims with sufficient skepticism to avoid becoming entangled in every disciplinary action taken against a prisoner. *See Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995). A prisoner's ability to file grievances and lawsuits against prison officials is a protected activity for purposes of a retaliation claim. *See Milhouse v. Carlson*, 652 F.2d 371, 373-74 (3d Cir. 1981) (retaliation for exercising right to petition for redress of grievances states a cause of action for damages arising under the constitution); *Woods*, 60 F.3d at 1165 (prison officials may not retaliate against an inmate for complaining about guard's misconduct).

Plaintiff appears to have alleged the first element of a retaliation claim, although more detailed facts are needed as to the nature and timing of his complaints and filing of legal papers. With respect to the second element, Plaintiff alleges that he was placed in administrative custody. Thus, it appears that Plaintiff arguably was subjected to "adverse" action. *See Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (holding that prisoner's allegation that he was falsely charged with misconduct in retaliation for filing complaints against a correctional officer sufficiently alleged a retaliation claim); *Allah*, 229 F.3d at 225 (holding that an allegation that a prisoner was kept in administrative segregation to punish him for filing civil rights complaints stated a retaliation claim). The third element of a retaliation claim requires a plaintiff to demonstrate that the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. As noted above, this "motivation" factor may be established by alleging a chronology of events from which retaliation plausibly may be inferred. *Tighe v.*

*Wall*, 100 F.3d 41, 42 (5th Cir. 1996); *Goff v. Burton*, 91 F.3d 1188 (8th Cir. 1996); *Pride v. Peters*, 72 F.3d 132 (Table), 1995 WL 746190 (7th Cir. 1995).

Here, Plaintiff has failed to aver how his complaints/filing of legal papers was a substantial motivating factor in Defendant's decision to place him in administrative custody to satisfy the requirements of *Twombly*. Plaintiff avers only that he was placed in administrative custody, and that others allegedly gave him explanations as to why he was placed in administrative custody. Plaintiff does not aver facts, however, that plausibly suggest a causal connection between his complaints and filing of legal papers and his placement in administrative custody. Instead, Plaintiff avers that he was housed at WCCP on several occasions over a period of three (3) years, but he avers no facts as to the timing of his complaints and/or filing of legal papers, and how they were substantial motivating factors in Defendant's decision to place Plaintiff in his various SHU housing assignments. Plaintiff only states as to one September 2007 housing assignment, that Defendant received a phone call from Washington County President Judge Seneca, and that sometime thereafter, he was placed in the SHU. Plaintiff can aver no facts as to the substance of the phone call, and how it was causally related to his placement in the SHU. Plaintiff cannot rely on unsupported speculation to state a plausible claim for relief under *Twombly*. Therefore, Defendant's Motion to Dismiss Plaintiff's claim for retaliation for complaining/filing legal paperwork should be granted.

### Eighth Amendment Claim regarding denial of adequate medical care

Defendant Pelzer argues that Plaintiff has again failed to plead enough facts to state a plausible claim for relief regarding deliberate indifference to medical needs pursuant to the Eighth Amendment.

In *Estelle v. Gamble*, the United States Supreme Court noted that the most elementary principles underlying Eighth Amendment constitutional jurisprudence "establish the government's obligation to provide medical care for those whom it is punishing by incarceration." 429 U.S. 97, 103 (1976). The *Estelle* Court concluded that the Eighth Amendment prohibits the deliberate indifference to serious medical needs of prisoners. *Id*. at 104. The Court continued that a cause of action under § 1983 is thereby established "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id*. at 104-05 (footnotes omitted). It was not until 1994, however, in *Farmer v. Brennan*, that the United States Supreme Court clarified its meaning of the term "deliberate indifference." 511 U.S. 825 (1994). In *Farmer*, the Court held as follows:

> We hold instead that a prison official cannot be found liable under the Eighth Amendment . . . unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference. . . . But an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment.

*Id*. at 837-38. The *Farmer* Court also discussed its reasoning in *Estelle*, noting that negligence in diagnosing or treating the medical conditions of prisoners will not rise to the level of an Eighth Amendment violation. *Farmer*, 511 U.S. at 835 (quoting *Estelle*, 429 U.S. at 106).

Conversely, a plaintiff must also demonstrate a medical need that is objectively "sufficiently serious." A medical need is "serious" if it is one that has been diagnosed by a physician as mandating treatment, or one that is so obvious that even a lay person easily would

recognize the necessity for a doctor's attention. *Monmouth County Correctional Institutional Inmates v. Lanzaro*, 834 F.2d 326, 347 (3d Cir. 1987).

In his Third Amended Complaint, Plaintiff alleges only that he was not permitted to seek medical attention while in administrative custody for his stomach aches, migraines, dizziness and other symptoms. (ECF No. 267 at ¶ 7.) Plaintiff further states that he complained regarding pain relating to his herpes condition, but it was left untreated. (ECF No. 267 at ¶ 11.) Finally, Plaintiff alleges that due to Defendant's actions, he suffered emotional, physical, and psychological effects and "became very sick" and lost 15 pounds, experienced hair loss, and "had bouts of hallucinations, hearing voices and severe nightmares." (ECF No. 267 at ¶ 8.)

Plaintiff fails to aver enough facts to state a plausible claim for relief pursuant to *Twombly* and its progeny. He has failed to include facts to show that his condition was "sufficiently serious" such that even a lay person easily would recognize the need for a doctor's attention. Plaintiff also fails to aver facts to suggest that Defendant was aware of a serious health condition, and disregarded an excessive risk to Plaintiff's health and safety. Therefore, Defendant's Motion to Dismiss Plaintiff's Eighth Amendment Claim regarding deliberate indifference to Plaintiff's medical needs should be granted.

Municipal Liability

Plaintiff fails to aver liability against Defendant in his official capacity in that he has failed to aver facts sufficient to state a plausible claim of municipal liability and failure to train. Claims against Defendant Pelzer in his official capacity are really claims against the WCCF. *Cf. Will v. Michigan,* 491 U.S. 58, 71 (1989) (state official sued in his official capacity "is no different from a suit against the State itself.") In *Monell v. New York City Dep't of Social Servs.,*

436 U.S. 658 (1978), the United States Supreme Court held that municipalities and other local governmental units are "persons" subject to liability under 42 U.S.C. § 1983.  In so ruling, however, the Court declared that municipal liability may not be premised on the mere fact that the governmental unit employed the offending official, that is, through application of the doctrine of *respondeat superior*.  Instead, the Court concluded that a governmental unit may be liable under § 1983 only when its "policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury."  *Monell*, 436 U.S. at 694.  The "official policy" requirement distinguishes acts of the municipality from acts of employees of the municipality, thereby limiting liability to action for which the municipality is actually responsible.  *Id.*

In finding municipal liability pursuant to § 1983, the plaintiff must identify the policy, custom or practice of the municipal defendant that results in the constitutional violation.  *Id.* at 690-91.  A municipal policy is made when a decision-maker issues an official proclamation or decision.  *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986), *quoted in*, *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990).  A custom or practice, however, may consist of a course of conduct so permanent and widespread that it has the force of law.  *Andrews*, 895 F.2d at 1480.  To establish municipal liability based upon a custom or practice, the plaintiff must demonstrate that the decision-maker had notice that a constitutional violation could occur and that the decision-maker acted with deliberate indifference to this risk.  *Berg v. County of Allegheny*, 219 F.3d 261, 276 (3d Cir. 2000).  Finally, Plaintiff must show a causal connection between the custom or policy and the violation of the constitutional right.  *Bielevicz v. Dubinon*, 915 F.2d 845, 850-51 (3d Cir. 1990).  That is, a plaintiff must demonstrate an "affirmative link"

or "plausible nexus" between the custom or practice and the alleged constitutional deprivation. *Bielevicz*, 915 F.2d at 850-51.

To establish liability on a failure to train theory, Plaintiff must set forth specific allegations that the need for more or different training was so obvious and so likely to lead to the violation of constitutional rights that the policymaker's failure to respond amounts to deliberate indifference. *Brown v. Muhlenberg Township*, 269 F.3d 205, 216 (3d Cir. 2001) (citing *City of Canton*, 489 U.S. at 390).

Here, Plaintiff has failed to allege facts to state a claim for municipal liability and/or failure to train that is plausible on its face. Plaintiff has failed to allege facts that Pelzer, in his official capacity as warden of the WCCF, established a policy or custom of interfering with inmates' rights to freely practice their religion; to engage in outgoing communications; to be free from censorship of their legal mail; to be free from retaliation for complaining/filing legal paperwork; and the right to adequate medical care. Plaintiff has failed to allege facts that Pelzer had notice that jail officials could be interfering with these rights, and that Pelzer acted with deliberate indifference to this risk. Plaintiff has also failed to allege facts to show that the need for more or different training of jail personnel was so obvious that Pelzer's failure to respond amounted to deliberate indifference. Therefore, Plaintiff's claims against Defendant Pelzer in his official capacity should be dismissed with prejudice.


III.  **CONCLUSION**

For the reasons discussed above, it is respectfully recommended that the Motion to Dismiss Plaintiff's Third Amended Complaint filed by Defendant Washington County Correctional Facility Warden Joseph Pelzer (ECF No. 272) be granted.

In accordance with the Magistrate Judge's Act, 28 U.S.C. § 636(b)(1)(B) and (C), and Federal Rule of Civil Procedure 72(b)(2), and Local Rule of Court 72.D.2., the parties are allowed fourteen (14) days from the date of service to file objections to this report and recommendation. Any party opposing the objections shall have fourteen (14) days from the date of service of objections to respond thereto. Failure to file timely objections will constitute a waiver of any appellate rights.

Dated: July 6, 2011                                BY THE COURT:


                                                   /s/Lisa Pupo Lenihan
                                                   LISA PUPO LENIHAN
                                                   Chief United States Magistrate Judge


cc:     All Counsel of Record
        Via Electronic Mail

        Daniel Goodson, III
        1312 Woodmont Avenue
        P.O. Box 303
        New Kensington, PA  15068